**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JORDAN PERRY and FORGE PTASP LLC, | |
| Plaintiffs, | No. 22-cv-04326 |
| v. | The Honorable Manish S. Shah |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs Jordan Perry ("Mr. Perry") and Forge PTASP LLC's ("Forge") (Mr. Perry and Forge, collectively, "Plaintiffs") bring this action against JPMorgan Chase Bank, N.A. ("Chase") claiming that Chase improperly restricted loan funds in Mr. Perry's personal checking account. Plaintiffs allege that these restricted funds derived from the U.S. Small Business Administration ("SBA"). Because SBA loans are made to businesses, and because the funds were deposited into Mr. Perry's personal account, Chase asked Mr. Perry for documentation confirming that the SBA loan funds were for a business and should be released from the personal checking account. In the meantime, Chase restricted the funds, which Mr. Perry had expressly contractually authorized it to do. To date, Mr. Perry has not provided the requested information as reflected in the exhibits Plaintiffs attach to the Complaint.

Nevertheless, Plaintiffs now seek to bring numerous causes of action against Chase despite the fact that: (1) Chase has no relationship—contractual or otherwise—with Forge whatsoever; (2) Chase had no knowledge of Forge's existence at the time that Mr. Perry allegedly instructed the SBA to deposit loan funds into Mr. Perry's personal account; (3) Chase was expressly authorized under its contract with Mr. Perry to restrict the personal checking account; and

(4) Plaintiffs have failed to plead the required elements for any cause of action. The Court should reject Plaintiffs' attempts to foist liability on Chase because all of Plaintiffs' claims fail under Illinois law.

First, Forge's conversion claim in Count I fails as a matter of law because: (i) Forge has not alleged (because it cannot) that Chase converted the disputed funds at issue for its own use; and (ii) Chase was expressly authorized to restrict Mr. Perry's account.

Second, Forge's Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") claim in Count II fails as a matter of law because Forge lacks standing to assert this claim against Chase. Illinois law makes clear that a non-consumer plaintiff must demonstrate a "nexus between the alleged injuries and injuries to the ultimate customer" to advance a consumer fraud and deceptive practices act claim. Forge has failed to identify or allege a nexus (nor could it ever). Dismissal is therefore proper. Additionally, even if the Court determines that Forge has standing (it should not), dismissal is warranted because there is no deceptive conduct alleged. Other than the conclusory language that merely mimics the statute, Forge cannot point the Court to any action by Chase that would constitute deceptive conduct.

Third, Forge's negligence claim in Count III should be dismissed because Chase owes no duty to Forge—a non-customer—as a matter of law.

Finally, Mr. Perry's defamation *per se* claim in Count IV also fails because the Complaint's allegations fail to identify with particularity any statement that was allegedly conveyed to a third party, when it was conveyed, how it was conveyed, or even precisely to whom it was conveyed.

Therefore, as detailed below, all of Plaintiffs' claims should be dismissed.

## FACTUAL BACKGROUND[1]

Mr. Perry is a Chase customer who has maintained a Chase checking account since 2012. (First Amended Compl., Dkt. 5 ("FAC") ¶ 19). The FAC alleges that Mr. Perry began a personal training business as a sole proprietor in 2017 and adopted the name "Forge Fitness" at that time. (*Id*. ¶ 17). The FAC also alleges that Mr. Perry deposited the revenue he earned through Forge Fitness into his personal checking account ending in -1218. (*Id*. ¶¶ 19-20).

Mr. Perry asserts that he changed the legal structure of Forge Fitness to a Limited Liability Company in 2020. (*Id*. ¶ 23). Specifically, the FAC alleges that Mr. Perry filed Articles of Organization and created Forge on August 4, 2020. (*Id*.). Although Mr. Perry is the sole owner and managing member of Forge, the FAC alleges that Forge does not have any contractual or banking relationship with Chase. (*Id*. ¶ 26). Instead, the FAC alleges that Forge opened its own business checking account with Canadian Imperial Bank of Commerce "shortly after [Mr. Perry] establish[ed] Forge PTASP LLC." (*Id*. ¶ 25).

Mr. Perry alleges that he applied for a Paycheck Protection Program ("PPP") loan from the SBA—on Forge's behalf—in January 2021, and that Mr. Perry's application was placed with the SBA through a company named Blue Vine. (*Id*. ¶¶ 30, 34). Despite the fact that Mr. Perry alleges that Forge had its own bank account at the Canadian Imperial Bank of Commerce, the FAC alleges that Mr. Perry provided the information from his personal Chase checking account to the SBA for processing the PPP loan. (*Id*. ¶ 38). The FAC does not allege that either Mr. Perry or Forge informed Chase that SBA funds related to Forge's PPP would be deposited into Mr. Perry's personal Chase checking account.

---

[1] For the purposes of this submission alone, Chase accepts as true the well-pleaded allegations of Plaintiffs' Complaint – as it is required to do under Federal Rule of Civil Procedure 12(b)(6). As such, the following facts are taken from the Complaint, documents attached to or referenced in the Complaint, and other court records.

The FAC alleges that the SBA deposited $20,122 into Mr. Perry's personal Chase checking account ending in -1218 on February 25, 2021. (*Id*. ¶ 36). Mr. Perry asserts that he withdrew approximately $9,000 from his personal Chase checking account ending in -1218 on February 26, 2021, but that Chase refused to allow him to withdraw additional funds the following day. (*Id*. ¶¶ 40, 48). The FAC claims that Chase asked Mr. Perry to provide certain documents and information establishing that Forge was entitled to receive PPP loan funds. (*Id*. ¶¶ 53-54).

The FAC, by attaching as Exhibit 3 the correspondence Chase sent to Mr. Perry explaining the basis for the account restriction, makes clear that Mr. Perry was unable to provide documentation establishing that his business was in existence prior to February 15, 2020. (FAC at Ex. 3.) And businesses were required to be in existence as of February 15, 2020 to be eligible for PPP loans. *See* 15 U.S.C. §636(a)(36)(T) ("A business or organization that was not in operation on February 15, 2020 shall not be eligible for a loan under this paragraph."). Chase's letter (Exhibit 3) stated that:

> The bank restricted the Account pending further review due to receipt of a deposit from the U.S. Small Business Administration ("SBA") Economic Injury Disaster Loan program. Only eligible businesses can receive a grant or loan from the SBA program, and we need additional information and documentation to release the funds to you. Under the terms of our Deposit Account Agreement (DAA), there are many reasons we may decline or prevent transactions to or from your Account or decide to close your Account. You were provided a copy of the agreement when you opened your account, and you can see the current agreement on chase.com. Also, the DAA explains if your Account is a type listed under "Personal Accounts" in our product information, you agree not to use it for business purposes.
>
> We closed your Account and placed the funds totaling $9,875.92 in suspense. Please provide us with the following documentation in order to have funds released:
> - Invoices that reflect that your business was in operation on or before February 15, 2020, as required by the SBA
> - 2020 Tax Return for your business

The FAC also alleges in conclusory fashion that a Chase employee accused Mr. Perry of fraud. (*Id*. ¶ 51). However, Mr. Perry does not state with specificity what any Chase employee allegedly said concerning Mr. Perry and any fraud accusation. The FAC admits that Mr. Perry began yelling in the Chase branch after Chase allegedly denied Mr. Perry's withdrawal request

and that the Orland Park Police Department were called only after Mr. Perry began yelling. (*Id*. ¶¶ 57-58).

Based on these facts, Mr. Perry and Forge assert a total of four causes of action against Chase: (1) Conversion (brought by Forge); (2) violation of the ICFA (brought by Forge); (3) negligence (brought by Forge); and (4) defamation *per se* (brought by Mr. Perry). None of the claims asserted are properly pleaded and they should be dismissed as a matter of law.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A complaint must allege sufficient facts that would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## ARGUMENT

### A. Forge's Conversion Claim (Count I) Fails as a Matter of Law Because Chase Did Not Convert the Money to Chase's Own Use.

"Under Illinois law, conversion is the unauthorized deprivation of property from a person entitled to possess that property." *Blanton v. RoundPoint Mortg. Serv. Corp.*, 2020 U.S. App. LEXIS 27209, *10 (7th Cir. Aug. 26, 2020) (citing *In re Estate of Yanni*, 2015 IL App (2d) 150108). "To state a claim for the common law tort of conversion under Illinois law, a plaintiff must allege that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of that property; (3) he has made a demand for possession; and

(4) []Defendant wrongfully and without authorization assumed control, ownership, or dominion over the property at issue." *Triumph Packaging Group v. Ward*, No. 11 C 7927, 2012 U.S. Dist. LEXIS 154447, at *17 (N.D. Ill. Oct. 29, 2012). "[F]or money to be the subject of conversion, it must have 'at all times belonged to the plaintiff' and the defendant must have 'converted [the money] to [the defendant's] own use.'" *Blanton*, 2020 U.S. App. LEXIS 27209 at *10. Here, Plaintiff cannot establish—as a matter of law—the required elements that it has an absolute right to the funds, that Chase took any of the funds for its own use, or that Chase took any unauthorized action.

First, under the CARES Act and the governing regulations for PPP-related loans, a business—including a sole proprietorship—must have been in existence as of February 15, 2020 in order to be eligible to receive a loan. *See* 15 U.S.C. §636(a)(36)(T) ("A business or organization that was not in operation on February 15, 2020 shall not be eligible for a loan under this paragraph."). Here, as established by the letter attached to the FAC as Exhibit 3, Mr. Perry has not provided documentation establishing that Forge was in existence prior to February 15, 2020. (FAC at Ex. 3.) Indeed, as matter of simple logic, this lawsuit would not exist if Mr. Perry had been able to do so. Here, the SBA loans were never even in Forge's possession and Forge cannot show that it is unconditionally entitled to them. Given this, Forge cannot establish an "absolute and unconditional" right to the funds at issue, thereby requiring dismissal of the conversion claim. *See, e.g., Triumph Packaging*, 2012 U.S. Dist. LEXIS 154447 at *18 ("To establish that an individual has an absolute and conditional right to possess the property, '[i]t must be shown that the money claimed, or its equivalent, *at all times* belonged to the plaintiff....'") (citing *Horbach v. Kaczmarek,* 288 F.3d 969, 978 (7th Cir. 2002)).

Second, there is no allegation that Chase converted any of Plaintiffs' funds for its own use—nor could there be. Instead, the FAC alleges that: (1) Mr. Perry instructed the SBA to deposit funds into his Chase personal checking account; and (2) Forge never engaged in a business relationship or contractual relationship with Chase; and (3) Chase held the funds in suspense pending Mr. Perry's response to the letter attached as Exhibit 3. (*See* FAC ¶¶ 26, 38, 77-78). Under these set of facts, there is no basis to conclude that Chase has taken the funds for its own use. That is fatal to this claim. *See Pineschi v. Radant*, 2011 Ill. App. Unpub. LEXIS 1073 (2nd Dist. 2011) (granting summary judgment to defendant on conversion claim because "plaintiff … failed to present evidence that defendant … converted the [money] for his own use.").

Finally, Forge's conversion claim fails as a matter of law because the alleged wrongful conduct upon which Forge bases its claim against Chase (restricting the funds in Mr. Perry's personal checking account) was permissible and contractually authorized. Despite its attempts, the FAC cannot evade the fact that the complained of conduct derives from Mr. Perry's contractual relationship with Chase, and because of this relationship Forge cannot assert a conversion claim. Specifically, Mr. Perry opened his personal checking account in June 2012. (*See* Declaration of Laura L. Deck ("Deck Decl."), attached herein as Exhibit 1, at ¶ 4.) Mr. Perry's banking relationship with Chase is governed by the Deposit Account Agreement ("DAA").[2] (*Id.* at ¶¶ 3, 5.) The DAA states in relevant part:

> We may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances: …

---

[2] While a court is normally confined to the four corners of the complaint at the Rule 12(b)(6) stage, documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the Complaint, or if they are central to a plaintiff's claims. *See, e.g., McCready v. EBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). Here, the DAA governing Mr. Perry's account is central to Plaintiffs' claim that Chase did not possess authority to restrict the funds in Mr. Perry's account.

- We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s);

- We suspect that any transaction may involve illegal activity or may be fraudulent;

- We are complying in our sole judgment, with any federal, state or local law, rule or regulation, including federal asset control and sanction rules and anti-money laundering rules, or with our policies adopted to assure that we comply with those laws, rules or regulations; or

- We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.

We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period of time, or who may make deposits, in order to reduce risk ….

(*Id.*, Ex. B at p. 21.)

Thus, as set forth in the DAA, because Chase was contractually permitted to restrict Mr. Perry's account, the conversion claim fails. The DAA specifically states that Chase "may refuse, freeze, reverse or delay any specific withdrawal … to or from [Perry's] account" and that Chase "also may limit cash deposits to, or withdrawals from, [Perry's] account[.]" (*Id.*) Thus, regardless of whether Mr. Perry intended for the funds to go to Forge after it touched his account, Chase operated within its legal rights to restrict Mr. Perry's ability to withdraw the funds at issue. *See, e.g., Brown v. JP Morgan Chase Bank, N.A.*, No. C19-1377-JCC, 2020 U.S. Dist. LEXIS 74668, *10 (W.D. Wash. April 28, 2020) (dismissing conversion claim because "Defendant's actions were contractually authorized.")

**B.      Forge's Illinois Fraud Act Claim (Count II) Should Be Dismissed Because Forge Lacks Standing to Bring a Claim Against Chase and There Is No Deceptive Conduct.**

Forge lacks standing to assert a claim under the ICFA. "It is clear that the ICFA is primarily concerned with protecting consumers, not business entities." *JMR Sales, Inc. v. MMC Elecs. Am., Inc.,* No. 02 C 1642, 2002 U.S. Dist. LEXIS 19285, at *8 (N.D. Ill. Oct. 9, 2002). "A non-consumer plaintiff, however, has standing to pursue such claims where it can demonstrate a nexus between

8

the alleged injuries and injuries to the ultimate consumer." *Id.*; *see also In re Estate of Albergo*, 275 Ill. App. 3d 439, 449 (Ill. App. Ct. 1995).

Forge is not a consumer as defined by the ICFA. *See* 815 ILCS 505/1(e) ("The term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for relate in the ordinary course of his trade or business but for his use or that of a member of his household."). Indeed, the FAC admits that Forge has no banking or contractual relationship with Chase. (FAC ¶ 26). Thus, Forge must demonstrate a nexus between Forge's injuries and the injuries to the ultimate consumer. *See JMR Sales*, 2002 U.S. Dist. LEXIS 19285, at *8. But, the FAC does not and states only—in conclusory fashion—that Chase's conduct violated public policy and the PPP program. This is insufficient. *See Goldstein v. Laverdure (In re Laverdure)*, 399 B.R. 310, 315 (Bankr. N.D. Ill. 2008) (dismissing ICFA claim for failure to allege requisite nexus). Forge's failure to demonstrate the required nexus under Illinois law is fatal to its ICFA claim.

Even if Forge had standing (it does not), dismissal is still warranted because Forge has failed to identify any deceptive conduct by Chase. "The elements of a claim under the Illinois Consumer Fraud Act (815 ILCS 505/2 (West 1994)) are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). Crucially, there must be a deceptive act identified in the complaint to state a claim. Here, Forge points to Chase's restriction of Mr. Perry's account and request to provide additional information regarding Mr. Perry's business as the unfair and deceptive conduct for a claim under ICFA. (FAC ¶ 105). However, Chase's exercise of its contractual rights and decision to restrict Mr. Perry's ability to withdraw monies deposited in Mr. Perry's accounts at Mr. Perry's direction cannot constitute unfair and deceptive conduct as a matter of Illinois law.

*See Am. Airlines v. Wolens*, 513 U.S. 219, 233 (1995) ("[A] breach of contract, without more, 'does not amount to a cause of action cognizable under the Consumer Fraud Act and the Act should not apply to simple breach of contract claims.'") (quoting *Golembiewski v. Hallberg Ins. Agency, Inc.*, 262 Ill. App. 3d 1082, 1093 (1st Dist. 1994)); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("The Consumer Fraud Act is 'not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.'") (citing Illinois law); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169 (2005) ("We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it.") (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2d Dist. 2000). Moreover, as Exhibit 3 to the FAC makes clear, Chase clearly articulated the information that Mr. Perry was required to provide in order to receive the funds at issue. As such, Forge has alleged no deceptive act in any event. Dismissal is therefore proper.

### C.     Forge's Claim for Negligence (Count III) Should Be Dismissed

To state a claim for negligence, a plaintiff must allege "a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach." *Jones v. Chicago HMO Ltd.*, 191 Ill. 2d 278, 294 (2000). Illinois courts consistently hold that banks do not owe a general duty of care to non-customers. *Setera v. Nat'l City Bank*, 2008 U.S. Dist. LEXIS 74009, at *11 (dismissing negligence claim brought by non-customer plaintiff against defendant bank) (citing *Thompson v. Capital One Bank, Inc.*, 375 F. Supp. 2d 681, 683-84 (N.D. Ill. 2005)). Forge's claim fails as a matter of law because the FAC does not adequately plead that Chase owed a duty to Forge as a non-customer of the bank. Indeed, the FAC readily admits that Forge was not a customer of Chase and did not have a banking relationship or agreement with Chase. (FAC ¶ 90). Because no amendment can cure the defect in Forge's FAC, the Court should dismiss the FAC with prejudice.

### D.     Perry's Defamation *Per Se* Claim (Count IV) Should Be Dismissed

"To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). "Although a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba*, the substance of the statement must be pled with sufficient precision and particularity so as to permit … judicial review of its defamatory content." *Id*. at 492. Here, Plaintiffs have not met this standard.

The FAC alleges that Chase employees made statements to the Orland Park Police Department's 911 dispatcher and the police officers who responded to the bank that Mr. Perry "had become violent (engaged in alleged disorderly conduct) and was engaged in fraud on the bank and/or the SBA's PPP program." (FAC ¶¶ 128, 129). However, the FAC's allegation that the allegedly defamatory statements were made to the Orland Park Police Department's 911 dispatcher or police officers does not support a defamation *per se* claim because such a statement is subject to privilege. Under Illinois law, "[a] qualified privilege exists [such that] a communication that might be defamatory is not actionable because of the occasion on which or the circumstances under which it was made." *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 425-26 (1st Dist. 1998) (internal citations omitted). That is, "the qualified privilege in Illinois defamation law is based on 'the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information.'" *Dobias v. Oak Park & River Forest High Sch. Dist. 200*, No. 1-15-2205, 2016 IL App (1st) 152205 ¶ 107 (affirming dismissal of certain alleged defamatory statements). Specifically:

> Three conditionally privileged occasions are recognized: (1) situations that involve some interest of the person who publishes the defamatory matter; (2) situations that

11

involve some interest of the person to whom the matter is published or of some third person; and (3) situations that involve a recognized interest of the public.

*Cianci*, 298 Ill. App. 3d at 426.

Here, the first prong is met because the allegedly defamatory statements made to the Orland Park Police 911 dispatcher and police officers were indisputably made concerning Mr. Perry's conduct at the Chase branch and involving Mr. Perry's banking relationship with Chase. As a financial institution in a banking relationship with Mr. Perry, Chase has an interest in ensuring the appropriate use of the branch and the accounts. *See, e.g., El-Sayed v. Bank of Am., N.A.*, No. 13-12458, 2014 U.S. Dist. LEXIS 108821, at *20 (E.D. Mich. Aug. 7, 2014) (Defendant bank-employee's statement that plaintiff "was committing fraud in the real estate business … and therefore, Plaintiff was not allowed to do business with Bank of America anymore" was protected by qualified privilege).

Moreover, "[o]nce a qualified privilege applies, a communication is only actionable if plaintiffs can show actual malice." *Davis v. John Crane, Inc.*, 261 Ill. App. 3d 419, 431 (1st Dist. 1994). Actual malice is shown "when the defendant knew the information it published to be false or acted in reckless disregard of the truth or falsity of the information." *Eubanks v. Northwest Herald Newspapers*, 397 Ill. App. 3d 746, 751 (2d Dist. 2010). Neither is the case here.

First, Mr. Perry does not even try to allege that the purportedly defamatory statements made to the Orland Park Police Department 911 dispatch or police officers were made with knowledge of its falsity or in reckless disregard of the truth or falsity. This alone is sufficient to dismiss the claim. *See Kapotas v. Better Cog't Ass'n*, 2015 IL App (1st) 140534, ¶ 23 (affirming trial court dismissal of plaintiff's defamation claim for failing to adequately allege that defendants acted with actual malice). Second, the FAC itself makes clear that the purportedly defamatory statements made to the Orland Park Police 911 dispatch or police officers were not made with "reckless

disregard." In Illinois, "reckless disregard" has been defined as "proceeding to publish the defamatory matter despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." *Davis*, 261 Ill. App. 3d at 431. Here, the allegations demonstrate that this standard cannot be met. The FAC readily admits that Mr. Perry was yelling at the branch and that 911 was only allegedly called after Mr. Perry began to create a disturbance. (*See* FAC ¶¶ 57-58), indicating a legitimate (and privileged) basis for the alleged statements. Moreover, the Chase letter attached as Exhibit 3 (and the FAC's own allegations about when Forge was organized) establishes that Mr. Perry was unable to provide documentation that Forge was open prior to February 15, 2020 and eligible for PPP loan funds. Thus, the FAC establishes that there were no serious doubts concerning the truth of the any purported assertions that were made by Chase.

**<u>CONCLUSION</u>**

For all of the foregoing reasons, JPMorgan Chase Bank, N.A. respectfully requests that this Court grant its Motion to Dismiss Plaintiffs' First Amended Complaint with prejudice.

Dated: November 4, 2022          Respectfully submitted,

                                     */s/ Christopher A. Mair*
                                     Jonathan H. Claydon
                                     Christopher A. Mair
                                     **GREENBERG TRAURIG, LLP**
                                     77 W. Wacker Drive, Suite 3100
                                     Chicago, Illinois 60601
                                     Tel: (312) 456-8400
                                     Email: claydonj@gtlaw.com
                                     Email: mairc@gtlaw.com

                                     *Attorneys for Defendant*
                                     *JPMorgan Chase Bank, N.A.*

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JORDAN PERRY,

                Plaintiff,

    v.

JPMORGAN CHASE BANK, N.A.,

                Defendant.

No. 22-cv-04326

The Honorable Manish S. Shah

## DECLARATION OF LAURA L. DECK

I, Laura L. Deck, declare and state as follows:

1.      I am a Vice President, Product Manager Senior, for JPMorgan Chase Bank, N.A. ("Chase"). My responsibilities include managing Chase's account agreements.

2.      In my capacity as Vice President, Product Manager Senior, I have access to information in the normal course of business regarding certain of Chase's banking operations and practices, including maintenance, revisions to, and distribution of the account agreements. I also have access through Chase's system to information and documents relating to Chase deposit account holders, including Plaintiff Jordan Perry ("Plaintiff"). Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of Chase business records, maintained by Chase in the ordinary course of business, and my knowledge as a Vice President, Product Manager Senior, with Chase. If called to testify in this matter, I could competently testify as to the facts set forth herein.

3.      Chase makes a copy of the effective Chase Deposit Account Agreement ("DAA") available to every customer who holds a deposit account with Chase. The DAA is also referred to as the Account Rules and Regulations.

1

4.      A true and correct copy of the DAA in effect when Plaintiff opened his checking account on June 8, 2012, is attached hereto as **Exhibit A**.

5.      Since the time that Plaintiff opened his Chase deposit account, Chase has updated the DAA from time to time, including the DAA that was in effect as of February 27, 2021. A true and correct copy of this DAA is attached hereto as **Exhibit B**. Chase notified Plaintiff in writing of updates to the DAA, as set forth in the DAA.

6.      Each of Exhibits A and B is a business record made in the ordinary course of business at Chase.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed on November 4, 2022, at Columbus, Ohio.

Laura L. Deck
Vice President and Product Manager Senior
JPMorgan Chase Bank, N.A.

2

# Exhibit A

# DEPOSIT ACCOUNT AGREEMENT
# PRIVACY NOTICE
# HOW TO CONTACT US



# Welcome to Chase

Thank you for opening your new account with Chase; we look forward to serving you.

Your new deposit account gives you access to a wide range of advantages that can save you time and money and make everyday banking secure and convenient. Such as our 16,000-plus Chase ATMs, 5,300-plus nationwide branches, online banking, bill payment, Chase Mobile®, and Account Alerts.

*Please keep this agreement handy for answers when you need them. And remember, whenever you have a question, you can call us at 1-800-935-9935 (for Business Accounts 1-800-242-7338) or see a Chase banker at your nearest branch.*

# About this booklet

This booklet (formerly known as Account Rules and Regulations) contains the following three sections. Please review this information and keep it with your records.

### DEPOSIT ACCOUNT AGREEMENT

This section is your Deposit Account Agreement, or contract, with us.

The Deposit Account Agreement also includes the following disclosures (which are separate documents we provide to you) that apply to our personal and business accounts:

- Rates for interest-bearing accounts
- Personal accounts:
    - Additional Banking Services and Fees
    - Personal account products
- Business accounts:
    - Additional Banking Services and Fees
    - Business account products
    - Business Deposit Express Fees and Agreement
- Any additional disclosures, such as amendments or agreements, that we will provide to you, either when you open your account or if we change the terms of your account.

### PRIVACY NOTICE

The Privacy Notice explains what we do to keep information about you private and secure, and your choices about how we use your information.

### HOW TO CONTACT US

This section contains information on how to contact us, by phone or mail, if you have any questions.

# Table of Contents

**DEPOSIT ACCOUNT AGREEMENT** ............................................................................................................................. 2

    **General Account Terms** ...................................................................................................................................... 3

        A.    Deposits and Checks You Cash .......................................................................................................... 3

        B.    Checks, Withdrawals, and Other Charges ................................................................................. 5

        C.    Overdrafts and Fees, Overdraft Protection, Setoff, and Security Interest .................. 7

        D.    CDs ................................................................................................................................................................ 9

        E.    Statements and Notice of Errors ................................................................................................... 10

        F.    Forms of Account Ownership .......................................................................................................... 11

        G.    Interest on Checking and Savings Accounts ........................................................................... 14

        H.    Closing Your Account .......................................................................................................................... 14

        I.    Other Legal Terms ................................................................................................................................. 14

    **Substitute Checks and Your Rights** ............................................................................................................... 20

    **Electronic Funds Transfer Service Terms** ................................................................................................. 21

        A.    Types of EFT Services .......................................................................................................................... 21

        B.    Important Information and Agreements about Your ATM or Debit Card ..................... 22

        C.    Limitations on Transfers, Amounts, and Frequency of Transactions ............................ 23

        D.    Receipts and Statements ................................................................................................................... 23

        E.    In Case of Errors or Questions about Your Electronic Funds Transfers ....................... 24

        F.    Our Liability for Failure to Complete Transactions .............................................................. 24

        G.    Stop Payment for Preauthorized (Repeating) Transfers .................................................. 24

        H.    Disclosure of Account Information to Third Parties ............................................................. 25

        I.    Notice of Your Rights and Liabilities ............................................................................................ 25

        J.    Fees .............................................................................................................................................................. 26

        K.    Services Not Covered by This Part; Separate Agreements ................................................ 26

    **Account Alerts and Chase Mobile®** ............................................................................................................. 27

    **Funds Availability Policy** ..................................................................................................................................... 28

**PRIVACY NOTICE** ........................................................................................................................................................ 30

**HOW TO CONTACT US** ...................................................................................................................................... Back Cover

# DEPOSIT ACCOUNT AGREEMENT

*This Deposit Account Agreement is the contract that governs your account. Please be sure to read it carefully and keep it in a safe place. If you have any questions regarding any of the information contained in this agreement, please stop by any Chase branch and talk with one of our bankers. They'll be happy to help. You can also call us at one of the numbers listed on the back cover.*

Whether you're a personal or business customer with a Chase deposit account, this is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or any of our affiliates where you have a deposit account). By signing a signature card or application, or using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms contained in this agreement. Customers of some of our business groups, such as Corporate Banking, will get a different agreement and their accounts will be governed by that agreement, not this one. If you have a product that is not a deposit account, such as a gift card or prepaid debit card, this agreement does not apply to that product. Also, other services, such as online banking or retirement accounts, have additional agreements. If another more specific agreement and this one disagree, the more specific agreement will govern.

This agreement also refers to and includes other disclosures we may provide to you, including (1) product information, (2) rate information disclosures (if applicable), (3) banking services and fee disclosures, and (4) other disclosures, agreements, and amendments that we may provide to you. All may contain information on fees that apply to your accounts.

**Important Definitions:**

Below are definitions of some important terms used throughout this agreement:

**"Account":** Means any deposit account you have with us (such as a checking or savings account) that is covered by this agreement.

**"Business day":** Means every day except Saturdays, Sundays, or federal holidays. Some branches may close on a business day due to an emergency or to observe a state holiday.

**"Direct deposit":** With "direct deposit," someone, such as an employer or the government, sends your funds directly into your account through the ACH electronic payment system.

**"ACH":** Is an electronic deposit to or withdrawal from your account, such as a directly deposited payroll check or a bill payment, sent to us through the "automated clearinghouse," which is an electronic network that sends and receives those transactions.

**"Check":** Means any written order to pay a specific amount of money drawn on, payable through or at, or processed by, a bank or other depository institution. If a check is sent or returned as an electronic image or as a substitute check, it is still considered a check.

**"Available balance":** Your "available balance" is the balance in your account after deducting (1) deposits that are not yet available for withdrawal under our Funds Availability Policy, (2) debit card or other transactions that we are legally obligated to pay or have already paid out in cash, (3) other pending transactions such as ACH transactions, and (4) any holds on your account, such as holds on funds to comply with court orders or other legal requirements.

**"Item":** Means any check, ACH, funds transfer, teller cash withdrawal, ATM withdrawal, debit card purchase, fee, charge, or other amount that is added to or subtracted from your account.

**"Hold on your account":** Means that the funds are still in your account but we will not allow you to withdraw them. A hold may be placed because of delayed funds availability, a court order requiring us to prevent withdrawals, or other reasons. The amount of a hold reduces your available balance by that amount.

**"Overdraft" or "overdrawing" your account:** Means that your account balance, minus any deposits you've made that are not yet available, and minus holds on your account, is less than $0 or that your available balance is not enough to pay all the items that have been presented to us on a business day.

## GENERAL ACCOUNT TERMS

### A. Deposits and Checks You Cash

### 1. Direct deposits; notice of electronic deposits

We encourage you to use direct deposit whenever possible so your money can't be stolen or lost in the mail.

When we receive an electronic deposit for your account, the only notice you will receive is on your next account statement. You may use online banking or Account Alerts or call us to confirm that we have received an ACH or wire transfer deposit.

If the bank that sent an electronic deposit notifies us that it was sent by mistake, or was intended for another customer or account, we may deduct the amount of the deposit from your account without investigating.

### 2. Endorsements

An "endorsement" is a signature, stamp, or other mark made on a check to transfer the check to another person. If any check deposited to your account doesn't have your endorsement, we may endorse it for you, or treat the check as if we had endorsed it. Either way, the effect will be the same – as if you had endorsed the check. Also, any check deposited to your account that appears to contain your stamped or facsimile endorsement will be treated as if you had actually endorsed it. We are not bound by any conditional or restrictive endorsement on a check you cash or deposit, or any endorsement "without recourse."

### 3. Endorsement requirements

To help ensure that checks you deposit or cash will be processed promptly, your endorsement (and any other endorsement before the check is deposited) must be in the 1-1/2 inch area that starts on the right side as viewed from the back. Payee or customer information must not be on any other part of the back of the check (look at the following diagram to see this area):



If you don't endorse your check properly, and it causes us a loss, cost, or expense, you have to pay that amount to us.

### 4. Deposit records and receipts

We may rely on the account number on any deposit slip or similar record we receive, even if that account number is associated with a name that's different from the name you've provided. It's not Chase's responsibility to detect any inconsistency between the account number you provide and the name.

If you make a deposit, we may provide a receipt. However, the amount on your deposit receipt is based only on the deposit slip you complete. We may confirm the funds you deposit and, after review, may adjust your account for any errors – including any errors on your deposit slip. We are not required to adjust your account for discrepancies under $10.

If we issue you a CD receipt and you then decide not to open the CD, or a deposit receipt and you then cancel the deposit, the receipt is void and you may not claim those funds.

### 5. Night depository and large cash deposits

If you use our night depository, you are responsible for any disappearance, theft, or loss of any envelope, bag, or money before we issue a written receipt for the deposit.

Any of our employees may open and count any deposit that a teller didn't count in front of you, including night depository deposits and large cash deposits, and you agree not to dispute that employee's determination of the amount you deposited.

**6. Our right to refuse deposits**

We may refuse a deposit, or part of a deposit, to your account at any time. We also may refuse a deposit after initially accepting it. If we refuse a deposit, we may take the check on a "collection basis," which means we won't add funds to your account until we've actually been paid for the check. We will not be liable to you for refusing a deposit, even if it causes outstanding items to be returned. We can reverse any amount we've added to your account for a deposited check and send the check on a collection basis even after we've taken physical possession of the check.

**7. When you can withdraw funds you've deposited**

Generally, for most accounts, you may withdraw funds the next business day after the business day you deposit them. But in some cases you may not be able to immediately withdraw or write checks against deposited funds. See our Funds Availability Policy for details.

If funds from a deposit become "available" and you can withdraw funds, that does not mean the check or other item you've deposited is "good," has "cleared," or has been paid by the paying bank. It's possible that the item will be returned unpaid months after we've made the funds available to you and you've withdrawn them. No one, including our employees, can guarantee you that a check or other item will not be returned.

**8. Foreign checks**

We are not required to accept for deposit checks that are drawn on a non-U.S. bank or payable in a foreign currency. We may accept those checks on a collection basis without your specific instruction to do so. We can reverse any amount we've added to your account and send the check on a collection basis even after we've taken physical possession of the check. Our Funds Availability Policy does not apply to any foreign check, whether we accept it for deposit or on a collection basis. The actual amount you receive for checks payable in a foreign currency will be determined at our exchange rate for such items that's in effect when we're paid for the check. If a check is returned later for any reason, we will charge your account at the applicable exchange rate in effect at the time of the return, which may be more or less than the exchange rate originally used for the deposit.

**9. Depositing substitute checks**

A "substitute check" is a copy of a check that is the legal equivalent of an original check. You may sometimes receive a substitute check, such as when a check you deposited is returned unpaid. You agree not to deposit substitute checks; however, if you do and we suffer a loss, cost, or expense as a result, you will have to pay us that amount.

**10. Depositing remotely created checks**

"Remotely created checks" are created when an account holder authorizes a payee to draw a check on the account, but instead of the account holder's actual signature, the check identifies that the account holder authorized the check. If you deposit a remotely created check, you guarantee it was authorized by the account holder for payment in the amount it shows.

**11. Our responsibility for collecting deposits**

If you deposit or cash a check, or we send one for collection, we only act as your agent. Our only responsibility is to exercise reasonable care. We will not be liable for the lack of care of any bank we use to collect checks, or for checks lost while being shipped. We may send checks to any bank or directly to any non-bank drawee in our customary manner. We may agree with other banks regarding times and methods for collecting or returning items.

If we lose a check, you agree to use reasonable efforts to help us locate or replace the lost check.

Although we attempt to identify and prevent fraudulent transactions, we have no duty to you to determine whether any check you deposit or cash is forged, counterfeit, altered, improperly endorsed, or otherwise improper. If you deposit the check in your trust account (including any attorney trust account), we may charge your trust account, an account in your name, or charge part of the check to each.

**12. Our right to charge back deposited or cashed checks**

If you deposit any check or other item to your account or cash any check, and we are notified that the item will be returned unpaid or another bank demands that we repay them for the item for any reason, we may deduct the amount of the item from any of your accounts, even if doing so creates an overdraft. If a deposited or cashed item is returned, we will charge you a Deposited Item Return fee, and we may deduct the amount from

any of your accounts. We may deduct the amount from your account whether the physical item is returned to us or not, and whether we can return the item or a copy to you or not. If an item is returned, we will notify you by mail but are not required to give you next-day notice.

We may place a hold on or charge your account for any check or other item deposited into your account if a claim is made or we otherwise have reason to believe that the check or other item was altered, forged, unauthorized, has a missing signature, a missing or forged endorsement, or should not have been paid, or may not be paid, for any other reason. When the claim is finally resolved, we will either release the hold or deduct from your account the amount of the item.

### B. Checks, Withdrawals, and Other Charges

### 1. Withdrawals and transfers from your account

We may subtract from your account the amount of any check or other item that you or any person you authorize created or approved. We may require you or any person you authorize to provide us with identification, documentation, or information that's acceptable to us.

### 2. Your check forms

Checks and other account documents you use must be on forms obtained through or approved by us. We're not responsible for losses that result from improper printing on documents we don't approve. We may refuse to accept for deposit or pay checks in a form that we cannot process or photograph using our customary equipment.

### 3. Protecting your checks

You must protect your checks and other account documents and information from theft and unauthorized use. You must write your checks in a way that prevents someone else from completing, altering, or adding to them without your authorization. If you become aware that any checks or other documents and information, such as statements, have been lost or stolen, you must notify us immediately. If you fail to do any of these things, we are not responsible for any losses that may result.

### 4. Incomplete, future-dated, or conditional checks, and checks dated more than six months before payment

You agree not to write a check that's incomplete, future-dated, or conditional (one that tries to limit the time or method of payment, such as "Void after 180 days" or "Valid only for $1,000 or less"). We have no duty to discover, observe, or comply with such checks. If we pay a conditional check, the conditions do not apply to us.

We may choose to pay or not to pay a check that is dated more than 6 months before it is presented for payment regardless of how old it is, and if we pay it, you will be responsible for the check.

### 5. Multiple signatures

We are not required to comply with any multiple-signature requirement, either on personal or business accounts, even if your signature card specifies that multiple signatures are required or you have otherwise instructed us to do so. This requirement is for your internal control purposes only.

### 6. Facsimile signatures

We may pay a check bearing any form of facsimile or computer-generated signature. If you use a facsimile or computer-generated signature, or provide a signature card authorizing any such signature, you will be solely responsible for any check bearing a similar signature, regardless of your negligence or whether the signature was the same one you previously used.

### 7. Check cashing

If a person who is not our deposit or loan customer tries to cash your check at any of our branches, we may charge them a fee or refuse to cash it. We may also require that they provide us identification we deem acceptable, including fingerprints.

### 8. Large cash withdrawals

We may place reasonable restrictions on the time and method of any large cash withdrawal. If you make a large cash withdrawal, we may also require that you sign a document releasing us from any liability if you are robbed or assaulted. We may refuse the cash withdrawal if you do not agree with these conditions.

### 9. Review of checks and signatures

Check payment is highly automated, and we pay millions of checks every day. Although we inspect some checks, you agree that reasonable commercial standards don't require us to do so. If we return a check because we believe it doesn't match your signature card, we're not liable to you even if the check was actually authorized. If the numeric amount on a check doesn't match the amount written out in words, we may select either one when paying it. We have no duty to prevent a check from being presented more than once.

### 10. Notice that a check has been deposited or cashed

If we're notified that a check drawn on your account has been deposited or cashed at another bank, we may place a hold on your account for the check amount, which may cause other items to overdraw the account. If the amount of the check identified in the notice exceeds your account balance at the time we receive the notice, we may notify the other bank of that fact.

### 11. Account numbers on funds transfers

If you instruct us to send a funds transfer, such as a wire or ACH transfer, we and every other bank involved in the transfer may rely on any bank number or account number you provide. If the funds transfer instruction gives both a bank number or account number and a name, and the name identifies a different person from the bank or account owner identified by number, we and other banks that handle the funds transfer may still rely exclusively on the number, and have no duty to detect any inconsistency between the bank number or account number and the name.

### 12. Fees

You agree to pay all fees applicable to your account. When you opened your account, we provided you a schedule of fees applicable to your account, and we will notify you of any changes. We may charge these fees to your account at any time even if the charge overdraws your account.

### 13. Stop payments

You may stop payment on a check drawn on your account, and we will charge a Stop Payment fee. However, you cannot stop payment if we have already certified, paid, or otherwise become responsible for the check. For example, you can't stop payment on a check we've already cashed because we became responsible for the transaction as soon as we cashed it. Any one owner or authorized signer of an account may order us to stop payment on a check drawn on the account. Refer to the Electronic Funds Transfers section for how to place a stop payment on recurring electronic payments.

To stop payment on a check, you must give us an oral or written stop payment order using the phone number or address listed on the back cover, or in person at a branch, or by making an electronic stop payment order through online banking. You must give us the exact account number, and either the exact check number or amount, so we can identify the item. It may take up to one full business day from the time we receive this information until a stop payment order becomes effective.

For personal accounts, a stop payment order is effective for 180 calendar days, and may not be extended. However, you may place a new stop payment order, which will be effective for 180 days from the day this additional order is placed. An additional Stop Payment fee will be charged. We will not send a confirmation of your stop payment order.

For business accounts, your stop payment order may either:

- Be effective for 180 days, or
- Be effective for one year and then automatically renewable annually for 6 additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment Renewal fee, unless you notify us not to renew by returning the notice portion of the statement.

For business accounts, we may send you a written confirmation of your stop payment order. Information in the written confirmation will be presumed correct unless you notify us immediately of any errors.

Whether you have a personal or business account, when the stop payment order expires, we may pay the item and have no duty to notify you except for identifying the item as paid on your statement.

We are not required to accept a stop payment on a cashier's check, teller's check ("official check"), or certified check, unless you provide us a sworn statement – in a form we deem acceptable – that the check is lost, stolen, or destroyed. After a stop payment is placed, we are not required to refund the money used to purchase the check, or issue a replacement check, until and unless the check is not presented for payment within 90 days

after the issue or certification date. If in our discretion we agree to refund or replace the check, we will require that you purchase a surety bond for the amount of the check.

### 14. Limits on savings account withdrawals

Withdrawals or transfers out of your savings account are limited by federal law. In this agreement, a savings account means an account with limited withdrawal privileges, including a money market account.

During any monthly statement period, you may make no more than 6 withdrawals or transfers (for example by check, debit card, ACH, telephone, Internet, Overdraft Protection transfer) out of these accounts. However, this limit does not apply to withdrawals made in person or through ATMs, mail (by a check payable and mailed to you), or messenger.

We are required by law to ensure that you comply with this limit. If you exceed this limit after we've notified you of a violation, we will change your account to one we choose that doesn't limit withdrawals, and it may be an account that pays less or no interest.

### 15. Savings Withdrawal Limit fee

If you make more withdrawals or transfers out of your savings account than your account terms permit in a monthly statement period, we will charge a Savings Withdrawal Limit fee. This fee is based on all withdrawals and transfers, not only those that are limited by federal law.

### 16. Our right to require advance notice of withdrawals

For all savings accounts and all personal interest-bearing checking accounts, we reserve the right to require 7 days' prior written notice of withdrawal.

### 17. Death or incompetence of account owner

Notify us immediately if any account owner dies or is declared incompetent by a court. Until we receive notice otherwise, we may act as if all owners are alive and competent.

After we receive notice of death or incompetence, we may freeze the account, refuse to accept transactions, and reverse or return deposits to the account. We are also not required to release funds in the account until we receive any documents we reasonably request to verify the death or incompetence, as well as who is entitled to the funds. If we have any tax liability because of paying funds in an account to you or your estate, you or your estate will be responsible for repaying us the amount of that tax.

If an account owner authorizes an item, but it's not presented for payment until after that owner dies, we are authorized to pay the item after the owner's death. If an account owner owes us a debt at the time of death, we are authorized to exercise our right of setoff (our right to apply funds in one account to the debt associated with another) or security interest rights against the account after the owner's death. We have these rights even if a surviving joint owner, a POD payee, or a beneficiary of an ITF or "trustee for" account has rights to the account.

### C. Overdrafts and Fees, Overdraft Protection, Setoff, and Security Interest

### 1. Overdrafts

We may, but are not required to, refuse to pay any item unless your available account balance at the time is equal to or more than the amount of the item, plus all other items received but not yet paid. Even if we've paid overdraft items before, we are not required to do it in the future. For personal accounts, unless you have notified us that you DO want us to pay debit card overdrafts at our discretion, we generally won't authorize a non-repeating ("everyday") debit card transaction if your available account balance isn't enough to pay that transaction. For business accounts, if you have notified us NOT to pay debit card overdrafts we generally won't authorize a non-repeating ("everyday") debit card transaction if your available account balance isn't enough to pay that transaction.

We look at your account balance only once from the time we receive an item until we return it to decide whether the item causes an overdraft. We may deduct from your account the amount of a debit card transaction at the time of an authorization request.

Generally, for each business day, we will first add deposits to your account, then subtract wire transfers, non-repeating ("everyday") debit card transactions, online banking transactions, ATM withdrawals, teller cash withdrawals, cashed checks, and deposited checks drawn on us in the order in which they were authorized, withdrawn, or deposited, and then subtract all other items starting with those having the highest dollar amount and moving to the lowest. We reserve the right to use a different order in certain states.

It's your responsibility to avoid overdrawing your account. See a banker to learn about Overdraft Protection. We also offer Account Alerts to keep you informed about the balance and transactions in your account.

**2.      Your responsibility to repay overdrafts**

You must promptly pay the amount of any overdraft along with any fees that apply. If you don't, you may be charged additional fees or interest. We also may report you to credit reporting agencies, close your account, or both. This could affect your ability to open accounts with us or other banks in the future.

You authorize us to use the money from any subsequent deposits to your account to pay any overdraft and resulting fees. Subsequent deposits include any federal or state benefit payments that you choose to deposit in any account (including direct deposit of Social Security). You understand and agree that if you don't want your benefits applied in this way, you may change your direct deposit instructions at any time.

You agree to pay all costs and expenses we incur in collecting any overdraft, including attorneys' fees. In addition, if we close your account with an outstanding overdraft and charge off the amount of the overdraft (that is, take a loss), we will charge a Charged Off Processing fee. We may still pursue collection of the amount you owe (including suing you) after it is charged off.

**3.      Insufficient Funds, Returned Item, and Extended Overdraft fees**

We will charge a fee for any item presented on a business day when your account is overdrawn, whether or not we pay the item. If we pay it, we will charge an Insufficient Funds fee. If we return it, we will charge a Returned Item fee. For personal accounts, we will only charge an Insufficient Funds fee for an everyday debit card transaction if you have notified us to pay debit card overdrafts. For business accounts, we will charge an Insufficient Funds fee for an everyday debit card transaction unless you have notified us not to pay debit card overdrafts.

We may limit the number of Returned Item and Insufficient Funds fees we charge for a business day. We will not charge Insufficient Funds fees if your ending account balance is overdrawn by $5.00 or less or is overdrawn due to a Funds Availability Policy hold and notice of that hold is not provided at the time of the deposit. We will charge an Extended Overdraft fee for any overdraft balances that you haven't repaid promptly, we may charge interest for any overdraft, or we may do both.

Refer to your fee schedule for information about what fees apply and how fees are calculated for your account.

**4.      Overdraft Protection agreement**

*Overdraft Protection request:* If you request Overdraft Protection, you must specify one or more checking accounts you want protected by the service, and a single account with us or our affiliate for each checking account where the money will come from for Overdraft Protection. That account is called a "funding account." It may be a savings account (including a money market account), a credit card account in good standing, or another qualifying line of credit account. Personal checking accounts may only be linked to personal funding accounts, and business checking accounts may only be linked to business funding accounts. Any person who is an owner of both the checking account and the funding account may request the service without the consent of other owners. Overdraft Protection will become effective within a reasonable time after we have approved your request.

*Activation:* If you overdraw an account that has Overdraft Protection, we will automatically transfer available funds from the funding account to the checking account in increments of $50.00 that are enough to pay the overdraft amount and all transfer fees. Transfers will appear on the periodic statements for each applicable account. We are not required to notify you if the funding account becomes unavailable.

*Fees:* We'll subtract an Overdraft Protection Transfer fee from your checking account each day we transfer funds. If more than one checking account receives a transfer on the same day, we'll subtract a fee from each account. The fee amount is disclosed in our fee schedule.

*Limits on Overdraft Protection:*

- We will not transfer more than the available account balance in a savings account or the available credit in a credit account, even if the amount of the overdraft is more than that available amount. If the available account balance isn't enough to pay all the checks and other transactions you have initiated on any day plus the Overdraft Protection Transfer fee in increments of $50.00, we will transfer enough funds to pay one or more transactions, plus the fee. If the available account balance is enough to pay one or more transactions but not the fee, we'll transfer enough to pay just the transactions. However, we will charge the Overdraft Protection Transfer fee against the account, causing the account

to be overdrawn. Any transactions that are not paid by the transfer will either be paid or returned and Insufficient Funds fees or Returned Item fees will be charged as if you didn't have Overdraft Protection.

- Transfers from a savings account used as the funding account are limited by federal law. There must not be more than 6 Overdraft Protection transfers and other limited transfers per monthly statement period. The section entitled "Limits on savings account withdrawals" explains these limits in more detail.

- Overdraft Protection will not be available if the funding account is closed or blocked for usage.

*Termination of Overdraft Protection:*

- We may terminate Overdraft Protection at any time by sending you written notice.

- Any owner of the checking account, any owner of a savings account used as the funding account, or any borrower on a credit account used as the funding account may cancel Overdraft Protection in person or in writing. Cancellation will be effective after we have received notice and had a reasonable time to act on it.

**5. Setoff and security interest**

If you owe a debt to us or any of our affiliates (either now or in the future), you grant us a right of setoff to, and a security interest in, all of your accounts to secure the debt. Debts include any overdrafts or fees you owe. If the debt is due or overdue, we may use the funds in any of your accounts to pay all or part of the debt. If your account is a joint account, we may use the funds in the joint account to pay the debt of any account owner. Our security interest will be governed by Uniform Commercial Code Article 9, whether Article 9 applies by its terms or not. We do not have to give you any prior notice to apply the funds. You expressly agree that our rights extend to any federal or state benefit payments (including Social Security benefits) electronically deposited to your account. If you don't want your benefits applied in this way, you may change your direct deposit instructions at any time with the person or organization paying the benefits. The right of setoff does not apply if the debt is created under a personal credit card plan.

If any federal benefits or other payments are deposited to your account after you become ineligible to receive them, we may set off against any of your accounts to recover the payments if we're obligated to return funds to the payor.

**D. CDs**

A "certificate of deposit" or "CD" is a deposit with us for a specified period of time. This section covers both retirement and non-retirement CD products, unless otherwise indicated. By opening your CD, you agree to keep the amount deposited (principal) on deposit. Here are a few things you should know about CDs:

- **Term:** The term is the number of days, months, or years you agree to leave your money in the account.

- **Maturity Date and Grace Period:** The maturity date is the last day of your CD's term. For CDs with a term of 14 days or longer, we also provide you a grace period of 10 days after the maturity date. You can withdraw your CD principal without paying an early withdrawal penalty, make additional deposits, or change the rate or term of your CD only on the maturity date or during the grace period.

- **Single Maturity CD:** A single maturity CD will not automatically renew on the maturity date and won't earn or be paid interest after that date.

- **Automatically Renewable CD:** An automatically renewable CD will renew on the maturity date for the same term unless we notify you otherwise or you change or close the account. Once your CD renews, any reference to the maturity date means the last day of the new term. After renewal, your CD will earn interest either at the standard interest rate that we offer for that CD term on the renewal date or at the relationship interest rate, if you qualify. If your CD is closed during the grace period, it will not earn interest after the maturity date.

  **Note: If your CD has a CD Special Interest rate, that rate only applies to the initial CD term.** Ask your banker about currently available CD Special Interest rates at maturity or during the grace period.

- **Interest:** We use the daily balance method to calculate interest on your CD. This method applies a periodic rate each day to your account balance. Interest begins to accrue on the business day of your deposit. Interest for CDs is calculated on a 365-day basis, although some business CDs may calculate interest on a 360-day basis. The Annual Percentage Yield ("APY") disclosed on the face of your deposit receipt or on the maturity notice assumes interest will remain on deposit until maturity. On maturities of more than one year, interest will be paid at least annually and the amount(s) paid will be reported to the IRS each calendar year. A withdrawal will reduce earnings.

**Withdrawing interest.** You may choose to withdraw any paid or credited interest without penalty during your CD's term or at maturity. After the maturity date and grace period, interest will become principal of the renewed CD.

- **Early Withdrawal Penalties. There is a penalty for withdrawing principal prior to the maturity date.**
    - If the term of the CD is less than 365 days, the early withdrawal penalty is equal to $25.00 plus 1% of the amount withdrawn.
    - For terms of 365 days or more, the early withdrawal penalty is equal to $25.00 plus 3% of the amount withdrawn.
    - If the withdrawal occurs less than 7 days after account opening or a previous withdrawal, the amount of the early withdrawal penalty will be calculated as we described above, but it cannot be less than 7 days' interest.

  If the amount of accrued and unpaid interest on the deposit is less than the penalty, the difference will be deducted from principal.

- **Waiving Early Withdrawal Penalties.** We will waive early withdrawal penalties in these circumstances:
    - Death of a CD owner or a grantor of a revocable family/living trust;
    - Disability of a retirement CD owner;
    - Court determination that a CD owner is incompetent;
    - Re-titling of a CD (excluding a retirement CD) to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs;
    - For retirement CDs, if the owner is 59-1/2 or older and the funds are taken as an IRS-reportable distribution via cash, check, or deposit or transfer to a non-retirement account. This waiver does not apply if the transfer is to a retirement account at another financial institution;
    - For retirement CDs, if the owner is revoking his or her Traditional IRA/Roth IRA within 7 days after establishing the plan (must forfeit accrued interest); and
    - For retirement CDs, if the owner is withdrawing funds for one of the following reasons without moving funds from the bank and where no change in term or rate occurs:
        - Converting or reconverting Traditional IRA or SEP funds to a Roth IRA;
        - Recharacterizing Traditional IRA/SEP funds to a Roth IRA or vice versa; or
        - Directly rolling over funds in a Money Purchase Plan or Profit Sharing Plan to a Traditional IRA, SEP, or Roth IRA.

We will also waive early withdrawal penalties under the circumstances described below. However, if the withdrawal occurs less than 7 days after the account was opened or a previous withdrawal was made, a penalty of 7 days' interest must be applied. These circumstances are as follows:

- Disability of a CD (excluding Retirement CD) owner;
- For retirement CDs, if the owner is under age 59-1/2 and one of the reasons defined by sections 72(t) and 530 of the Internal Revenue Code applies, such as payment of qualified education expenses and first-time home purchase expenses; and
- For retirement CDs, if the owner is withdrawing an excess annual retirement contribution amount and any corresponding earnings.

### E.    Statements and Notice of Errors

### 1.    Statements

We will send an account statement for checking and savings accounts to the current address listed on our records. We will send statements monthly, unless the product information for your account indicates otherwise. If there have been no deposits or withdrawals to your checking account within a 2-month period, or to your savings account or linked checking and savings accounts within a 30-month period, we may send only annual statements. Statements will be sent via ordinary U.S. mail, unless you and we agree otherwise. Statements are also available through online banking. For some accounts we may charge a Statement fee if you receive a paper statement.

We'll send only one statement for any account, even if it has more than one owner. You agree that sending the account statement to one owner qualifies as sending it to all owners, even if all owners don't have access to the mailing address of record for the account.

We may change your mailing address of record if we receive an address change notice from the U.S. Postal Service, or if we receive information from another party in the business of providing correct address information, that the address in our records no longer matches your address. If we do so, we'll notify you. If your statement is returned as undeliverable, we may discontinue mailing statements, but statements will be considered available to you on the day they are generated.

A "statement period" means the period covered by your account statement. If you receive a statement monthly, the monthly statement period may or may not be a calendar month, but in most cases it won't be more than 32 days or less than 28. If you receive a statement quarterly or annually, a monthly statement period means a calendar month. The specific dates covered by your account statement will be on your statement.

### 2.    Notice of errors, forgeries and unauthorized signatures

You must notify us in writing within 30 days after we mail a statement or otherwise make a statement available (for example, paperless statements) if:

- An item that you did not authorize or that is altered is listed on the statement;
- Your account statement contains any errors; or
- You did not receive your scheduled statement.

You must notify us in writing of any unauthorized, improper, or missing endorsements within 6 months after the account statement is mailed or made available.

You must provide us with all information we need to investigate the alleged error or item. You must also file any police reports and provide any supporting affidavits and testimony we reasonably request.

If you do not comply with the requirements above, we are not required to reimburse you for any claimed loss, and you cannot bring any legal claim against us in any way related to the item or errors. However, the Electronic Funds Transfer Services Terms section of this agreement applies to the reporting of errors on personal electronic funds transfers subject to Federal Reserve Board Regulation E. You also have certain rights under federal law for substitute checks; please see the Substitute Checks and Your Rights section of this agreement for more information.

### 3.    Options for receiving checks

We offer three choices for how checks you've written or authorized can be delivered to you:

- "Check safekeeping" means we keep images of your checks, which are available through online banking. We do not include your paid checks or images of them with your statement. Some accounts require check safekeeping.
- "Image statement" means we only include images of the front of your paid checks with your statement.
- "Check enclosure" means we return legal copies of your checks with your account statement. (Not offered on all accounts.)

If you have more than one personal checking account on a single statement and one checking account uses check enclosure, all other checking accounts will use check safekeeping. If you have more than one business account on a single statement, you may choose check enclosure for multiple checking accounts. If you have more than one checking account on a single statement and any account uses image statement, then other checking accounts will also use image statement, unless the terms of the other accounts require check safekeeping.

You agree that when we keep a copy of the check we have made the check available to you, even if we do not send originals or images with the statement. If we do not return your paid checks, we may destroy original checks after a reasonable period of time we determine. We may charge you an Item Copy fee for each copy of a paid check you request, unless the law states otherwise. If for any reason we can't return a copy of your check or satisfy your needs in another way, you agree that we will not be liable for more than the face amount of the check.

We cannot provide originals or images of checks that are sent to us as electronic transfers. Additionally, other banks may send us electronic images instead of original checks. If you receive an image statement, in those cases the image will appear with other checks. We can provide a copy of the image, but not the original check.

### F.    Forms of Account Ownership

### 1.    Personal accounts

NOTE: THE TYPE OF ACCOUNT OWNERSHIP MAY CHANGE HOW YOUR FUNDS ARE PAID IF YOU DIE, EVEN IF YOUR WILL STATES OTHERWISE. PLEASE CONSULT YOUR ESTATE PLANNING ADVISOR OR ATTORNEY ABOUT YOUR CHOICES.

If your account is a type listed under "Personal Accounts" in our product information, you agree not to use it for business purposes. Ownership of your account is determined by the most current signature card. However, we are authorized to rely on the account ownership information contained in our deposit system unless we are notified that the most current signature card and the deposit system contain different information.

### i. Solely owned account

When only one individual is listed as the owner of an account, we will treat the account as a solely owned account.

### ii. Joint accounts

When two or more people are listed as owners of a personal account, the account is a "joint account" and each owner is a "joint owner."

If your joint account becomes overdrawn, you're liable for the full amount of the overdraft, whether you initiated or benefited from the item(s) that caused the overdraft.

If one joint owner requests that we not pay items authorized by a different joint owner, we may restrict the account and refuse to pay all items (including items authorized by the owner making the request), but we are not required to do so. If we restrict the account, we may not release the restriction unless all joint owners agree in writing to remove it. No request to restrict the account will affect items that we paid before the request. If we decide not to restrict the account, all joint owners remain responsible for items subtracted from the account.

Any joint owner may close the account. We may choose whether or not to act upon other instructions of any joint owners, including adding an additional owner to the account, without the signature of the other joint owners. We may also pay all or any part of the funds in the account to a court or government agency if we receive a garnishment, levy or similar legal process that identifies any of the joint owners.

#### a. Joint account with rights of survivorship

If a joint account has rights of survivorship, and one joint owner dies, the account will be paid to the surviving joint owners. The estate of the deceased owner will have no rights to the account. If there is more than one surviving joint owners, the account will continue as a joint account with rights of survivorship among the remaining owners. If an account is designated "JAWROS" or "JTWROS," it has rights of survivorship.

#### b. Joint account with no right of survivorship (also called "tenants in common")

If a joint account does not have rights of survivorship, and one joint owner dies, that owner's interest passes to the owner's estate. Either the surviving joint owners or the deceased owner's estate may withdraw the funds at any time, and we have no responsibility for determining the respective interests of the owners. If an account is designated "Tenants in common" or "JTIC," it does not have rights of survivorship.

#### c. When survivorship rights apply

Except as otherwise stated in this paragraph, a joint account has rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created without these rights. Accounts in Louisiana do not have rights of survivorship. Accounts in Texas do not have rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created with these rights.

If a joint account also contains a "payable on death" or "in trust for" designation, the account always includes a right of survivorship and is payable to the beneficiary only upon the death of the last surviving owner, except as stated in paragraph d. below.

#### d. Marital account (WI only)

If one owner of a marital account dies, the survivor is entitled to 50% of the account funds and the estate of the deceased is entitled to the other 50%. If a marital account contains a POD designation, the POD beneficiary is entitled to the deceased spouse's 50% share. However, we have no responsibility to determine the respective interests of the owner and the POD beneficiary.

#### e. Tenants by the entirety (FL only)

A Florida joint account owned solely by two spouses is a "tenants by the entirety" account unless the signature card indicates otherwise. We are not required to determine whether an account is a tenants by the entirety account before responding to a garnishment or other legal process. We may assert our right of setoff or security interest in a tenants by the entirety account in order to collect debts of either owner.

### iii. "Payable on death" account

If you establish your account "payable on death" to one or more beneficiaries, the account is a "POD" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designate. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer POD accounts in all states.

### iv. "In trust for" (informal trust) account

If you establish your account as "in trust for" ("ITF") or as trustee for one or more beneficiaries without presenting formal trust documents, we may treat the account as a "Totten Trust," "informal trust," or "ITF" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designate. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer ITF accounts in all states.

**v. Convenience accounts**

If you have a "convenience" account, you are its sole owner, but you authorize an additional signer to write checks or authorize other items. You are solely responsible for the actions of the additional signer.

**vi. Powers of attorney**

If you wish to designate an agent under a power of attorney, you must do it in a form we deem acceptable. We may refuse to honor any power of attorney presented to us, or refuse to recognize a successor agent, even if the successor agent is named in a power of attorney that we have previously honored, unless state law requires otherwise. In addition, we may refuse to follow an agent's instruction to make the agent a joint owner or a POD or ITF beneficiary of an account, but we have no liability to anyone if we do so. We may rely on a power of attorney until we receive written notice that it has been revoked either from you or as a matter of law (for example, by your death).

**vii. Uniform Transfers to Minors Act/Uniform Gifts to Minors Act account**

If you're the custodian of an account under a state's Uniform Transfers/ Gifts to Minors Act, you can't pledge it as collateral for a personal loan to you, or cash checks against it.

**viii. Representative payee/VA custodian account**

If you open an account as a "representative payee" for someone who receives Social Security payments, or a legal custodian, spouse payee, or other custodian for someone who receives Veterans Administration payments, you agree not to permit any deposits in the account other than the designated payments. However, we are not required to determine whether you deposit other funds or whether any withdrawals or transfers from the account are for the support of the person for whose benefit the funds are paid. This person is called the beneficiary. If the beneficiary dies, you must promptly notify us and stop all further deposits to and withdrawals from the account. If the government demands that we return deposits made after the beneficiary's death and the account does not have enough funds to pay the demand, we may take the funds from any account you or the beneficiary owns.

**ix. Other fiduciary accounts**

If you open an estate account, trust account, guardianship or conservatorship account, or other similar type of account, we reserve the right to require any documents we reasonably request to satisfy us that you are authorized to open and use the account, including withdrawing the funds. We do not have to permit any withdrawal from the account until we receive all requested documents. We have no fiduciary duties to you as the trustee, executor, guardian, or conservator, or to the beneficial owners of the account.

**2. Business accounts**

If your account is a type listed under "Business Accounts" in our product information, you agree to use it for business purposes.

If our records list a business organization as the owner of an account, the account is payable to the business organization and not to any individual director, shareholder, member, or partner. A "business organization" means a corporation, unincorporated association, limited liability company, partnership (including a limited partnership, limited liability partnership, or joint venture), or any other business or non-profit organization. We may rely on the accuracy and completeness of all resolutions, signature cards, and other documents you deliver to us in connection with the account. If the resolutions, signature cards, or other documents you deliver state that a person is authorized to sign checks or otherwise initiate transactions on your account, that person is called a "signer."

If the account owner is a "sole proprietorship," that means that a single person conducts the business as his or her own property, instead of through a business organization. A sole proprietor may also designate signers by appropriate documents. We may in some states allow a married couple to open an account as a sole proprietorship.

If you change your form of ownership or authorized signers, you must notify us when the change occurs.

A signer is authorized to endorse checks payable to the business. Endorsements "for deposit" may be written or stamped. An eligible signer is also authorized to sign checks drawn against your account. We are authorized to pay checks without asking how the checks were issued or how the proceeds will be used, even if the check is payable to the person who signed the check.

An eligible signer is authorized to instruct us to close accounts or do anything else involving any account, and to sign any agreements or documents relating to accounts or other business.

We may, although we are not required to, cash checks payable to – or accept "less cash" deposits from – a business organization.

**3. Linked accounts**

We will let you, at our discretion, link many checking accounts to other accounts you have with us or our affiliates. Linked accounts may help you avoid some fees and get higher interest rates. An account may only

be linked to one checking account for avoiding fees and getting higher interest rates. Refer to your product information to determine what accounts are eligible to be linked and what the benefits are from linking accounts.

We may automatically link accounts. If we don't, you may ask to have your accounts linked. You agree that information regarding your account may be made available to any other owner or signer on any of the accounts you have linked.

If you choose to link your personal or business accounts to other personal or business accounts for which you serve as trustee or custodian (fiduciary), your personal account may receive a financial benefit, which could be a violation of your fiduciary duties. We are not responsible for your decision to link fiduciary and personal accounts. You should carefully consider this decision and consult with your legal advisor if necessary.

**4.    Combined statements**

Checking, savings, and CD accounts with at least one common owner may be combined on a single statement, either automatically or at your request. If accounts are included on a combined statement and you don't want that, notify us and we'll separate the statements.

Linked accounts do not have to be on a combined statement to receive the benefits of linking, and combining accounts on a single statement does not mean that the accounts are linked.

You agree that information regarding your account may be made available to any other owner on any of the accounts included on a combined statement.

**G.    Interest on Checking and Savings Accounts**

When you open a checking or savings account that pays interest, we will provide you a rate sheet stating the current interest rate and Annual Percentage Yield for your account. The rate sheet is considered a part of this agreement.

Your account has a variable interest rate. That means we may change the interest rate and Annual Percentage Yield as often as we choose, without limits and without notice. Interest begins to accrue on the business day we receive credit for your deposit. For cash and electronic transfers, interest begins to accrue on the business day of your deposit.

We use the daily balance method for calculating interest. This method applies a daily periodic rate to the balance in your account each day, which may be based on collected or ledger balances as set forth in the product information for your account. The collected balance is the balance of all deposits in your account on which we have received credit for the deposited funds (determined by the availability schedule of our Federal Reserve Bank for non-cash items). The ledger balance is the balance in your account without regard to credit or availability. We reserve the right not to pay interest on any deposited item that is returned to us unpaid.

Interest is credited and compounded monthly. However, Chase Retirement Money Market accounts with interest distributions will not compound, and interest will be credited on the distribution date. Unless otherwise stated in your product disclosure, interest is computed on a 365-day basis. We pay interest only in whole cents. Therefore, at the end of each interest payment period (usually monthly), any fractional amount of interest less than half of one cent will be rounded down and any fractional amount of interest equal to half of one cent or more will be rounded up to the next whole cent.

**H.    Closing Your Account**

Either you or we may close your account (other than a CD) at any time for any reason or no reason. If you close your account, you may be charged an Account Closing fee. We may automatically close your account if the account balance is $0 or negative. Any closed account may be automatically reopened if we receive a deposit to the account. Either you or we may close your CD account on any maturity date without cause.

We may send you written notice that we have closed or will close your account and return the account balance less any fees, claims, setoffs, or other amounts if the balance is greater than $1. After your account is closed, we have no obligation to accept deposits or pay any outstanding checks. We will have no liability for refusing to honor any check drawn on a closed account. We have the right to advise consumer reporting agencies and other third party reporting agencies of accounts closed for misuse, such as kiting or overdrafts.

**I.    Other Legal Terms**

**1.    Telephone and electronic communication**

We may record and/or monitor any of our telephone conversations with you. If we do record, we do not have to keep the recordings, unless the law says we must.

If you give us your cell phone number as a contact number for your account, you agree that we may send messages to that number via text or by calling it, including autodialed or prerecorded calls.

Communications may be sent electronically, such as e-mail or text messages, rather than via U.S. mail or other means, unless the law says otherwise.

## 2. Adverse claims

We may (but are not required to) restrict or close your account if there are conflicting instructions or there is an account dispute. We may place funds in a court (this is called an interpleader action) for resolution. If any person notifies us of a dispute, we do not have to decide if the dispute has merit before we take further action. We may take these actions without any liability and without advance notice, unless the law says otherwise.

## 3. Restricting your account

We may restrict your account if it's involved in any legal or administrative proceeding or if we reasonably believe that doing so is necessary to avoid a loss.

## 4. No waiver

If we fail to exercise any right, that failure will not waive that right or any other right, and we may still enforce all of our rights in the future.

## 5. Changes to the agreement

We may change the terms of this agreement, including any fees and features of your account, at any time. We will tell you about changes at least 30 calendar days in advance. However, unless the law requires us to send you notice in a different way, the notice may direct you to a branch or our website for the content of any changes or a copy of the revised agreement. For automatically renewable CDs, we will tell you before the renewal date and changes will be effective on the renewal date. You agree that notice of these changes may be provided to any joint owner. By maintaining your account after the effective date of any change, you agree to the change. We are not required to send you notice of interest rate and Annual Percentage Yield changes for variable rate accounts or notice of changes in document printing fees.

This agreement may be changed or terminated without notice if necessary to comply with any appropriate federal or state law or regulation.

## 6. Rules governing your account

This agreement, all accounts and services provided to you, and any dispute relating to those accounts and services are governed by federal law and, when not superseded by federal law, the law of the state where your account is located. Your account is considered located in the following state:

- If you opened your account in person, the U.S. state where you opened the account;
- If you opened your account by mail, internet, or other remote means and you resided in a U.S. state where we had branch offices at that time, the state where you resided; or
- If you opened your account by mail, internet, or other remote means and you did not reside in a U.S. state where we had offices at that time, Ohio.

Transactions in your account are also subject to applicable clearinghouse and Federal Reserve rules and regulations.

We will not be liable for anything we do in following your instructions. In addition, we will not be liable for not following your instructions if we reasonably believe that your instructions would expose us to potential loss or civil or criminal liability, or conflict with customary banking practices. **WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED SIGNATURE, OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, WILL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.**

If this agreement conflicts with any statements made by one of our employees or our affiliates' employees, this agreement will control.

**7. Sub-accounts**

For accounting purposes, all checking accounts consist of two sub-accounts: i) a transaction sub-account where all deposits, withdrawals, and fees are posted, and ii) a holding sub-account, where available balances above a certain level are transferred daily. Funds will be retransferred to your transaction sub-account to meet your transactional needs; however, all balances in the holding sub-account will be transferred to the transaction sub-account with the sixth transfer in any calendar month or monthly statement period.

Both sub-accounts are treated as a single account for purposes of your deposits and withdrawals, earning interest, access and information, tax reporting, fees, etc.

**8. Research, legal process and requests for information**

If we receive any legal process relating to you or your account, you authorize us to comply with it. "Legal process" means any document that appears to have the force of law that requires us to hold or pay out funds from your account, including a garnishment, attachment, execution, levy, or similar order. We do not have to determine whether the legal process was validly issued or enforceable. As permitted by law, we will charge your account a Legal Processing fee or costs and expenses we incur in complying with the order, or both.

If any action, including administrative proceedings, garnishment, tax levies, restraining orders, or another action is brought against you or your account, you will be liable to us for any loss, cost, or expense (including attorneys' fees) resulting from our compliance with any legal process.

If we receive any subpoena, court order, or request for information or documents relating to your account from a governmental entity or arbitration panel, we are authorized to comply with it. If we are required to answer a subpoena or similar order requesting records of your account, we may charge you a Research fee, less any amount we are paid by the person issuing the subpoena before we deliver our response.

**9. Permitted time for filing a lawsuit**

You must file any lawsuit or arbitration against us within 2 years after the cause of action arises, unless state law or an applicable agreement provides for a shorter time. This limit is in addition to limits on notice as a condition to making a claim, as described in Section E.2 above. If applicable state law does not permit contractual shortening of the time during which a lawsuit must be filed to a period as short as 2 years, you and we agree to the shortest permitted time under that state's laws.

We abide by federal and applicable state record retention laws and may dispose of any records that have been retained or preserved for the period set forth in these laws. Any action against us must be brought within the period that the law requires us to preserve records, unless applicable law or this agreement provides a shorter limitation period. Any action against us on an automatically renewable CD must be brought within the time that the law requires us to preserve records based on the stated maturity date in the most recent record of the CD.

**10. Location of legal proceedings**

If you file any lawsuit or other legal proceeding against us that's connected in any way to your accounts or services, you agree to do so in an appropriate court in the state where your account is located (see section I.6 above). In addition, if we file any lawsuit or legal proceeding that is connected in any way to your accounts or services, you consent to jurisdiction and venue in an appropriate court in the state where your account is located. If either party chooses to have disputes determined under the section entitled "Arbitration," that section rather than this section governs the process and location of the arbitration proceedings.

**11. Pre-judgment interest rate**

If either you or we are awarded a judgment against the other in connection with your account, the rate of interest earned before judgment on the judgment amount will be the rate of interest the account earned during that period unless state law requires a different rate. If the account is not interest-bearing, the rate will be the lowest generally available rate for a personal interest-bearing checking account.

**12. Arbitration**

You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE AS DISCUSSED BELOW.

UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE ON A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION.

ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

*What claims or disputes are subject to arbitration?*

Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

*Can I (the customer) cancel or opt out of this agreement to arbitrate?*

You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account (or within 60 days of the effective date of this agreement, if your account was already open). If you want to opt out, call us at 1-800-935-9935, or see a banker. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy.

*What about class actions or representative actions?*

Claims in arbitration will proceed on an individual basis, on behalf of the named parties only.

YOU AND WE AGREE NOT TO:

1) SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;
2) SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;
3) BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR
4) SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

*Does arbitration apply to Claims involving third parties?*

Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration. No award or relief will be granted by the arbitrator except on behalf of, or against, a named party. For purposes of arbitration, "you" includes any person who is listed on your account, and "we" includes JPMorgan Chase Bank, N.A., all its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim. (If we assign your account to an unaffiliated third party, then "we" includes that third party.)

The arbitration may not be consolidated with any other arbitration proceeding.

*How does arbitration work?*

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The arbitrator will decide the Claim in accordance with all applicable law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. A single arbitrator will conduct the arbitration and will use applicable substantive law, including the Uniform Commercial Code, consistent with the FAA and the applicable statutes of limitations or conditions precedent to suit, and will honor claims of privilege recognized at law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

*Is the arbitrator's decision final? Is there an appeal process?*

The arbitrator's decision will be final and binding on the parties. A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

*Who will pay for costs?*

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay, you may request that we pay or reimburse them, and we will consider your request in good faith.

*How do I (the customer) file an arbitration claim?*

Rules and forms may be obtained from, and Claims may be filed with, JAMS at 620 Eighth Avenue, 34th Floor, New York, New York 10018, or jamsadr.com; or the AAA at 335 Madison Avenue, Floor 10, New York, New York 10017, or www.adr.org. Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

**13.    Assignment of agreement and successors**

This agreement will be binding on your personal representative, executors, administrators, and successors, and on our successors and assigns.

You may not grant a security interest in, transfer, or assign your account to anyone other than us without our written consent. No assignment will be valid or binding on us, and we won't be considered to have "knowledge" of it, until we consent and the assignment is noted in our records. However, by noting the assignment, we do not have any responsibility to assure that the assignment is valid. Any permitted assignment of your account is subject to our setoff rights.

**14.    Authorization to share information**

You authorize us to share information about you and your account with affiliates and third parties, unless the law or our Privacy Notice prohibits us from doing so. Please see our Privacy Notice for your choices about information sharing.

**15.    Referrals**

If you request it, our employees may at times provide contact information about third parties, such as lawyers, accountants, or contractors, who offer products or services to the public. Some of these third parties may be our customers. We provide this information only as a courtesy and convenience to you and

the third party, but in some cases we may be compensated for a referral. We do not make any warranties or representations about the third parties or their products or services. If you choose to do business with any third party, that decision is yours alone, and we are not responsible for the third party's performance or to help resolve any dispute between you and the third party.

**16. Illegal activities**

You will not use your account to conduct transactions relating to unlawful internet gambling or any other illegal activity. We may refuse any gambling transaction, whether lawful or not. We may also refuse any transaction that we reasonably believe may involve illegal or suspicious activity.

**17. Inactive and unclaimed accounts**

Each state has laws that govern when accounts are considered inactive or unclaimed, and when we're required to send a customer's funds to the state. We encourage you to make sure your accounts remain active so you receive regular statements, have the full use of your accounts, and avoid the potential of having your funds transferred to the state as unclaimed property. We'll send you a letter in advance if your funds may be transferred to the state as unclaimed property.

**18. Personal information at account opening**

Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or business that opens an account.

- When you open a personal account, we will ask for your name, residential address, date of birth, and Social Security number, which will allow us to verify your identity. We may also ask to see your driver's license and other identifying documents, or ask other questions to verify your identity.
- When you open a business account, we'll ask for your business name, taxpayer identification number, and business address so we can verify your business. We'll also ask for your name, residential address, date of birth and Social Security number, so we can verify your identity. We may also ask for documents to verify the business's existence.

We may also obtain additional information to comply with "Know Your Customer" requirements or to offer you additional products and services.

**19. English language — Other language preferences**

The terms of this agreement and the products and services we provide are governed by the English language. As a courtesy, we make some of our forms, disclosures, and documents, including this agreement, available in languages other than English. However, many important bank documents, and some products and services related to this account, are only provided in English. If there is any difference in meaning between the English and non-English version of any of our documents, the English version will apply to your accounts and is available upon request.

**SUBSTITUTE CHECKS AND YOUR RIGHTS**

*What is a substitute check?*

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks, with a reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

*What are your rights as a consumer regarding substitute checks?*

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, Insufficient Funds fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within 10 business days after we receive your claim and the remainder of your refund (plus interest if your account earns interest) no later than 45 calendar days after we receive your claim.

We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

*How do you make a claim for a refund?*

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us at the phone numbers listed on the back cover.

You must contact us within 40 calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

*Your claim must include:*

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- The following information to help us identify the substitute check: the check number, the name of the person to whom you wrote the check, and the amount of the check.

**ELECTRONIC FUNDS TRANSFER SERVICE TERMS**

We provide a variety of electronic funds transfer (EFT) deposit account services. These include all transfers resulting from debit cards, ATM cards, electronic payments, credits and transfers, telephone transfers, and online banking transactions. We may issue you an access device, such as a card, code, or other means of accessing your account to initiate EFTs. Our business days for conducting EFT services are all days except Saturdays, Sundays, and federal holidays.

## A.    TYPES OF EFT SERVICES

**1.    ATM and Debit Cards.** As a condition of opening certain checking accounts, you agree that we may automatically issue you a Chase debit card. However, activating the debit card is not required to keep your checking account open. If you do not select a personal identification number (PIN) when you open your account, we will send you a randomly generated four-digit PIN. We may deactivate any temporary ATM card when you activate your debit card.

You can use your ATM card or debit card (either is called a "Card") as follows:

**At ATMs to:**
- Withdraw cash;
- Transfer funds;
- Find out balances;
- Make deposits;*
- Make payments to qualifying Chase credit cards and loans;*
- Obtain a copy of recent account activity.*

Please note: Services marked with an asterisk (*) are only available at Chase-branded ATMs, and all services may not be available at all Chase-branded ATMs. Services are available only for designated accounts linked to your Card. When linking multiple accounts to your Card, one checking account and one savings account will be designated as primary.

We also offer a Deposit-only Business ATM Card that can be used only to make deposits to your designated checking and savings accounts.

A non-Chase ATM may only be used if in a participating network, and on those networks your primary checking and savings accounts are accessible, and other linked accounts may be accessible. Outside the U.S., only your primary checking account is generally accessible. We may charge a Non-Chase ATM fee, and non-Chase ATMs may impose an additional charge. If you have questions regarding whether a certain ATM or EFT network will process a transaction, call or write us.

**At participating merchants to:**
- Purchase goods and services. Purchases are subtracted from your primary checking account. If you have arranged with your merchant to pay for your purchases via periodic payments, you must notify the merchant if your card number or expiration date has changed or your Card or account is closed. In addition, we may provide the merchant or the participating network your new account number or expiration date (or both).
- Withdraw cash from your primary checking account while making a purchase of goods or services if permitted by the merchant.

**At participating financial institutions to:**
- Obtain a teller cash withdrawal. Withdrawals are subtracted from your primary checking account. You will be charged a Non-ATM Cash fee.

**2.    Payments, Credits, and Transfers.** You can send or receive electronic transfers from or to your accounts. We may do this by ACH (as a member of a national or local automated clearinghouse association) or other similar networks. Electronic transfers may take various forms, such as:

- Automatic electronic deposits to your account, such as payroll or benefits payments;
- Automatic one-time or repeating charges to your account for bill payments, sent by a merchant or other payee with your authorization. The merchant or payee may ask you for bank number and account information from your check or a canceled check to create these orders;

A check conversion or transfer, where a merchant or other payee uses a check that you have written to create an electronic transfer from your account. The merchant may either keep the check you wrote or return it to you.

**3.  Online Banking and Mobile Banking.** You may use online banking or Mobile Banking to view your account information, make deposits, transfer funds between your Chase accounts, pay qualifying Chase loans or credit cards, or make payments from your checking account to third parties. Enroll for these services on our website, www.chase.com. You must agree to the additional disclosures and specific terms for using the online banking services provided when you enroll.

**4.  Telephone Banking.** You may use our automated customer service system or speak to a telephone banker to get your account information, transfer funds between your accounts with us, or pay qualifying Chase loans or credit cards. You must have a valid deposit or loan account and a valid password or PIN to use the automated system. Business account holders may also use a valid taxpayer identification number (TIN).

**5.  Overdraft Protection Transfers.** Transfers to and from your accounts for Overdraft Protection are also subject to these terms.

### B.   IMPORTANT INFORMATION AND AGREEMENTS ABOUT YOUR ATM OR DEBIT CARD

**1.  Authorizations.** Most merchants ask us to authorize your purchase. We may authorize or refuse to authorize a transaction based on a different amount than the authorization request, because some merchants (such as "pay at the pump" for fuel) request authorization for an amount that is unrelated to the actual amount of the purchase.

**2.  Holds.** When we give authorization to a merchant, we will reserve or place a hold on funds in your account, generally for 3 business days, to pay for your purchase. However, for some types of purchases we may place a hold for a longer period. There are times – for example, at restaurants or for gas purchases, car rentals or hotels – that merchants won't know the exact amount of your purchase when they request the authorization. If the authorization is more or less than your actual purchase amount, the hold may remain even after your purchase amount is paid from your account. The purchase amount will be paid from your account whenever the merchant sends it to us, even if that is after the hold has expired.

**3.  Overdrafts.** For personal accounts, unless you have notified us that you DO want us to pay debit card overdrafts at our discretion, we generally won't authorize a non-repeating ("everyday") debit card transaction if your available account balance isn't enough to pay that transaction. If a transaction overdraws your account, we will assess fees described in the General Account Terms and the fee schedule.

We will charge a fee for any item presented on a business day when your account is overdrawn, whether we pay the item or not. If we pay it, we will charge an Insufficient Funds fee. If we return it, we will charge a Returned Item fee. For personal accounts, we will only charge an Insufficient Funds fee for an everyday debit card transaction if you have notified us to pay debit card overdrafts. For business accounts, we will charge an Insufficient Funds fee for an everyday debit card transaction unless you have notified us not to pay debit card overdrafts.

**4.  Returning or Canceling Your Card.** You must return the Card if we request that you do so. We may cancel your Card at any time without notice. You may cancel your Card by calling us. If you do, please destroy the Card.

**5.  Our Right to Refuse Transactions.** We can refuse to authorize any transaction when your Card has been reported lost or stolen or when we reasonably believe there is potentially fraudulent, suspicious, or illegal activity on your account.

**6.  Foreign Exchange Transactions.** The exchange rate applied to Card transactions that occur in a different currency will be either:

- a rate selected by the network that processes the transaction from the range of rates available in wholesale currency markets for the date it processes the transaction (this rate may be different than the rate the network receives); or

the government-mandated rate in effect for the rate the network processed the transaction.

This exchange rate may differ from the rate on the date you used your Card. We will add an Exchange Rate Adjustment fee to the amount the network charged us for foreign currency transactions.

**7. Debit or Credit?** A merchant may ask you if your debit card purchase is "Debit or Credit." You have two choices. In both instances your purchase will be subtracted directly from your checking account.

- **If you choose debit:** Select "Debit" or "ATM," and you must enter your PIN.
- **If you choose credit:** Select "Credit" and sign the receipt if required. For some small dollar purchases and when you pay at the gas pump, you may not need to provide a signature.

**8. ATM Safety and Safeguarding Your Account Information**

**Be safe at ATMs** – Your safety is our chief concern. We advise you to always use common sense and be aware of your surroundings before, during and after any ATM use. Here are some additional tips:

- Choose an ATM that is well lit.
- If an ATM looks unusual or altered, don't use it. If you suspect the ATM isn't working properly, cancel the transaction and find another machine.
- At a walk-up ATM, minimize transaction time by having your Card ready to use. At a drive-up ATM, keep your car engine running and lock your doors.
- Stand between the ATM and anyone waiting to use the machine, so others can't see your PIN or the transaction amount.
- As soon as your transaction is complete, remember to remove your Card from the ATM, and then put away your money, receipt, and Card.
- Contact the police or a security officer if you see any suspicious activity at the ATM. If you think you're being followed from an ATM, go to a busy area and immediately contact the police.

**Keep your debit or ATM Card PIN confidential** – Never give your PIN to anyone, don't write it down anywhere, and avoid carrying it with you. In addition, to keep your Card information safe, you should do the following:

- Change your PIN from time to time and choose a PIN that others can't easily figure out. For example, don't use your birthday or telephone number.
- To change your PIN (or if you forget your PIN), visit any branch.
- A Chase employee will never ask you for your PIN or the numbers on the back of your Card.

**Protect your Card as you would a credit card or cash.**

**Report a lost or stolen Card immediately** – You must notify us immediately if your Card is lost or stolen, or if you discover any other error. The sooner you report a problem, the sooner we can take precautions to ensure your Card isn't misused.

**C. LIMITATIONS ON TRANSFERS, AMOUNTS, AND FREQUENCY OF TRANSACTIONS**

- To protect your accounts, there are daily dollar limits for ATM withdrawals and Card purchases, even if your available balance is higher than the daily dollar limit. However, we may allow transactions that exceed your limit. Your Card limits were provided to you when you received your Card. We may change your limits, and will notify you if we do so. If you don't know your limits or would like to change these limits, please call us. If we suspect fraud on your account, we may temporarily lower your limits without notice.
- Withdrawals from your savings account are limited. For further information, see the section entitled "Limits on savings account withdrawals" in the General Account Terms.
- Card access to your account will be suspended if we consider your account to be inactive or dormant, and may be suspended if we suspect that your Card may have fraudulent activity or for any other reason where we believe there is a risk to you or us.

**D. RECEIPTS AND STATEMENTS**

You will receive or have the option to receive a receipt at ATMs and merchant locations each time you make a transaction, except for certain small dollar transactions.

You will receive monthly statements if you have an electronic funds transfer in that month. If you do not, you will receive at least quarterly statements, unless your account is considered inactive.

If you receive direct deposits to your account, you can use online banking or an ATM, or call us at the telephone number on the back cover to determine if the deposit has been made.

### E.    IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS

Call or write us at the telephone number or address on the back cover if you think your statement or receipt is wrong, or if you need more information about a transaction listed on the statement or receipt.

*For personal accounts only, the following procedures apply:*

We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared. Please provide us with the following:

- Your name and account number;
- A description of the error or the transfer you are unsure about, and an explanation why you believe it is an error or want more information;
- The dollar amount of the suspected error.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. However, if we need more time, we may take up to 45 days to investigate your complaint or question. If we do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If your account was opened less than 30 days prior to the date of the suspected error, the 10-business-day period is extended to 20 business days. If your account was opened less than 30 days prior to the date of the suspected error or the transaction occurred at a point-of-sale location or outside the U.S., the 45-day period is extended to 90 days.

If you call us, we may require that you send us your complaint or question in writing within 10 business days. If we do so and do not receive it within 10 business days, we may not credit your account.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

*For business accounts*, our practice is to follow the procedures described above, but we are not legally required to do so.

### F.    OUR LIABILITY FOR FAILURE TO COMPLETE TRANSACTIONS

If we do not complete a transaction from your personal account on time or in the correct amount, we will be liable for your losses or damages. But there are exceptions. For example, we will not be responsible if:

- Due to no fault of ours, your account does not have sufficient funds to make the transaction;
- The ATM where you are making a withdrawal does not have enough cash;
- The ATM was not working properly and you knew about the breakdown when you started the transaction;
- Circumstances beyond our control (such as fire or flood) prevent the transaction and we took reasonable precautions;
- For preauthorized credits, third party data was not received, is incomplete or erroneous, or if the recipient is deceased;
- We consider your account to be inactive or dormant.

We are not liable for failure to complete a transaction on a business account if we send you notice that the transaction was not completed.

### G.    STOP PAYMENT FOR PREAUTHORIZED (REPEATING) TRANSFERS

If you have arranged, in advance, to make repeating payments out of your personal account, you can stop any of those payments.

1. Call or write us at the telephone number or address listed on the back cover in time for us to receive your request three or more business days before the payment is scheduled to be made. (Note: If the

preauthorized transfer was scheduled through our online banking services, see your Online Service Agreement or call Online Banking Customer Service at the telephone number on the back cover for information on stopping payments that are pending or in process.)

2. You must give us the exact account number and the exact amount of the payment. You also must notify the payee that you have withdrawn your authorization for the repeating electronic payments.

3. A Stop Payment fee will apply.

If these regular payments vary in amount, the person you are going to pay will tell you, 10 days before each payment, when it will be made and how much it will be. You may choose to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.

If you place a stop payment three or more business days before the transfer is scheduled, and we still pay, we will be responsible for your losses or damages.

## H. DISCLOSURE OF ACCOUNT INFORMATION TO THIRD PARTIES

Information about your account or the transfers you made will be disclosed to third parties:

• As necessary to complete transactions;

• In connection with the investigation of any claim you initiate;

• To comply with government agency, arbitration or court orders;

• With your written permission;

• As permitted by our Privacy Notice.

Our Privacy Notice was delivered to you at the time your account was opened. It is also available on www.chase.com.

## I. NOTICE OF YOUR RIGHTS AND LIABILITIES

*For personal accounts only:*
Tell us AT ONCE if you believe your Card, PIN, or code has been lost or stolen. Calling us is the best and fastest way of keeping your possible losses to a minimum. If you tell us within two business days, you can lose no more than $50.00 if someone used your Card, PIN, or code without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your Card, PIN, or code and we can prove we could have stopped the unauthorized transactions if you had told us, you could lose as much as $500.00. If your statement shows electronic funds transfers that you did not make, tell us at once. If you do not tell us within 60 days after the statement was sent to you, you may not get back any money you lost after the 60 days if we can prove that we could have prevented the transactions if you had told us in time.

If a good reason (such as a long trip or a hospital stay) kept you from telling us, let us know. We will extend the time periods.

*Special Provisions for Card Transactions (Zero Liability protection):*
If your Card is lost or stolen, or your Card number is used without your authorization, if you notify us promptly, you are not liable for any unauthorized transactions, including transactions made at merchants, over the telephone, at ATMs, or on the Internet.

However, these special provisions do not apply where you were grossly negligent or fraudulent in the handling of your account or Card, where you have given someone else your Card, Card number, or PIN, or where you delay reporting unauthorized transactions for more than 60 days.

*For business accounts only: You agree*

1. To assist us in the investigation and prosecution of claims for unauthorized transactions by completing the appropriate statements and reports reasonably requested by us;

2. To notify us promptly in writing of any user of a Card who is no longer employed by you or authorized to conduct business on your behalf;

3. That by allowing anyone to use your Card, you will be responsible for all authorized and unauthorized transactions made;

4. That all of the provisions of the Deposit Account Agreement, including liability limitations and requirements that you give us prompt notice of unauthorized items, apply to your EFT services.

**J. FEES**

Fees for all EFT services are disclosed in our fee schedule and product information.

**K.    SERVICES NOT COVERED BY THIS PART; SEPARATE AGREEMENTS**

For personal accounts, EFT services described in these Electronic Funds Transfer Service Terms do not include wire transfers or other transactions that are not covered by Federal Reserve Board Regulation E.

For business accounts, wire transfers and other services not specifically described in this disclosure are governed by the General Account Terms or by separate agreements.

If you receive or otherwise use Account Alerts or Chase Mobile, you agree to the following terms. If you are enrolled in online banking, the terms of the Online Service Agreement control the terms of these services instead.

- We may use a telephone number, e-mail address, or other delivery location we have in our records for you or such other contact information as you may provide to us for these services so we can send you certain information about your account.
- We will send Account Alerts or Chase Mobile messages through your communication service provider, who will act as your agent and deliver them to you. Delivery of alerts may be delayed for various reasons, including service outages affecting your phone, wireless, or internet provider; technology failures; and system capacity limitations.
- There is no charge from Chase for the Account Alerts or Chase Mobile, but **message and data rates may apply. Such charges include those from your communication service provider.** Message frequency depends on user preferences. **To cancel the Chase Mobile text messaging services, send STOP to 24273 at any time.** For help or information on the Chase Mobile text messaging services, send HELP to 24273. For assistance with these services, contact customer service at 1-877-242-7372.
- Account Alerts and Chase Mobile are provided for your convenience and do not replace your monthly account statements, which are the official records of your accounts. Anytime you review your balance, keep in mind it may not reflect all transactions, including recent debit card transactions or checks you have written.
- You understand we may not encrypt information when it is sent to you through these services. This information may include personal or confidential information about you, such as account activity or the status of your account. For phone Account Alerts, information may be delivered to voicemail or answering machines if nobody answers the phone.

You understand we are not liable for losses or damages from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery, or mishandling of, or inaccurate content in, Account Alerts or the account information sent through Chase Mobile. You have to have an eligible account to activate and use the Chase Mobile text messaging service; once it is activated, you may have access to other types of accounts as well.

If we suffer a loss, cost, or expense because you provide an incorrect telephone number, e-mail address or other delivery location or you violate applicable laws, you have to pay that amount to us.

**FUNDS AVAILABILITY POLICY**

**General Policy:**

*For all accounts other than Access Checking and Commercial Checking (with or without Interest):* Wire transfers, electronic direct deposits, and cash deposits made with a banker or at an ATM will be available on the day we receive your deposit. Except as described later in this policy, when you make other deposits, the funds are available on the first business day after the day we receive your deposit. Available funds may be withdrawn in cash or used to pay checks and other items.

*For Access Checking and Commercial Checking (with or without Interest):*

*Same-day availability:* Wire transfers, electronic direct deposits, and cash deposits made with a banker or at an ATM will be available on the day we receive your deposit.

*Next business day availability:* Funds from the following deposits are available on the first business day after the day we receive your deposit:

- U.S. Treasury checks that are payable to you;
- Checks drawn on us.

If you make the deposit in person to one of our employees, funds from the following deposits are also available on the first business day after the day we receive your deposit:

- State and local government checks that are payable to you, if you use a special deposit slip available at any branch upon request;
- Cashier's, certified, and teller's checks that are payable to you, if you use a special deposit slip available at any branch upon request;
- Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders that are payable to you.

*Second business day availability:* Funds from all other deposits are available no later than the second business day after the day we receive your deposit. Available funds may be withdrawn in cash or used to pay checks and other items.

**When Your Deposit Is Received:**

If you make a deposit with a teller at one of our branches on a business day, we will consider that day to be the day of your deposit. If you make a deposit on a business day before our cutoff times at a Chase ATM, we will consider that day to be the day of your deposit. However, if you make a deposit on a day that is not a business day, or make an ATM deposit after the ATM cutoff, we will consider the deposit to have been made on the next business day.

- For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays.
- For deposits at most ATMs, the cutoff time is 11 p.m. Eastern time. For ATMs with an earlier cutoff, the ATM screen will notify you of the cutoff time. For all ATM transfers between accounts, the cutoff time will be determined by where your account is located, regardless of the location of the ATM, as follows:

| State Where Account Is Located | Cutoff Time (all p.m.) |
|---|---|
| CT, FL, GA, IN, KY, MI, OH, NJ, NY, WV | 9:00 ET |
| IL, LA, OK, TX, WI | 9:00 CT |
| AZ | 9:00 MST (when Daylight Savings Time is in effect, 8:00 MST) |
| CO, ID, UT | 9:00 MT |
| CA, NV, OR, WA | 8:00 PT |

- Deposits placed in a night depository are considered received when we remove them from the night depository. We will remove deposits not later than the next business day.

Branches in some locations may be closed on business days in observance of a state holiday or because of an emergency, and deposits made at a night depository when those branches are closed will be considered received on the next business day when the branch is open.

- All deposits made by mail and addressed to Chase without using a specific branch name and street address will be considered received by the Chase-By-Mail facility in Louisville, Kentucky as of the date such deposit is received by that facility.

**Longer Delays May Apply:**

*For all accounts other than Access Checking or Commercial Checking (with or without Interest):* In some cases, we may not make all of the funds that you deposited by check available by the first business day after the day of your deposit. Funds may not be available until the second business day after the day of your deposit. However, at least the first $200 of these deposits will be available on the first business day after the day of your deposit. If you will need the funds from a deposit right away, you should ask us when the funds will be available, but further review may still result in delayed availability.

*For all accounts:* Funds you deposited by check may be delayed for longer than two business days under the following circumstances:

- We believe a check you deposited will not be paid;
- You deposited checks totaling more than $5,000 in any one day;
- You redeposited a check that has been returned unpaid;
- You have overdrawn your account repeatedly in the last six months; or
- There is an emergency, such as failure of communications or computer equipment.

If we delay availability for one of these reasons, funds may not be available until the seventh business day after the day of your deposit. However, at least the first $200 of these deposits will be available on the first business day after the day of your deposit.

If your deposit is not made directly to one of our employees, we will mail you the notice by the business day after we receive your deposit. If we decide to delay availability of your funds after you complete your deposit, we will mail you the notice by the business day after we decide to take that action.

**Special Rules for New Accounts:**

If you are a new account customer, the following special rules may apply during the first 30 days your account is open:

- Funds from deposits of the first $5,000 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The excess over $5,000 will be available on the ninth business day after the day of your deposit. If your deposit of these checks (other than U.S. Treasury checks) is not made in person to one of our employees, the first $5,000 will not be available until the second business day after the day of your deposit; and

- Funds from all other check deposits will be available no later than the 15th business day after the day of your deposit.

**Holds on Other Funds:**

If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available at the time funds from the check we cashed would have been available if you had deposited it.

Rev. October 2011



**CHASE**

| FACTS | WHAT DOES CHASE DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number and income<br>■ account balances and transaction history<br>■ credit history and payment history |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Chase chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Chase Share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** – to offer our products and services to you | Yes | No |

30

| | Yes | No |
|---|---|---|
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes –** information about your credit worthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non affiliates to market to you** | Yes | Yes |

| **To limit our sharing** | ■ Call 1-888-868-8618 - our menu will prompt you through your choice(s) **or**<br>■ Visit us online: **chase.com**<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| **Questions?** | Call 1-888-868-8618 |

31

**Page 2**

## Who we are

| Who is providing this notice? | The JPMorgan Chase & Co. family of companies. A partial list of its U.S. consumer financial companies is located at the end of this document. |
|---|---|

## What we do

| How does Chase protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We authorize our employees to get your information only when they need it to do their work, and we require companies that work for us to protect your information. |
|---|---|
| How does Chase collect my personal information? | We collect your personal information, for example, when you<br>■ open an account or make deposits or withdrawals from your account<br>■ pay your bills or apply for a loan<br>■ use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes – information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for non affiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

32

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and non financial companies.<br>▪ *Our affiliates include companies with a Chase or JPMorgan name and financial companies such as J.P. Morgan Securities LLC.* |
| **Non affiliates** | Companies not related by common ownership or control. They can be financial and non financial companies.<br>▪ *Non affiliates we share with can include companies such as retailers, auto dealers, auto makers and membership clubs* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>▪ *Our joint marketing partners include categories of companies such as insurance companies* |

| Other important information |
|---|

**State Laws:**

VT: Accounts with a Vermont mailing address are automatically treated as if they have limited the sharing as described on page 1. For joint marketing, we will only disclose your name, contact information and information about your transactions.

NV: We are providing you this notice pursuant to Nevada law. If you prefer not to receive marketing calls from us, you may be placed on our Internal Do Not Call List by calling 1-800-945-9470, or by writing to us at P.O. Box 659752, San Antonio, TX 78265-9752.

For more information, contact us at the address above, or email Privacy.Info@JPMChase.com, with "Nevada Annual Notice" in the subject line. You may also contact the Nevada Attorney General's office: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St, Suite 3900, Las Vegas, NV 89101; telephone number: 702-486-3132; email BCPINFO@ag.state.nv.us

CA: Accounts with a California mailing address are automatically treated as if they have limited the sharing with non affiliates as described on page 1. CA residents are provided a CA notice for additional choices.

**Who is providing this notice?**

JPMorgan Chase Bank, N.A.    Chase Insurance Agency, Inc.    Chase Bankcard Services, Inc.    J.P. Morgan Securities LLC.
Chase Paymentech Solutions, LLC    Chase Bank USA, N.A.    Chase Investment Services Corp.

Separate polices may apply to customers of certain businesses, such as J.P.Morgan's Private Bank or Private Wealth Management.

# *HOW TO CONTACT US*

**Personal Accounts:**  Main phone number: 1-800-935-9935
Spanish: 1-877-31CHASE (1-877-312-4273)

**Business Accounts:**  Main phone number: 1-800-CHASE38 (1-800-242-7338)
Spanish: 1-888-622-4273

**Deaf and Hard**  Operator relay calls: 1-800-CHASETD (1-800-242-7383)
**of Hearing:**  and all other Chase numbers
Direct TDD/TTY calls: 1-800-CHASETD (1-800-242-7383)

**International Calls:**  1-713-262-1679

**Web Site:**  Chase.com

**Addresses:**  JPMorgan Chase Bank, N.A.
P.O. Box 659754
San Antonio, TX 78265-9754.

> If you believe your debit card has been lost or stolen, or for information about purchase and ATM transactions, call us at the telephone numbers listed here or write:
>
> **Chase**
> **Regulation E, TX1-2551**
> **Card and ATM Operations**
> **P.O. Box 620002**
> **Dallas, TX 75262-9802**
>
> In case of errors or questions about your electronic funds transfers (EFT): 1-866-564-2262.



**CATALOG #RR02012012**
(Effective 02/01/2012)
© 2011 JPMorgan Chase Bank, N.A., Member FDIC


EQUAL HOUSING
LENDER


*10% Post-Consumer Fiber*

# Exhibit B

# DEPOSIT ACCOUNT AGREEMENT AND PRIVACY NOTICE



## Welcome to Chase

Thank you for opening your account with Chase; we look forward to serving you. We recommend keeping this agreement but we regularly update it, so you can always get the current agreement at chase.com, a branch or by request when you call us.

This is your Deposit Account Agreement (may also be referred to as Account Rules and Regulations), or contract, with us.

The Deposit Account Agreement also includes these separate documents that pertain to our personal and business accounts:

- Rates for interest-bearing accounts
- Personal accounts:
    - Additional Banking Services and Fees (including our Fee Schedule)
- Business accounts:
    - Additional Banking Services and Fees (including our Fee Schedule)
- Any additional disclosures, such as amendments or agreements, that we provide to you either when you open your account or when we change the terms of your account.

## How to Contact Us

We're here for you. See below for how to reach us.

### Personal Accounts:

| | |
|---|---|
| Main phone number: | 1-800-935-9935 |
| Spanish: | 1-877-312-4273 |
| International calls: | 1-713-262-1679 |
| Website: | chase.com |

### Business Accounts:

| | |
|---|---|
| Main phone number: | 1-800-242-7338 |
| Spanish: | 1-888-622-4273 |
| International calls: | 1-713-262-1679 |
| Website: | chase.com/business |

### Chase Private Client:

| | |
|---|---|
| Main phone number: | 1-888-994-5626 |
| International calls: | 1-405-235-4847 |
| Website: | chase.com/privateclient |

**Chase Mobile or Online Banking:** 1-877-242-7372

**Deaf and Hard of Hearing:** We accept operator relay calls

### Electronic Funds Transfers (EFTs):

In case of errors or questions about your EFTs, or if you believe your debit card has been lost or stolen, call us at 1-866-564-2262 or write:

Chase
PO Box 659809
Internal Mail TX3-7849
San Antonio, TX 78265-9109

### To Dispute Information Reported to a Consumer Reporting Agency:

JPMorgan Chase Bank, N.A.
PO Box 182108
Internal Mail OHW-1000
Columbus, OH 43218

### All Other Written Correspondence:

JPMorgan Chase Bank, N.A.
PO Box 659754
San Antonio, TX 78265-9754

# *Deposit Account Agreement Table of Contents*

**I. Definitions** .................................................................................................................................... 5

**II. Opening Your Account** ................................................................................................................... 5

**A.** Personal Accounts ..................................................................................................................... 5
   **1.** Solely owned account ............................................................................................................ 5
   **2.** Joint accounts ......................................................................................................................... 5
   **3.** "Payable on death" account ................................................................................................... 6
   **4.** "In trust for" (informal trust) account ................................................................................... 6
   **5.** Convenience account .............................................................................................................. 6
   **6.** Power of attorney ................................................................................................................... 6
   **7.** Uniform Transfers to Minors Act/Uniform Gifts to Minors Act account ............................... 6
   **8.** Representative payee/VA custodian account ......................................................................... 6
   **9.** Other fiduciary accounts ........................................................................................................ 7

**B.** Business Accounts ...................................................................................................................... 7

**III. Using Your Checking or Savings Account** ..................................................................................... 7

**A.** Adding Money to Your Account ................................................................................................. 7
   **1.** Direct deposits; notice of electronic deposits ....................................................................... 7
   **2.** Endorsements ......................................................................................................................... 7
   **3.** Endorsement requirements .................................................................................................... 7
   **4.** Our right to refuse deposits ................................................................................................... 7
   **5.** Our right to charge back deposited or cashed items ............................................................. 7
   **6.** Transaction records and receipts ........................................................................................... 7
   **7.** Night depository and large cash deposits .............................................................................. 8
   **8.** Our responsibility for collecting deposits .............................................................................. 8
   **9.** Depositing remotely created checks ...................................................................................... 8

**B.** Posting Order and Processing .................................................................................................... 8
   **1.** Posting order .......................................................................................................................... 8
   **2.** "Pending" transactions ........................................................................................................... 8

**C.** Overdrafts, Fees and Overdraft Protection .............................................................................. 9
   **1.** Paying items presented against insufficient funds ................................................................ 9
   **2.** Your responsibility to repay overdrafts ................................................................................. 9
   **3.** Insufficient Funds and Returned Item fees ............................................................................ 9
   **4.** Overdraft Protection .............................................................................................................. 9

**D.** Electronic Funds Transfer Service Terms; Payments, Deposits and Transfers You Make or Receive by Electronic Methods ............................................................................................................. 10
   **1.** Types of EFT services ............................................................................................................ 10
      **a.** Debit and ATM cards ...................................................................................................... 10
      **b.** Electronic transfers using your account number ........................................................... 10
      **c.** Online banking and Chase Mobile ................................................................................. 10
      **d.** Telephone banking ......................................................................................................... 10
      **e.** Transfers for Overdraft Protection ................................................................................ 10
   **2.** Important information and agreements about your card ...................................................... 11
      **a.** Authorizations and holds ............................................................................................... 11
      **b.** Overdrafts with your card .............................................................................................. 11
      **c.** Canceling your card ........................................................................................................ 11
      **d.** Our right to refuse transactions .................................................................................... 11
      **e.** Foreign exchange transactions ...................................................................................... 11

    **f.** Debit or credit prompts at terminals ........................................................................... 11

    **g.** ATM safety and safeguarding your account information ........................................ 11

  **3.** Daily dollar limits on ATM withdrawals and card purchases .................................... 12

  **4.** Receipts and statements .............................................................................................. 12

  **5.** In case of errors or questions about your electronic funds transfers ..................... 12

  **6.** Our liability for failure to complete transactions ..................................................... 12

  **7.** Preauthorized (recurring) transfers and stop payments ......................................... 12

  **8.** Disclosure of account information to third parties ................................................... 13

  **9.** Notice of your rights and liabilities ............................................................................ 13

  **10.** Fees.............................................................................................................................. 13

  **11.** Services not covered by this part; separate agreements ....................................... 14

**E.** Other Ways to Use Your Money ....................................................................................... 14

  **1.** When you can withdraw funds you've deposited ...................................................... 14

  **2.** Withdrawals and transfers from your account .......................................................... 14

  **3.** Autosave feature .......................................................................................................... 14

  **4.** Transactions in a foreign currency ............................................................................ 14

  **5.** Large cash withdrawals ............................................................................................... 14

  **6.** Stop payments on a check............................................................................................ 14

  **7.** Account numbers on funds transfers ......................................................................... 15

  **8.** Savings account withdrawals ..................................................................................... 15

  **9.** Our right to require advance notice of withdrawals ................................................. 15

  **10.** Check cashing ............................................................................................................. 15

  **11.** Incomplete, future-dated, conditional or stale-dated checks ................................. 15

  **12.** Multiple signatures .................................................................................................... 15

  **13.** Facsimile signatures .................................................................................................. 15

  **14.** Review of checks and signatures .............................................................................. 15

  **15.** Substitute Checks and Your Rights .......................................................................... 15

**IV. Funds Availability Policy** ................................................................................................ 16

**V. Safeguarding Your Information** ...................................................................................... 17

**A.** Checks and Other Documents You Use .......................................................................... 17

**B.** Protecting Your Checks .................................................................................................... 17

**C.** Notice of Errors, Forgeries and Unauthorized Signatures ........................................... 17

**VI. Managing and Maintaining Your Account** .................................................................... 18

**A.** Interest on Checking and Savings Accounts .................................................................. 18

**B.** Linking Your Accounts; Statements ................................................................................ 18

  **1.** Linked accounts ........................................................................................................... 18

  **2.** Statements and notices ............................................................................................... 18

  **3.** Combined statements .................................................................................................. 18

  **4.** Options for receiving checks ....................................................................................... 18

**C.** Telephone and Electronic Communication ..................................................................... 19

**D.** Other Fees for Your Account ........................................................................................... 19

  **1.** Fees ............................................................................................................................... 19

  **2.** Savings Withdrawal Limit Fee ................................................................................... 19

**E.** Setoff and Security Interest ............................................................................................. 19

**F.** Account Alerts and Text Banking .................................................................................... 19

**VII. Maintaining Your Certificate of Deposit (CD) Account** ............................................. 19

**VIII. Closing Your Account** ......................................................................................................................... **21**

**IX. Other Legal Terms** ................................................................................................................................. **21**

    **A.** Rules Governing Your Account ........................................................................................................... 21

    **B.** General Liability ................................................................................................................................... 21

    **C.** Restricting Your Account; Blocking or Delaying Transactions ........................................................ 21

    **D.** Changes to the Agreement ............................................................................................................... 22

    **E.** Our Responsibility to Obtain Personal Information ........................................................................ 22

    **F.** Prohibited Activities and Tax Reporting .......................................................................................... 22

    **G.** Death or Incompetence of Account Owner or Sole Signer ........................................................... 22

    **H.** Adverse Claims ................................................................................................................................... 22

    **I.** Authorization to Share Information ................................................................................................... 23

    **J.** Disputing Information Reported to a Consumer Reporting Agency ............................................... 23

    **K.** Legal Process and Requests for Information ................................................................................... 23

    **L.** Abandoned Property ........................................................................................................................... 23

    **M.** English Language — Other Language Preferences ......................................................................... 23

    **N.** Referrals ............................................................................................................................................... 23

    **O.** Special Provisions for Pass-Through Accounts ............................................................................... 23

    **P.** Sub-accounts ....................................................................................................................................... 23

    **Q.** Permitted Time for Filing a Lawsuit ................................................................................................. 24

    **R.** Location of Legal Proceedings .......................................................................................................... 24

    **S.** Pre-judgment Interest Rate ............................................................................................................... 24

    **T.** Assignment of Agreement and Successors ..................................................................................... 24

    **U.** No Waiver ............................................................................................................................................. 24

**X. Arbitration; Resolving Disputes** ............................................................................................................ **24**

## *Privacy Notice*

# Deposit Account Agreement

This agreement is the contract that governs your account.

Whether you have a personal or business deposit account, this document is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or "Chase"). By signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement. Customers of some of our business groups, such as Corporate Banking, will get a different agreement and their accounts will be governed by that agreement, not this one. If you have a product that is not a deposit account, such as a prepaid card or credit card, this agreement does not apply to that product. Also, other products or services, such as online banking or retirement accounts, may have additional agreements. A more specific agreement takes precedence over this one.

This agreement also refers to and includes other disclosures we may provide to you, including (1) product information, (2) rate information, (3) banking services and fees, and (4) other disclosures, agreements, and amendments that we may provide to you. All may contain information on fees that apply to your accounts. Products and services as well as associated fees, charges, interest rates and balance requirements may differ among different geographic locations. Not all products and services, including check cashing, are offered at all locations.

## I. Definitions

Here are some important terms that we use throughout this agreement:

**Account:** Any deposit account, such as a checking or savings account, you have with us that is covered by this agreement.

**ACH (Automated Clearing House):** ACH, which may also be referred to as automatic payments, are funds transferred to or from your account through an automated clearing house network. Common examples include direct deposits of payroll, pension or government benefits such as Social Security.

**ATM (Automated Teller Machine):** An electronic device that performs many banking services, which can include withdrawals and balance inquiries.

**Available balance:** The amount of money in your account that you can use right now. You can find this balance on receipts you receive at ATMs, from a banker at a branch, on chase.com or Chase Mobile.

**Business day:** Every day except Saturdays, Sundays and federal holidays. Some branches may close on a business day due to an emergency or to observe a state holiday.

**Check:** A written order to pay a specific amount of money drawn on, payable through, payable at or processed by a bank or other depository institution. If a check is sent or returned as an electronic image or as a substitute check, it is still considered a check.

**Debit card transaction:** Any purchase or bill payment using your debit card. A debit card transaction may be either an everyday (not recurring) purchase transaction or a recurring payment, such as a monthly bill.

**Direct deposit:** An automatic electronic deposit made through the ACH network to your account by someone else, such as an employer issuing payroll or a government paying benefits.

**Item:** Any check, ACH, funds transfer, online banking transaction, wire transfer, teller cash withdrawal, ATM withdrawal, debit card purchase, fee, charge or other amount that is added to or subtracted from your balance.

**Overdraft:** The amount by which any item(s) presented on your account on a business day exceeds the available balance.

**Overdrawn:** When your account has a negative balance.

**PIN:** A four-digit personal identification number that you either select or request from us for your debit or ATM card. Some merchants and all ATMs require a PIN when you use a debit card.

**Present balance:** The total amount of money recorded in your account, including funds not yet available for you to use. This includes pending transactions, authorization holds that are not yet posted or deposits that have not yet been made available. You can find this balance on receipts you receive at ATMs, from a banker at a branch, on chase.com or Chase Mobile.

## II. Opening Your Account

### A. Personal Accounts

THE TYPE OF ACCOUNT OWNERSHIP MAY DETERMINE HOW YOUR FUNDS ARE PAID IF YOU DIE, EVEN IF YOUR WILL STATES OTHERWISE. PLEASE CONSULT YOUR ESTATE PLANNING ADVISOR OR ATTORNEY ABOUT YOUR CHOICES.

If your account is a type listed under "Personal Accounts" in our product information, you agree not to use it for business purposes. Ownership of your account is determined by the most current signature card. However, we are authorized to rely on the account ownership information contained in our deposit system unless we are notified that the most current signature card and the deposit system contain different information.

#### 1. Solely owned account

When only one individual is listed as the owner of an account, we will treat the account as a solely owned account.

#### 2. Joint accounts

When two or more people are listed as owners of a personal account, the account is a "joint account" and each owner is a "joint owner."

Each joint owner has complete control over all of the funds in the account.

If your joint account becomes overdrawn, each joint owner is liable for the full amount the account is overdrawn, regardless of who initiated or benefited from the item(s) that caused the overdraft.

If one joint owner requests that we not pay items authorized by a different joint owner, we may block the account, but we are not required to do so. That means we will refuse to pay all items, including items authorized by the owner making the request. If we block the account, we may not release the block unless all joint owners agree

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.
Return to Table of Contents
Page 5 of 25
Effective 2/7/2021

in writing to remove it. No request to block the account will affect items that we paid before the request. If we decide not to block the account, all joint owners remain responsible for items subtracted from the account.

Any joint owner may close the account without the consent from any other joint owners. We may choose whether or not to act upon other instructions of any joint owners, including adding another owner to the account, without the authorization of the other joint owners. We may also pay all or any part of the funds in the joint account to a court or government agency if we receive a garnishment, levy or similar legal process that identifies any of the joint owners.

### Joint account with rights of survivorship

If a joint account has rights of survivorship, and one joint owner dies, the account ownership will be transferred to the surviving joint owners. The estate of the deceased owner will have no rights to the account. If there is more than one surviving joint owner, the account will continue as a joint account with rights of survivorship among the remaining owners. If an account is designated "JAWROS" or "JTWROS," it has rights of survivorship.

### Joint account with no right of survivorship (also called "tenants in common")

If a joint account does not have rights of survivorship, and one joint owner dies, that owner's interest passes to the owner's estate. Either the surviving joint owners or the deceased owner's estate may withdraw the funds at any time, and we have no responsibility for determining the respective interests of the owners. If an account is designated "Tenants in common" or "JTIC," it does not have rights of survivorship.

### When survivorship rights apply

Except as otherwise stated in this paragraph, a joint account has rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created without these rights. Accounts in Louisiana do not have rights of survivorship. Accounts in Texas do not have rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created with these rights.

If a joint account also contains a "payable on death" or "in trust for" designation, the account always includes a right of survivorship and is payable to the beneficiary only upon the death of the last surviving owner, except as stated in the paragraph below.

### Marital account (Wisconsin only)

If one owner of a marital account dies, the survivor is entitled to 50% of the account funds and the estate of the deceased is entitled to the other 50%. If a marital account contains a payable on death designation, the POD beneficiary is entitled to the deceased spouse's 50% share. However, we have no responsibility to determine the respective interests of the owner and the POD beneficiary.

### Tenants by the entirety (Florida only)

A Florida joint account owned solely by two spouses is a "tenants by the entirety" account unless the signature card indicates otherwise. We are not required to determine whether an account is a tenants by the entirety account before responding to a garnishment or other legal process. We may assert our right of setoff or security interest in a tenants by the entirety account in order to collect debts of either owner.

## 3. "Payable on death" account

If you establish your account payable on death to one or more beneficiaries, the account is a "POD" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer POD accounts in all states.

## 4. "In trust for" (informal trust) account

If you establish your account in trust for ("ITF") or as trustee for one or more beneficiaries without presenting formal trust documents, we may treat the account as an "ITF" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer ITF accounts in all states.

## 5. Convenience account

If you have a convenience account, you are its sole owner, but you authorize an additional signer to write checks or authorize other items. You are solely responsible for the actions of the additional signer (legacy accounts only).

## 6. Power of attorney

A power of attorney is a document you sign that authorizes someone else, called the agent, to act on your behalf. If you sign a power of attorney, the agent can sign on your behalf and do anything you could do regarding the account, including withdrawing or spending all of the money in the account. Do not sign a power of attorney unless you trust the agent to act in your best interest. If you choose to add an agent, you must provide a power of attorney form that we agree to accept. We may rely on a copy of an original power of attorney. We are not required to investigate the facts relating to any power of attorney provided to us on your behalf, including whether your signature on the power of attorney is authentic or whether the agent continues to have authority. We may follow or refuse to follow the agent's instructions at any time, including if we suspect fraud or abuse on your account, unless state law requires otherwise. We may also refuse an agent's request to become a joint owner or a beneficiary of an account, but we have no liability to anyone if we do so. We have no liability when we follow or refuse to follow any instructions from an agent, for example, if your agent misuses the authority you have given them. An agent's power of attorney on an account is terminated when the account owner dies.

## 7. Uniform Transfers to Minors Act/Uniform Gifts to Minors Act account

If you are the custodian or successor custodian of an account under a state's Uniform Transfers/Gifts to Minors Act, you cannot pledge the account as collateral for a personal loan to you, or cash checks against it. You must transfer the funds in the account to the minor when the minor reaches the age of majority under the UTMA/UGMA law for the state where the UTMA was established. At our sole discretion we may limit transactions on the account if you fail to transfer funds to the beneficiary as required by applicable law. You agree that it is your responsibility as custodian to consult your own legal or tax advisor about the governing state law.

## 8. Representative payee/VA custodian account

If you open an account as a "representative payee" for someone who receives Social Security payments, or as a legal custodian, spouse payee or other custodian for someone who receives Veterans Administration payments, you agree not to permit any deposits to the account other than the designated payments. We are not required to determine whether you deposit other funds or whether any withdrawals or transfers from the account are for the support of the person for whose benefit the funds are paid. This person is called the beneficiary. If the beneficiary dies, you must promptly notify us and stop all further deposits to and withdrawals from the

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 6 of 25
Effective 2/7/2021

account. If the government demands that we return deposits made after the beneficiary's death and the account does not have enough funds to pay the demand, we may take the funds from any account you or the beneficiary owns.

### 9. Other fiduciary accounts

If you open an estate account, trust account, guardianship or conservatorship account, or other similar type of account, we reserve the right to require any documents we reasonably request to satisfy us that you are authorized to open and use the account, including withdrawing the funds. We do not have to permit any withdrawal from the account until we receive all requested documents. We have no fiduciary duties to you as the trustee, executor, guardian or conservator, or to the beneficial owners of the account.

## B. Business Accounts

If your account is a type listed under "Business Accounts" in our product information, you agree not to use it for personal purposes.

If our records list a business organization as the owner of an account, the account is payable to the business organization and not to any individual director, shareholder, member or partner. "Business organization" means a corporation, unincorporated association, limited liability company, partnership, or any other business, government or non-profit organization. We may rely on the accuracy and completeness of all resolutions, signature cards and other documents you deliver to us in connection with the account. If they state that a person is authorized to sign checks or otherwise initiate transactions on your account, that person is called a signer.

If the account owner is a sole proprietorship, that means that one person conducts the business as his or her own property, instead of through a business organization. A sole proprietor may also designate signers by appropriate documents. We may in some states allow a married couple to open an account as a sole proprietorship.

If you change your form of ownership or authorized signers, you must notify us when the change occurs.

A signer is authorized to endorse checks payable to the business. Endorsements "for deposit" may be written or stamped. A signer is also authorized to sign checks drawn on your account. We are authorized to pay checks without asking how the checks were issued or how the proceeds will be used, even if the check is payable to the person who signed the check.

A signer is authorized to instruct us to close accounts or do anything else involving any account, and to sign any agreements or documents relating to accounts or other business.

We may, although we are not required to, cash checks payable to or accept "less cash" deposits from a business organization.

If you open an attorney trust account, including an IOLTA or similar account, you authorize us to notify the appropriate state agency if the account is overdrawn or checks are dishonored, if the applicable state requires notice of those events.

# III. Using Your Checking or Savings Account

## A. Adding Money to Your Account

### 1. Direct deposits; notice of electronic deposits

When we receive an electronic deposit to your account, the only notice you will receive from us is on your next statement. You may visit chase.com or Chase Mobile® and use Account Alerts, or call us to confirm that we have received a deposit.

If the bank that sent an electronic deposit to your account tells us it was a mistake, or was intended for another customer or account, we may deduct the amount from your balance without investigating.

### 2. Endorsements

An endorsement is a signature, stamp or other mark made on a check to transfer the check to another person. If a check you deposited doesn't have your endorsement, we may endorse it for you or treat the check as if we had endorsed it. Either way, the effect will be as if you had endorsed the check. Also, any deposited check that appears to contain your stamped or facsimile endorsement will be treated as if you had actually endorsed it. We are not bound by any conditional or restrictive endorsements on a check you cash or deposit, or by any endorsement "without recourse."

### 3. Endorsement requirements

To help ensure that checks you deposit or cash will be processed timely, your endorsement (and any other endorsement supplied by a co-payee) must be in the 1½ inch area that starts on the right side as viewed from the back. Payee or customer information must not be on any other part of the back of the check.

If you don't endorse your check properly and it causes us a loss, cost or expense, you have to pay that amount to us.

### 4. Our right to refuse deposits

We may refuse a deposit, or part of a deposit, at any time. We also may refuse a deposit after initially accepting it. We can reverse any amount we have added to your balance for a deposited check and send the check on a collection basis even after we have taken physical possession of the check. We will not be liable to you for refusing a deposit, even if it causes us to decline any transactions you have already made. If we refuse a deposit, we may take a check on a "collection basis," which means we will not add funds to your balance until we have actually been paid for the check.

### 5. Our right to charge back deposited or cashed items

If you deposit or cash a check or other item and (1) the paying bank returns it to us unpaid; (2) the paying bank or the issuer of a check demands that we repay them because the check was altered, forged or unauthorized, is missing a signature or endorsement, or has a forged endorsement; or (3) the sending bank or the originator of an item demands that we return the item because it was unauthorized, sent to the wrong account number or procured by fraud, we may pay the return or demand, and subtract the funds from your balance in other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds. If we have reason to believe that any of the events in the previous sentence has occurred or may occur or that the check or other item should not have been paid or may not be paid for any other reason, we may place a hold on the funds or move them to a non-customer account until we determine who is entitled to them. If a deposited or cashed item is returned, we will charge you a Deposited Item Returned Fee or a Cashed Check Returned Fee. Refer to the Fee Schedule for specific fee information.

### 6. Transaction records and receipts

We may rely on the account number on any deposit slip, payment instruction, or similar record we receive, even if that account number is associated with a name that's different from the name you've provided. It's not our responsibility to detect any inconsistency between the account number you provide and the name.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 7 of 25
Effective 2/7/2021

If you make a deposit, we may provide a receipt, but the amount on your deposit receipt is based entirely on the deposit slip you complete. We may confirm the funds you deposit and, after review, may adjust your account for any errors including any errors on your deposit slip.

We are permitted to adjust (debit or credit) your account, and we may notify you, if we:

- Determine a discrepancy exists between the declared and the actual amount of the funds in your account, or
- Misdirected a transaction to or from your account or made a transaction that we reasonably believe to be in error.

If we give you a receipt for a CD that you decide not to open or we give you a receipt for a deposit that you then cancel, the receipt is void and you may not claim those funds.

## 7. Night depository and large cash deposits

Any of our employees may open and count any deposit that a branch banker didn't count in front of you, including night depository deposits and large cash deposits, and you agree not to dispute that employee's determination of the amount you deposited.

If you use our night depository, you are responsible for any disappearance, theft or loss of any envelope, bag or money before we issue a written receipt for the deposit.

## 8. Our responsibility for collecting deposits

If you deposit or cash a check, or we send one for collection, we act only on your behalf. Our only responsibility is to exercise reasonable care. We will not be liable for the lack of care of any bank or third party we use to collect checks, or for checks lost during shipping. We may send checks to any bank or to the entity on which the check was written in our customary manner. We may have agreements with other banks regarding times and methods for collecting or returning items.

If we lose a check, you agree to use reasonable efforts to help us locate or replace it.

Although we attempt to identify and prevent fraudulent transactions, we have no duty to you to determine whether any check you deposit or cash is forged, counterfeit, altered, improperly endorsed or otherwise improper.

## 9. Depositing remotely created checks

A remotely created check is created by the payee and not signed by the account owner. It states that the account owner authorized the check. If you deposit a remotely created check, you guarantee it was authorized by the account owner for payment in the amount it shows.

## B. Posting Order and Processing

### 1. Posting order

Posting order is the order in which we apply deposits and withdrawals to your account. We provide you with visibility into how transactions are posted and in what order to help you better manage your account.

When we transition from one business day to the next business day we post transactions to and from your account during our nightly processing. The order in which we generally post items during nightly processing for each business day is:

- First, we make any previous day adjustments, and add deposits to your account.
- Second, we subtract transactions in chronological order by using the date and time of when the transaction was authorized or shown as pending. This includes ATM and Chase banker withdrawals, transfers and payments; automatic payments; chase.com or Chase Mobile online transactions; checks drawn on your account; debit card transactions; wire transfers; and real time payments. If multiple transactions have the same date and time, then they are posted in high to low dollar order.
  - ○ There are some instances where we do not have the time of the transaction therefore we post at the end of the day the transaction occurred:
    - We are unable to show the transaction as pending; or
    - We don't receive an authorization request from the merchant but the transaction is presented for payment.
- Third, there are some transactions that we cannot process automatically or until we've completed posting of your chronological transactions. This includes Overdraft Protection transfers or transfers to maintain target balances in other accounts. We subtract these remaining items in high to low dollar order.
- Finally, fees are assessed last.

If you review your account during the day, you will see that we show some transactions as "pending." For details, refer to the section *"Pending" transactions*. These transactions impact your available balance, but have not yet posted to your account and do not guarantee that we will pay these transactions to your account if you have a negative balance at that time. We may still return a transaction unpaid if your balance has insufficient funds during that business day's nightly processing, even if it had been displayed as a "pending" transaction on a positive balance during the day. If a transaction that you made or authorized does not display as "pending," you are still responsible for it and it may still be posted against your account during nightly processing.

### 2. "Pending" transactions

Throughout the day we post debits and credits to your account that may appear as "pending" when we become aware of the transaction. The following are the most common types of related transactions that may appear as "pending" and reduce your available balance by the amount of the transaction:

- ATM and Chase Banker Withdrawals, Transfers and Payments
- Automatic Payments
- Chase.com or Chase Mobile Online Transactions
- Checks Drawn on Your Account
- Debit Card Transactions
- Wire Transfers

**ATM and Chase Banker Withdrawals, Transfers and Payments:** For payments or cash withdrawals, we will apply the transactions and update your available balance as soon as the transaction is complete.

**Automatic Payments (ACH transactions):** We will generally apply transactions against your available balance as pending at the start of the business day of the effective date of the payment. These transactions will be applied in the order we receive them. If you initiate ACH transactions on the same day as the effective date, we will apply them in the order we receive them from the merchant.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 8 of 25
Effective 2/7/2021

**Chase.com or Chase Mobile Online Transactions:** For any payment or transfer, once you approve the transaction, we'll apply it to your account. For recurring or future dated payments, it is applied on the effective "send on" date.

**Checks Drawn on Your Account:** When cashed or deposited at a Chase ATM, branch, or online will be pending on your account at the time the item was cashed or deposited. Checks that are deposited at other banks will show as pending throughout the day as the other banks submit the item to us for payment. If the amount of the check identified in the notice exceeds your balance at the time we receive the notice, we may notify the other bank of that fact.

**Debit Card Transactions:** For more information on debit card transactions refer to the section *Important Information and Agreements About Your Card*.

**Wire Transfers:** Once we've begun processing the wire transfer and completed all of our internal reviews, we will apply the transaction to your account and update your available balance on the transfer's effective date.

While we make every effort to place transactions in a pending status on your account during the day, transactions may be unable to be displayed as pending before they are posted to your account. How these items are posted when they are completed and no longer display as pending is based on the posting order. Fees are applied against the account based on how items are posted. For details, refer to the section *Posting Order*.

## C. Overdrafts, Fees and Overdraft Protection

### 1. Paying items presented against insufficient funds

We may pay or decline to pay any item when it is presented if your available balance is less than the amount of that item plus all other items received but not yet paid. We will decline any requested ATM withdrawal unless your available balance at the time is equal to or more than the amount of the requested withdrawal. We look at your available balance only once when the item is presented to us to decide if you have enough funds to pay the item.

Even if we've paid overdraft items before, we are not required to do it in the future. Special rules for everyday debit card transactions, overdraft and fees for these transactions, are described in the *Electronic Funds Transfer Service Terms*. Withdrawals and debits at ATMs or with merchants may be subject to additional limitation described in the Additional Banking Services and Fees.

### 2. Your responsibility to repay overdrafts

You must immediately pay the amount of any overdraft along with any fees that apply. We may report you to consumer reporting agencies, close your account, or both. This could affect your ability to open accounts with us or other banks in the future. For certain business accounts, if you don't immediately pay the amount of overdraft, you may also be charged additional fees or interest during nightly processing.

You authorize us to use the money from any subsequent deposits to your account (including but not limited to a direct deposit of Social Security or any other state or federal benefit payment) to pay any overdraft and resulting fees in that account. The repayment of any overdraft or resulting fee from any other account is outlined in the section *Setoff and Security Interest*. For deposits you have authorized, you understand and agree that if you don't want your benefits applied in this way, you may change your direct deposit instructions at any time with the person or organization paying the benefits.

You agree to pay all costs and expenses we incur in collecting any overdraft. We may still pursue collection of the amount you owe (including suing you) after it is charged off.

It's your responsibility to avoid overdrawing your account.

### 3. Insufficient Funds and Returned Item fees

We will charge a fee during nightly processing for any item presented on a business day when your account is overdrawn, whether or not we pay the item. If we pay it, we will charge an Insufficient Funds Fee. If we return it, we will charge a Returned Item Fee (even if we later decide to pay that item after we had initially decided to return it). Special rules for everyday debit card transactions are described in the *Electronic Funds Transfer Service Terms*.

Refer to your product information and Fee Schedule for information about what fees apply and how fees are calculated for your account. We may limit the number of Returned Item and Insufficient Funds fees we charge for a business day. For business accounts, we may charge interest on any amount you are overdrawn that you haven't repaid promptly.

### 4. Overdraft Protection

Overdraft Protection allows you to link one of your accounts as your backup account to your checking account to help pay an overdraft. If your checking account does not have enough money, we will use the available funds from your backup account to authorize or pay transactions.

**Establishing or Canceling Overdraft Protection:** Any owner of both a qualifying checking account and the backup account may enroll in Overdraft Protection without the consent of other owners and both accounts must share at least one owner to maintain Overdraft Protection. Any owner of the checking account or the backup account may cancel Overdraft Protection (by terminating the service or closing the account) without the consent of other owners. A backup account can provide Overdraft Protection for more than one checking account, but a checking account can have only one backup account. A personal checking account may be linked to a Chase personal savings account; and a business checking account may be linked to a Chase business savings account or a business line of credit in good standing. We may cancel your Overdraft Protection service at any time. Your request to add or cancel Overdraft Protection will become effective within a reasonable time after approval.

**Transfers:** We will make one Overdraft Protection transfer per business day that will appear on your statement for both accounts. If you have enough available funds in your backup account, we will automatically transfer enough to bring your checking account balance to zero. If you do not have enough available funds in your backup account to bring your checking account balance to zero, but you have enough available funds to pay one or more transactions and/or your previous day's negative balance, we will transfer that amount. If the amount transferred does not bring your checking account balance to zero, your checking account will become overdrawn and you may be charged Insufficient Funds or Returned Item fees. If we authorize your transaction, we will leave the funds in your backup account until we pay the transaction, which may take several days. However, if you use those funds before the transaction is paid there will not be available funds to make the transfer and your checking account may become overdrawn and charged an Insufficient Funds Fee. The available balance for a savings account is determined at the time that we authorize a transaction or at the end of business day processing. The available balance for a business line of credit is determined at the end of the previous business day processing. We are not required to notify you if funds from the backup account cannot be transferred for Overdraft Protection (for example if the account is dormant, purged, restricted or not in good standing). Refer to the section *Restricting Your Account; Blocking or Delaying Transactions* for additional information.

Overdraft Protection transfers may result in Savings Withdrawal Limit Fees. See the *Savings Withdrawal Limit Fee* section for more information.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 9 of 25
Effective 2/7/2021

## D. Electronic Funds Transfer Service Terms; Payments, Deposits and Transfers You Make or Receive by Electronic Methods

We provide a variety of electronic funds transfer (EFT) services for deposit accounts. These include payments, deposits and transfers that you make or receive by electronic methods, such as with your card, telephone, or chase.com.

## 1. Types of EFT services

### a. Debit and ATM cards

As a condition of opening certain accounts, you agree that we may automatically issue you a Chase debit or ATM card. However, activating your card is not required to keep your account open. We may deactivate any temporary ATM card when you activate your debit card.

You can use your card as follows:

**At ATMs to:**

- Withdraw cash;
- Transfer money;
- Check your balances;
- Deposit cash or checks;*
- Make payments to qualifying Chase credit cards and loans;*
- Obtain a copy of recent account activity.*

Services marked with an asterisk (*) are available only at Chase ATMs, and all services may not be available at all Chase ATMs.

When you use a Chase ATM, you will have access to all of your personal checking, savings and credit card accounts, regardless of whether the accounts are linked to your card. When linking multiple accounts to your card, one checking account and one savings account will be designated as primary. We also offer cards with limited functions for your deposit accounts, such as deposit-only business cards and prepaid cards that can be linked to a checking or savings account. Subject to the limited functions provided for each card, limited-function cards are also considered "cards" under this agreement.

You can use a non-Chase ATM only if it is in a participating network. Your primary checking and savings accounts will be accessible on that network, and your other linked accounts may be accessible. Outside the U.S., only your primary checking account is usually accessible. We may charge a Non-Chase ATM Fee, and the ATM owner/network may also charge a fee. Any of these fees may be charged for any activity, including withdrawals, balance inquiries and transfers. We generally waive the Non-Chase ATM Fee for a balance inquiry or transfer if it is made in connection with a withdrawal at the same non-Chase ATM at the same time with the same card. On some accounts, we will refund ATM fees charged by the ATM owner/network; however, some ATM owners/networks do not identify these fees in the information they send to us and, as a result, we may not automatically refund the fee. If for any reason the refund is not processed, please contact us. If you choose to convert an international transaction to U.S. dollars at either an ATM or on a purchase, foreign currency commissions and fees included in the exchange rate charged by third parties are excluded from Chase reimbursements.

**You can use your debit card (but not your ATM card):**

**At participating merchants to:**

- Purchase goods and services. Purchases are subtracted from your primary checking account. If you have arranged with your merchant to make recurring payments, you must notify the merchant if your card number or expiration date has changed or your debit card is closed. We may also provide the merchant or the participating network your new account number and expiration date.
- Withdraw cash while making a purchase using your PIN if the merchant permits the cash-back option.
- Send or receive payments from another person, or receive payments from a business by providing your card number to third-party payment services.

**At participating financial institutions to:**

- Withdraw funds at a teller. Withdrawals are subtracted from your primary checking account. You will be charged a Non-ATM Cash Fee.

### b. Electronic transfers using your account number

You may authorize a third party to transfer funds to or from your account by providing your account number and your routing number. These transfers may use various payment networks and may take various forms, such as:

- Employer payroll, government benefits or other direct deposits;
- One-time or recurring charges to your account to a utility payment or to pay other bills; or
- A "check conversion" transfer, where a merchant or other payee creates an electronic transfer from your paper check. The merchant may keep your check or return it to you.

### c. Online banking and Chase Mobile

You may use chase.com or Chase Mobile to view your account information, make deposits (Chase Mobile only), transfer funds between your Chase accounts, pay qualifying Chase loans or credit cards, or make payments from your account to third parties. Enroll for these services on chase.com or by downloading the Chase Mobile app for select mobile devices. You must agree to the additional disclosures and specific terms for using these services when you enroll.

### d. Telephone banking

You may use our automated customer service system or speak to us to get your account information, transfer funds between your accounts with us, or pay qualifying Chase loans or credit cards. You must have a valid deposit or loan account and a valid password or PIN to use the automated system. Business account owners may also use a valid Taxpayer Identification Number (TIN).

### e. Transfers for Overdraft Protection

Transfers to and from your accounts for Overdraft Protection are also EFTs and subject to these terms.

## 2. Important information and agreements about your card

### a. Authorizations and holds

Most merchants ask us to authorize your purchase. When we give authorization to a merchant, we will reserve or place a hold on your available balance, generally for three business days, for the amount of the authorization. There may be delays of several days between the authorization and the date the transaction is presented for payment, and your transaction may post to your account after the authorization hold has lifted.

We may authorize or refuse to authorize a transaction based on a different amount than the authorization request, because some merchants request authorization for an amount that is unrelated to the actual amount of the purchase (such as self-service fuel).

For some types of purchases we may place a hold for a longer period. There are times—for example, at restaurants, hotels or car rental agencies—that merchants won't know the exact amount of your purchase when they request the authorization. If the authorization is more or less than your actual purchase amount, the hold may remain for a day or two even after your purchase amount has been subtracted from your available balance. We will pay the purchase amount from your balance whenever the merchant sends it to us, even if the hold has expired.

### b. Overdrafts with your card

For personal accounts, unless you have notified us that you DO want us to pay debit card overdrafts at our discretion, we generally won't authorize an everyday debit card transaction if your available balance isn't enough to pay that transaction, and we will not charge an Insufficient Funds Fee. For business accounts, if you have notified us NOT to pay overdrafts we generally won't authorize a debit card transaction if your available balance isn't enough to pay that transaction, and we will not charge an Insufficient Funds Fee.

When we give authorization to a merchant for your purchase, your available balance will decrease. But the authorization will not prevent certain items, such as ACH transactions and checks, from posting to your account, which can leave your account without enough funds. To avoid Insufficient Fund and Returned Item fees, be sure to keep enough funds in your account to avoid overdrawing your account, including enough funds for previously authorized debit card transactions not yet posted to your account.

We rely on transaction coding sent to us by the merchant or other third party to determine whether the transaction is everyday or recurring, which affects whether or not we would authorize these transactions at our discretion and whether we can assess you Insufficient Funds Fees. If any other transaction overdraws your account, we will assess fees described in the sections *Overdrafts, Fees and Overdraft Protection, Posting Order and Processing,* and the Fee Schedule.

### c. Canceling your card

We may cancel your card at any time without notice. You may cancel your card by calling us. If you do, please destroy it.

### d. Our right to refuse transactions

We can refuse to authorize any transaction when your card has been reported lost or stolen or when we reasonably believe there may be fraudulent, suspicious or illegal activity. If you lock your card, we will stop authorizing everyday debit card transactions and ATM withdrawals but may still authorize recurring debit card transactions. Any card we issue to you will be unlocked when you activate it.

### e. Foreign exchange transactions

The exchange rate applied to card transactions that occur in a different currency will be selected by the network that processes the transaction. The network will select from the range of rates available in wholesale currency markets or a rate mandated by the government that issues or controls the currency in that country on the date it processes the transaction. The processing date on which the exchange rate is applied may differ from the date you used your card. When the card transaction is posted to your account, we will charge a Foreign Exchange Rate Adjustment Fee on the card transaction amount after conversion to U.S. dollars.

The exchange rate we use may include a spread, commissions or other costs that we, our affiliates or vendors charge in providing foreign exchange to you. The exchange rate may vary among customers depending on your relationship, products with us, or the type of transaction being conducted, the dollar amount, type of currency, and the date and the time of the exchange. You should expect that these rates will be less favorable than rates quoted online or in publications.

### f. Debit or credit prompts at terminals

If a merchant asks "Debit or Credit?" when you make a purchase, you can choose either one and your purchase will be subtracted from your primary checking account.

- If you select Debit, you must also enter your PIN.
- If you select Credit, you may have to provide a signature except for some smaller amounts and when paying for self-service fuel.

### g. ATM safety and safeguarding your account information

**Be safe at ATMs.** Some ATM locations are recorded by a surveillance camera or cameras. We advise you to be aware of your surroundings before, during and after any ATM use. Here are some additional tips:

- Choose an ATM that is well lit.
- Don't use an ATM that looks unusual or altered.
- During the hours of darkness, consider having someone accompany you to the ATM.
- If you suspect the ATM isn't working properly or if you notice anything suspicious, cancel the transaction and find another machine.
- When using a Chase ATM with a separate entry door, you should close the door completely upon entering and should not permit entrance to any unknown person after regular banking hours.
- If you need emergency assistance as a result of criminal activity or medical emergency, contact 911.
- At a walk-up ATM, minimize transaction time by having your card ready to use. At a drive-up ATM, keep your car engine running and lock your doors.
- Stand between the ATM and anyone waiting to use the machine or cover your hand so others can't see your PIN or the transaction amount.
- As soon as your transaction is complete, remove your card from the ATM, and then put away your money, receipt, and card.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 11 of 25
Effective 2/7/2021

- Contact the police or a security officer if you see any suspicious activity at the ATM. If you think you're being followed, go to a heavily populated, well lighted area, and immediately contact the police.
- Complaints concerning security at New York Chase ATMs should be reported to the Chase Security Department at 1-800-900-0001 or the New York State Department of Financial Services at 1-888-697-2861.

**Keep your PIN confidential.** Never give your PIN to anyone, and don't write it down. In addition, to keep your card information safe:

- Use a PIN that others can't easily figure out.
- To change your PIN (or if you forget your PIN), request a new PIN at chase.com, call us or visit any Chase branch.

**Protect your debit card or ATM card as you would a credit card or cash.**

**Notify us immediately if your card is lost or stolen,** or if you discover any other error. The sooner you report a problem, the sooner we can take precautions to ensure your card isn't misused.

## 3. Daily dollar limits on ATM withdrawals and card purchases

To protect your balance, we place daily dollar limits on ATM withdrawals and card purchases, even if your available balance is higher than the daily limit. Your limits are contained in the product information you received when you opened your account.

However, we may:

- Allow transactions that exceed your limits.
- Temporarily reduce your limits without notice, for security purposes.
- Change your limits (we'll notify you if we do).

Your card will be restricted if we consider your account to be inactive or dormant.

## 4. Receipts and statements

You can receive or have the option to receive a receipt at ATMs, from a banker at a branch, online through chase.com, and at merchant locations each time you make a transaction. However, for certain small dollar transactions at merchant locations, you may not receive a receipt.

See *Statements and notices* for information about periodic statements.

To confirm that you have received a direct deposit, review your balance and recent transactions through chase.com, Chase Mobile, at an ATM, or call us.

## 5. In case of errors or questions about your electronic funds transfers

If you think your statement is wrong, or if you need more information about a transaction listed on it, see the *How to Contact Us* section.

**For personal accounts only, the following procedures apply:**

We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared. Please provide us with the following:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. However, if we need more time, we may take up to 45 days to investigate your complaint or question. If we do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If your first account deposit is less than 30 days before the date of the suspected error, the 10-business-day period is extended to 20 business days. If your first account deposit is less than 30 days before the date of the suspected error or the transaction occurred at a point-of-sale location or outside the U.S., the 45-day period is extended to 90 days.

If you call us, we may require that you send us your complaint or question in writing within 10 business days. If we do not receive it within 10 business days, we may not credit your account.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**For business accounts,** our practice is to follow the procedures described above, but we are not legally required to do so. For example, we are not required to give provisional credit, or to finalize the claim during the periods stated above. We require you to notify us no later than 30 days after we sent you the first statement on which the error appeared. We may require you to provide us with a written statement that the disputed transaction was unauthorized.

## 6. Our liability for failure to complete transactions

If we do not complete a transaction from your personal account on time or in the correct amount, we will be liable for your losses or damages. However, we are not liable for any failed transaction if you do not have enough money in your balance to cover a transaction, if the ATM or device does not have enough cash or is not working properly, if circumstances beyond our control prevent the transaction, if the merchant requests authorization for an amount greater than the purchase amount, or if there are other exceptions stated in this agreement or as provided by law. We are not liable for failure to complete a transaction on a business account if we send you notice that the transaction was not completed.

## 7. Preauthorized (recurring) transfers and stop payments

You may use your account or debit card to make recurring payments. If these recurring payments vary in amount, the payee will tell you the amount and date of the next payment at least 10 days before the payment due date. You may choose to get this notice from your payee only when the payment would differ by more than a certain amount from the previous payment or when the amount would fall outside certain limits that you set.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 12 of 25
Effective 2/7/2021

You can stop some payments before the scheduled payment date in the following ways:

1. If you provided your card number for the recurring transfer, you must contact us by telephone or at the branch and give us the exact card number. We will close the card and you can replace it with a new card and card number upon request.

2. If you provided your account number and routing number for ACH direct debits to your account (both recurring and one-time payments), you must contact us by telephone or at the branch and give us your account number and the exact name of the payee. We will also need the exact amount of the payment, a range of amounts or an instruction to block all payments from the named payee. We will charge a Stop Payment Fee. We are not responsible for stopping payment on ACH transactions if you do not provide this information or if you provide inconsistent information. We may refuse a payment to a payee with a similar name that we believe to be the same payee; however, we are not liable if we don't refuse the payment. If you see a "pending" payment for a different amount or for a different payee than the stop payment you placed, contact us before the end of the business day so we can try to refuse payment. We may send you a written confirmation of your stop payment. We may rely on the information in the confirmation unless you notify us immediately of any errors. We may stop multiple transactions that have the amount and exact payee name you provided unless you cancel your stop payment request.

For personal accounts, your ACH stop payment is effective until we have determined that the ACH transaction is no longer occurring, or for 18 months, whichever is longer.

For business accounts, your ACH stop payment will either be effective:

- Until we have determined that the ACH transaction is no longer occurring, or for 18 months, whichever is longer, or
- One calendar year with automatic renewal annually for up to six additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment Automatic Renewal Fee, unless you notify us not to renew by following the instructions in the statement.

3. If you set up your recurring or one-time bill payments or transfers through chase.com or Chase Mobile, you can use that service to cancel pending and future payments.

4. If you previously set up recurring account transfers in the branch, you can only cancel those pending and future transfers in the branch.

We will generally process a stop payment request as soon as we receive it. If you place a stop payment three or more business days before the transfer is scheduled, and we still pay, we will be responsible for your losses or damages.

For business accounts, you can enroll in ACH Debit Block on chase.com to block and return ACH debit transactions. The terms of the service are governed by the Fraud Protection Services Agreement.

## 8. Disclosure of account information to third parties
Information about your account or the transactions you made will be disclosed to third parties:

- As necessary to complete transactions;
- In connection with the investigation of any claim you initiate;
- To comply with government agency, arbitration or court orders (including subpoenas);
- With your written permission;
- As permitted by our Privacy Notice.

## 9. Notice of your rights and liabilities

### For personal accounts only:

Tell us AT ONCE if you believe your card, PIN or code has been lost or stolen. Calling us is the best and fastest way of keeping your possible losses to a minimum.

If you tell us within two business days, you can lose no more than $50 if someone used your card, PIN or code without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your card, PIN or code and we can prove we could have stopped unauthorized transactions if you had told us, you could lose as much as $500. If your statement shows electronic funds transfers that you did not make, tell us right away. If you do not tell us within 60 days after the statement was sent or otherwise made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have prevented the transactions if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, let us know. We will extend the time periods.

### For business accounts only, you agree:

- To assist us in the investigation of claims for unauthorized transactions and related prosecution by completing the appropriate statements and reports reasonably requested by us;
- To notify us promptly in writing if any user of a card is no longer employed by you or authorized to conduct business on your behalf;
- That by allowing anyone to use your card, or by failing to exercise ordinary care (such as storing your PIN with your card or selecting your birthday as your PIN), you will be responsible for all authorized and unauthorized transactions;
- That all of the provisions of the Deposit Account Agreement, including liability limitations and the requirement that you give us notice of unauthorized items within 30 days, apply to your EFT services.

### Special Provisions for Card Transactions (Zero Liability Protection) for personal and business accounts:

You are not liable for any unauthorized transactions, including transactions made at merchants, over the telephone, at ATMs or on the Internet, if you notify us promptly.

However, these special provisions do not apply where you were grossly negligent or fraudulent in the handling of your account or card, where you have given someone else your card, card number or PIN, or where you delay reporting unauthorized transactions for more than 60 days (30 days for business accounts).

## 10. Fees
Fees for all EFT services are disclosed in our Fee Schedule and product information.

**11. Services not covered by this part; separate agreements**

For personal accounts, EFT services described in the *Electronic Funds Transfer Service Terms* do not include wire transfers and any transactions that are not covered by Consumer Financial Protection Bureau Regulation E.

For business accounts, wire transfers and other services not specifically described in the *Electronic Funds Transfer Service Terms* are governed generally by the Deposit Account Agreement or by separate agreements.

We may offer additional EFT services besides those described in the *Electronic Funds Transfer Service Terms* that have separate agreements and disclosures.

## E. Other Ways to Use Your Money

### 1. When you can withdraw funds you've deposited

Generally, for checking and savings accounts, you may withdraw funds the next business day after the business day you deposit them. But in some cases you may not. Please see the *Funds Availability Policy* for details.

If funds from a deposit become available and you can withdraw them, that does not mean the check or other item you've deposited is authorized, is "good," has "cleared," or has been paid by the paying bank. It's also possible that the check will be returned months after we've made the funds available to you and you've withdrawn them. No one, including our employees, can guarantee to you that a check will not be returned.

### 2. Withdrawals and transfers from your account

We may subtract from your available balance the amount of any check or other item that we receive throughout the day that you or any person you authorize created or approved. We may require you or any person you authorize to provide us with identification, documentation or information that's acceptable to us before allowing the transaction. If check writing is not an available feature of your account, we will not issue you checks, and you are not permitted to write checks drawn on your account. We will not pay checks if you attempt to do so.

### 3. Autosave feature

You can set up automatic transfers from your checking account to your other accounts. Use the Chase Mobile app or chase.com to set up, review, change or cancel your transfers.

We will not be liable to you for our failure to transfer funds under any Autosave feature that you select, for any reason, including system outages or defects. In particular, we will not be liable for any interest, gains or dividends you might have earned or not earned in any account as a result of your use of Autosave.

### 4. Transactions in a foreign currency

Any transaction we conduct for you in a foreign currency, such as sending or receiving a wire transfer to or from another country, depositing a foreign check, or exchanging foreign currency in our branches, will use an exchange rate. Currency exchange is only available at a limited number of branches and in certain currencies. The foreign exchange rates we use are determined by us in our sole discretion. The exchange rate we use will include a spread and may include commissions or other costs that we, our affiliates, or our vendors may charge in providing foreign currency exchange to you. The exchange rate may vary among customers depending on your relationship, products with us, or the type of transaction being conducted, the dollar amount, type of currency, and the date and time of the exchange, and whether the transaction is a debit or credit to your account. You should expect that these rates will be less favorable than rates quoted online or in publications.

We are not required to accept for deposit checks that are drawn on a non-U.S. bank or payable in a foreign currency. We may accept those checks on a collection basis without your specific instruction to do so. We can reverse any amount we've added to your balance and send the check on a collection basis even after we've taken physical possession of the check. Our Funds Availability Policy does not apply to any foreign check, whether we accept it for deposit or on a collection basis. The actual amount you receive for checks payable in a foreign currency will be determined at the exchange rate for such items that's in effect when we're paid for the check. If a check is returned later for any reason, we will subtract the amount of the check and any charges from other banks from your balance. We will use the applicable exchange rate in effect at the time of the return, which may be different from the exchange rate originally used for the deposit.

### 5. Large cash withdrawals

We may place reasonable restrictions on when and how you make any large cash withdrawal. We may also require that you sign a document releasing us from any liability if you are robbed or assaulted. We may refuse the withdrawal request if you do not agree with these conditions.

### 6. Stop payments on a check

If you request us to stop payment on a check, we will charge either a Stop Payment Fee or an Online or Automated Phone Stop Payment Fee depending on how you request your stop payment. However, the stop payment will not be effective if we have already certified, paid or otherwise become responsible for the check. For example, we can't stop payment on a check we've already cashed or a deposited check where the funds have already been withdrawn. Refer to the *Electronic Funds Transfer Service Terms* for how to place a stop payment on recurring electronic payments.

You may request a stop payment by calling us, in person, or through chase.com or Chase Mobile. We use automated systems to identify items, so we need specific information to process the request. In order for us to identify the item, you must give us the account number on which the check is drawn and either:

- The exact check number or a range of check numbers,
- The payee name and the exact amount of the check, or
- The payee name and range of amounts of the check.

We are not responsible for stopping payment on checks if you do not provide this information or if you provide inconsistent information. We may refuse a payment to a payee with a similar name that we believe to be the same payee; however, we are not liable if we don't refuse the payment. We may send you a written confirmation of your stop payment. We may rely on the information in the confirmation unless you notify us immediately of any errors. When the stop payment order expires, we may pay the item and have no duty to notify you.

For personal accounts, your stop payment request lasts for one year even if the check is presented more than once unless you cancel your stop payment request. However, you may place a new stop payment order, which will be effective for one calendar year from the day you place the additional order. An additional fee will be charged.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 14 of 25
Effective 2/7/2021

For business accounts, you may place a stop payment for either:

- One calendar year with automatic renewal annually for up to six additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment Automatic Renewal Fee, unless you notify us not to renew by following the instructions in the statement, or
- One calendar year (this option is not available for stop payments initiated on chase.com or Chase Mobile).

Generally, we will complete your request as soon as we receive your instructions.

We may allow you to place a stop payment on a cashier's check, teller's check or certified check if you provide us a sworn statement—in a form we deem acceptable—that the check is lost, stolen or destroyed. Even if we agree to attempt to stop payment on a cashier's check, teller's check (official check) or certified check, if the check is presented for payment, we may pay it and you will be liable to us for that item, unless otherwise required by applicable law. After you place a stop payment, we are not required to refund the check amount or issue a replacement check until at least 90 days after the original check's issue date. We are not required to refund the check amount or issue a replacement check if the check is presented for payment within 90 days after the issue date.

## 7. Account numbers on funds transfers

If you instruct us to send a funds transfer, such as a wire or ACH transfer, we and every other bank involved in the transfer may rely on any bank number or account number you provide. If the funds transfer instruction gives both a bank number or account number and a name, and the name identifies a different person from the bank or account owner identified by number, we and other banks that handle the funds transfer may still rely exclusively on the number. We have no duty to detect any inconsistency between the bank number or account number and the name.

## 8. Savings account withdrawals

In this agreement, a savings account means an account, including a money market account (and excluding NOW accounts), for which we reserve the right to require seven days' prior written notice to withdrawal. See the section *Our right to require advance notice of withdrawals*. During any monthly statement period, you may make transfers and withdrawals, regardless of the number of transfers and withdrawals or the way in which transfers and withdrawals are made. You agree not to make withdrawals by negotiable or transferable instruments (checks or drafts) for the purpose of making transfers to third parties from savings accounts. If you make more than six withdrawals or transfers per monthly statement period, you will incur a fee, see the *Savings Withdrawal Limit Fee* section.

## 9. Our right to require advance notice of withdrawals

For all savings accounts and all personal interest-bearing checking accounts, we reserve the right to require seven days' prior written notice of withdrawal.

## 10. Check cashing

If a person who is not our deposit or loan customer tries to cash your check at any of our branches, we may charge them a fee or refuse to cash it. We may also require that they provide us identification we deem acceptable.

## 11. Incomplete, future-dated, conditional or stale-dated checks

You agree not to write a check that's incomplete, future-dated or tries to limit the time or method of payment with a condition, such as "Void after 180 days" or "Valid only for $1,000 or less." We have no duty to discover, observe or comply with these conditions and may pay such checks. If we pay a conditional check, the conditions do not apply to us.

We may choose to pay or not to pay a stale-dated check (dated more than six months before it is presented), regardless of how old it is. If we pay it, you will be responsible for the check.

## 12. Multiple signatures

We are not required to comply with any multiple-signature requirement, either on personal or business accounts, even if your signature card specifies that multiple signatures are required or you have otherwise instructed us to do so. A multiple-signature requirement is for your internal control purposes only.

## 13. Facsimile signatures

We may pay a check bearing any form of facsimile or computer-generated signature. If you use a facsimile or computer-generated signature, or provide a signature card authorizing any such signature, you will be solely responsible for any check bearing a similar signature, regardless of your negligence or whether the signature was the same one you previously used.

## 14. Review of checks and signatures

Check payment is highly automated, and we pay millions of checks every day. Although we inspect some checks, you agree that reasonable commercial standards don't require us to do so. If we return a check because we believe it doesn't match your signature on file with us, we're not liable to you even if you authorized the check. If the numeric amount on a check doesn't match the amount written out in words, we may select either one when paying it. We have no duty to prevent a check from being presented more than once.

## 15. Substitute Checks and Your Rights
### What is a substitute check?

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks, with a reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

### What are your rights as a consumer regarding substitute checks?

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, Insufficient Funds Fees).

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 15 of 25
Effective 2/7/2021

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if applicable) within 10 business days after we receive your claim and the remainder of your refund (plus interest if applicable) no later than 45 calendar days after we receive your claim. We may reverse the refund (including interest) if we later determine the substitute check was correctly posted.

### How do you make a claim for a refund?

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us. You must contact us within 40 calendar days of the date that we mailed or otherwise delivered the substitute check or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

### Your claim must include:

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- The following information to help us identify the substitute check: the check number, the name of the person to whom you wrote the check, and the amount of the check.

### Depositing substitute checks

You may receive a substitute check, such as when a check you deposited is returned unpaid. If you deposit a substitute check and we suffer a loss, cost or expense as a result, you will have to pay us that amount.

## IV. Funds Availability Policy

### When Your Deposit Is Received:

If you make a deposit with a banker at a branch on a business day, we will consider that day to be the day of your deposit. If you make a deposit on a business day before our cutoff time at a Chase ATM, we will consider that day to be the day of your deposit. However, if you make a deposit on a day that is not a business day, or make an ATM deposit after the ATM cutoff time, we will consider the deposit to have been made on the next business day.

- For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays and federal holidays.
- For deposits and transfers at most ATMs, the cutoff time is 11 p.m. Eastern Time (8 p.m. Pacific Time). For ATMs with an earlier cutoff, the ATM screen will notify you of the cutoff time.
- Deposits placed in a night depository are considered received when we remove them from the night depository; we will remove deposits no later than the next business day.
- Branches in some locations may be closed on business days in observance of a state holiday or because of an emergency, and deposits made at a night depository when those branches are closed will be considered received on the next business day when the branch is open.
- We will not accept cash deposits by mail. Check deposits made by mail should be addressed to:

  National Bank By Mail
  PO Box 6185
  Westerville, OH 43086

  All deposits made by mail and addressed to any other Chase facility may be forwarded to the National Bank By Mail facility in Westerville, Ohio, and will be considered received on the date the deposit is received by that facility.

### For all accounts other than Chase Analysis Business Checking (with or without Interest): Wire transfers, electronic direct deposits and cash deposits will be available on the day we receive your deposit. Except as described later in this policy, when you make other deposits, the funds are available on the first business day after the day we receive your deposit.

In most cases when you deposit checks drawn on a Chase account:

- Deposits made with a banker at a branch will be available on the same day we receive your deposit;
- Some or all deposits made at an ATM will be available on the same day we receive your deposit.

Once funds are available, you may withdraw them or use them to pay checks and other items. For online banking deposits, different terms may apply.

### For Chase Analysis Business Checking (with or without Interest):

**Same-day availability:** Wire transfers, electronic direct deposits, and cash deposits made with a banker at a branch or at an ATM will be available on the day we receive your deposit.

**Next business day availability:** Funds from the following deposits are available on the first business day after the day we receive your deposit:

- U.S. Treasury checks that are payable to you;
- Checks that are drawn on us.
- The following items, if you make the deposit with a banker at a branch:
  a. State and local government checks that are payable to you, if you use the "Next Day Funds Availability" deposit slip available at any branch upon request;
  b. Cashier's, certified, and teller's checks that are payable to you, if you use the "Next Day Funds Availability" deposit slip available at any branch upon request;
  c. Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders that are payable to you.

**Second business day availability:** Funds from all other deposits are available no later than the second business day after the day we receive your deposit. Available funds may be withdrawn in cash or used to pay checks and other items.

For online banking deposits, different terms may apply.

**Longer Delays May Apply:**

**For all accounts other than Chase Analysis Business Checking (with or without Interest):** In some cases, we may not make all of the funds that you deposited by check available by the first business day after the day of your deposit. Funds may not be available until the second business day after the day of your deposit. However, the first $225 of these deposits will be available on the first business day after the day of your deposit, unless we delay availability for one of the circumstances listed below. If you will need the funds from a deposit right away, you should ask us when the funds will be available, but further review of the deposit after we receive it may still result in delayed availability.

**For all accounts:** We may delay availability for the full amount of the check, including the first $225, up to the seventh business day after the day of your deposit under the following circumstances:

- We believe a check you deposited will not be paid;
- You deposited checks totaling more than $5,525 in any one day;
- You redeposited a check that has been returned unpaid;
- You have overdrawn your account repeatedly in the last six months; or
- There is an emergency, such as failure of communications or our systems.

If your check deposit is made with one of our employees or at an ATM and we decide at that time to delay your ability to withdraw funds, we will tell you then. If we decide to delay availability of your funds after you complete your deposit, we will mail you a deposit hold notice by the business day after we decide to take that action.

**Special Rules for CDs and Retirement Money Market Accounts:**
Generally, funds you deposit will be available within one business day except when you deposit checks that total more than $5,525 in a business day. The amount exceeding $5,525 will be available no later than the seventh business day after the day of your deposit. However, we are not required to let you withdraw principal from a CD before it matures.

**Special Rules for New Accounts:**
If you are a new customer, the following special rules may apply during the first 30 days your account is open:

- Funds from deposits of the first $5,525 of a business day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The excess over $5,525 will be available on the seventh business day after the day of your deposit. If your deposit of these checks (other than U.S. Treasury checks) is not made with a banker at a branch, the first $5,525 will not be available until the second business day after the day of your deposit; and
- Funds from all other check deposits will be available no later than the seventh business day after the day of your deposit.

**Holds on Other Funds:**
If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available on the day they would have been available if you had deposited the check.

# V. Safeguarding Your Information

## A. Checks and Other Documents You Use
We are not responsible for losses or delays that result from improper printing on checks or other account documents that you obtain through someone other than us. We may refuse to accept for deposit or to pay checks that we cannot process or photograph using our customary equipment.

## B. Protecting Your Checks
You must protect your checks and other account documents and information from theft and unauthorized use. You must write your checks in a way that prevents someone else from completing, altering or adding to them without your authorization. If you become aware that any checks or other documents and information, such as statements, have been lost or stolen, you must notify us immediately. If you fail to do any of these things, such as leaving your checks where they can easily be stolen, we are not responsible for any losses that may result.

## C. Notice of Errors, Forgeries and Unauthorized Signatures
You must notify us in writing within 30 days after we mail a statement or otherwise make a statement available (for example, paperless statements) if:

- A check that you did not authorize or that is altered is listed on the statement;
- Your account statement contains any errors; or
- You did not receive your scheduled statement.

This 30-day notice requirement does not limit our rights to attempt to collect on unauthorized or altered checks from other banks.

You must notify us in writing of any unauthorized, improper or missing endorsements within six months after the account statement is mailed or made available.

You must provide us with all information we need to investigate the alleged error or item. You must also file any police reports and provide any supporting affidavits and testimony we reasonably request.

If you do not comply with the requirements above, we are not required to reimburse you for any claimed loss, and you cannot bring any legal claim against us in any way related to the check or errors. In addition, if you fail to notify us of any unauthorized check within 30 days (14 days in New York) after we mail, or in any other way make available, a statement that lists an unauthorized check, we are not required to reimburse you for unauthorized checks initiated by the same wrongdoer(s) that we

pay after that time. These requirements do not apply to personal account transactions covered by the *Electronic Funds Transfer Service Terms*. You also have certain rights under federal law for substitute checks; please see *Substitute Checks and Your Rights* for more information.

# VI. Managing and Maintaining Your Account

## A. Interest on Checking and Savings Accounts

When you open a checking or savings account that pays interest, we will provide you a rate sheet stating the current interest rate and Annual Percentage Yield for your account. The rate sheet is considered a part of this agreement.

Your account has a variable interest rate. That means we may change the interest rate and Annual Percentage Yield as often as we choose, without limits and without notice. Interest begins to accrue on the business day we receive credit for your deposit. For cash, wire transfers and electronic direct deposits, interest begins to accrue on the business day of your deposit.

We use the daily balance method for calculating interest. This method applies a daily periodic rate to the balance in your account each day, which may be based on your present balance or collected balance as explained in the product information for your account. The collected balance is the balance of all deposits in your account on which we have received credit for the deposited funds (determined by the availability schedule of our Federal Reserve Bank for checks and similar items). We reserve the right not to pay interest on any deposited item that is returned to us unpaid.

Interest is credited and compounded monthly. However, Retirement Money Market accounts with interest distributions will not compound, and interest will be credited on the distribution date. Unless otherwise stated in your product disclosure, interest is computed on a 365-day basis. We pay interest only in whole cents. Therefore, at the end of each interest payment period (usually monthly), any fractional amount of interest less than half of one cent will be rounded down and any fractional amount of interest equal to half of one cent or more will be rounded up to the next whole cent.

## B. Linking Your Accounts; Statements

### 1. Linked accounts

You may link your qualifying accounts to your checking account to help you avoid some fees and get relationship rates. An account may be linked to only one checking account.

We may automatically link accounts or we may provide some of the benefits you would be eligible for had you requested your accounts to be linked. If we don't, you may ask us to link your accounts. Your account information may be made available to any other owner on any of the linked accounts. If the checking account to which your other accounts are linked closes for any reason, it is your responsibility to request any remaining eligible accounts to be linked. If we determine your accounts are no longer eligible for linking, we may delink them and we are not required to notify you if we do.

If you choose to link your accounts to other accounts for which you serve as trustee or custodian (fiduciary), your account may receive a financial benefit, which could be a violation of your fiduciary duties. We are not responsible for your decision to link fiduciary accounts. You should carefully consider this decision and consult with your legal advisor if necessary. Refer to your product information to determine which qualifying accounts are eligible to be linked, any additional requirements and the benefits from linking accounts.

### 2. Statements and notices

We will make a monthly account statement available for checking and savings accounts during each statement period. The statement period may or may not be a calendar month, but in most cases it won't be more than 32 days or less than 28. The specific dates covered by your account statement will be on your statement.

You will receive statements by mail unless you choose paperless statements or if your account has had no activity other than interest we paid. If you receive paper statements, we will mail them through U.S. mail to the current address listed in our records. We may change your mailing address if we receive an address change notice. Checking and savings statements are also generally available through chase.com or Chase Mobile unless the product information indicates otherwise.

We have made the statement available to you on the day we mail your paper statement or notify you that the paperless statement is available, even if your current address or email is invalid.

We may send you other notices related to your account. If you are enrolled in chase.com or Chase Mobile, some notices may only be available electronically. We send some notices only in paper form. You agree that sending the statement or notice to one owner of an account qualifies as sending it to all owners, even if all owners don't have access to the mailing address of record for the account.

### 3. Combined statements

Checking, savings and CD accounts with at least one common owner may be combined on a single statement, either with or without your request. However, we may send you separate statements at any time for any reason without prior notice. If accounts are included on a combined statement and you don't want that, notify us and we'll separate the statements. That change will affect only future statements.

Linked accounts do not have to be on a combined statement to receive the benefits of linking, and combining accounts on a single statement does not mean that the accounts are linked.

Each owner of each account listed on the statement can request a copy of a statement and will be able to view all account activity for all accounts on that statement through chase.com or Chase Mobile.

### 4. Options for receiving checks

We offer three choices for how you can view or receive copies of checks you've written or authorized:

- "Check safekeeping" means we keep images of your checks, which are available through chase.com. We do not include your paid checks or images of them with your statement. Some accounts require check safekeeping.

- "Image statement" means you will receive images of the front of your paid checks on your account statement.

- "Check enclosure" means we return legal copies of your paid checks with your account statement. This feature is not offered on all accounts.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 18 of 25
Effective 2/7/2021

If you have multiple personal checking accounts on a single statement and one of them uses check enclosure, all others will use check safekeeping. You agree that when we send a statement we have made the check available to you, even if we do not send originals or images with the statement. We will destroy original checks after a reasonable period of time we determine.

If for any reason we can't provide a copy of your check, you agree that we will not be liable for more than the face amount of the check. We cannot provide originals or images of checks that are sent to us as electronic transfers. Additionally, other banks may send us electronic images instead of original checks, so we can provide a copy of the image, but not the original check.

## C. Telephone and Electronic Communication

We may record and/or monitor any of our telephone conversations with you. If we do record, we do not have to keep the recordings, unless the law says we must. We may use your voice to verify your identity.

When you give us your mobile number, we have your permission to contact you at that number about all of your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences. If you give us your email address, you agree that we may send servicing messages (such as fraud alerts and hold alerts) related to your accounts to that address.

We may send communications electronically, such as by email or text message, rather than through U.S. mail or other means, unless the law says otherwise.

## D. Other Fees for Your Account

### 1. Fees

You agree to pay all fees applicable to your account. We provided you a schedule of fees when you opened your account, and we will notify you of any changes. We may subtract these fees from your balance, even if the fee makes your balance negative. Refer to the Fee Schedule for specific fee information.

### 2. Savings Withdrawal Limit Fee

The Savings Withdrawal Limit Fee is a Chase fee and applies for each withdrawal or transfer out of a Chase savings account over six per monthly statement period. All withdrawals and transfers out of your savings account count toward this fee, including those made at a branch or at an ATM. Refer to your product information for fees that apply for your account.

## E. Setoff and Security Interest

If you owe a debt to us or any of our affiliates (either now or in the future) that is due or overdue, you grant us a right of setoff to, and a security interest in, all of your accounts to secure the debt and, as a consequence, we may use funds in any of your accounts to pay all or part of that debt. If your account is a joint account, we may use the funds in the joint account to pay the debt of any account owner. Our security interest will be governed by Uniform Commercial Code Article 9, whether Article 9 applies by its terms or not. We do not have to give you any prior notice to apply the funds except as required by law. You expressly agree that our rights extend to any federal or state benefit payments (including Social Security benefits) that had been deposited to your account. The right of setoff does not apply if the debt is created under a personal credit card plan. Any term that may exist in another agreement that governs your debt that may also provide for such rights provided here will be governed by that agreement.

If any federal benefits or other payments are deposited to your account after you become ineligible to receive them, and we are obligated to return those funds to the payor, we may reduce your account balance by that amount.

## F. Account Alerts and Text Banking

If you receive or otherwise use Account Alerts or text banking, you agree to the following terms. If you are enrolled with chase.com, the terms of the Online Service Agreement control the terms of these services instead.

- We may use a telephone number, email address or other delivery point we have in our records for you or other contact information that you provide to us for these services so we can send you certain information about your account. You may be automatically enrolled to receive certain Account Alerts via email. To manage your Alerts preferences or cancel Account Alerts, use chase.com or Chase Mobile or call us.
- We will send Account Alerts or text banking messages through your service provider, who will act as your agent and deliver them to you. Delivery of alerts may be delayed for various reasons, including service outages affecting your phone, wireless, or Internet provider; technology failures; and system capacity limitations.
- We do not charge for Account Alerts or text banking, but message and data rates may apply. **To cancel text banking services, send STOP to 24273 at any time.** For help or information on text banking, send HELP to 24273 or contact us at 1-877-242-7372.
- Account Alerts and text banking are provided for your convenience and do not replace your monthly statement, which is the official record of your account. Anytime you review your balance, keep in mind it may not reflect all transactions, including recent debit card transactions or checks you have written.
- You understand we may not encrypt information when it is sent to you through these services. This information may include personal or confidential information about you, such as account activity or the status of your account.

You understand we are not liable for losses or damages from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery or mishandling of, or inaccurate content in Account Alerts or information sent through text banking. If we suffer a loss, cost or expense because you provide an incorrect telephone number, email address or other delivery point, or you violate applicable laws, you have to pay that amount to us.

# VII. Maintaining Your Certificate of Deposit (CD) Account

A certificate of deposit, or CD, is a deposit account with us for a specified period of time. This disclosure covers both retirement and non-retirement CD products. By opening your CD, you agree to keep the amount deposited (principal) on deposit.

Here are a few things you should know about CDs:

**Term:** The term is the number of days, months or years you agree to leave your money in the account.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 19 of 25
Effective 2/7/2021

**Maturity date and grace period:** The maturity date is the last day of your CD's term. The grace period is the 10 days after the maturity date for CDs with a term of 14 days or longer. On the maturity date or during the grace period you can change the term of your CD, make additional deposits (for non-retirement CDs only), or withdraw your CD principal without paying an early withdrawal penalty.

**CD ladders:** Chase may offer a CD ladder, which is a group of four CDs opened at the same time for the same amount but with different terms. When each CD matures, its term will change to the longest term of the original group. For example, in a 12-month ladder, we will open four CDs with original terms of 3, 6, 9 and 12 months. When each CD matures, its new term will be 12 months. The result will be four 12-month CDs with a CD maturing every three months.

**Automatically renewable CD:** An automatically renewable CD will renew on the maturity date for the same term unless 1) you have a different renewal term as part of a CD ladder; 2) you change or close the account or 3) we notify you otherwise. Once your CD renews, any reference to the maturity date means the last day of the new term. For the renewal term, your CD will earn interest for the term and amount at the CD standard rate unless you qualify for the CD relationship rate. If your CD is closed during the grace period, it will not earn interest on or after the maturity date.

**Single maturity CD:** A single maturity CD will not automatically renew on the maturity date and won't earn or be paid interest on or after that date.

**Interest:** We use the daily balance method to calculate interest on your CD. This method applies a periodic rate each day to your balance. Interest begins to accrue on the business day of your deposit. Interest for CDs is calculated on a 365-day basis, although some business CDs may calculate interest on a 360-day basis. The Annual Percentage Yield (APY) disclosed on your deposit receipt or on the maturity notice assumes interest will remain on deposit until maturity. On maturities of more than one year, interest will be paid at least annually.

You may withdraw any paid or credited interest without penalty during your CD's term or at maturity. On the maturity date, interest will become principal of the renewed CD. A withdrawal will reduce earnings.

**Early withdrawal penalties: There is a penalty for withdrawing principal prior to the maturity date.**

**For Personal CDs:**
- If the term of the CD is less than 6 months, the early withdrawal penalty is 90 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- If the term of the CD is 6 months to less than 24 months, then the early withdrawal penalty is 180 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- For terms 24 months or more, the early withdrawal penalty is 365 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as described above, but it cannot be less than seven days' interest.
- The amount of your penalty will be deducted from principal.

**For Business CDs:**
- If the term of the CD is less than 12 months, the early withdrawal penalty is equal to $25 plus 1% of the amount withdrawn.
- For terms of 12 months or more, the early withdrawal penalty is equal to $25 plus 3% of the amount withdrawn.
- If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as described above, but it cannot be less than seven days' interest.
- The amount of your penalty will be deducted from principal.

**Waiving early withdrawal penalties for Personal CDs:**
We will waive early withdrawal penalties under the circumstances described below, unless these withdrawals occur less than seven days after the account was opened or a previous withdrawal was made.

For non-retirement CDs:
- Death of a CD owner or a grantor of a revocable family/living trust;
- Disability of a CD owner;
- A court's determination that a CD owner is incompetent; and
- Re-titling of a CD to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs.

For retirement CDs:
- If the CD owner is withdrawing an excess annual retirement contribution amount and any corresponding earnings.

  We will also waive early withdrawal penalties for retirement CDs under the circumstances described below, regardless of when the early withdrawal is made in relation to the CD opening or a previous withdrawal.

- Death or disability of a retirement CD owner;
- A court's determination that a retirement CD owner is incompetent; and
- If the retirement CD owner is age 59½ or older and the funds are taken as an IRS-reportable distribution via cash, check, or deposit or transfer to a non-retirement account. This waiver does not apply if the transfer is to a retirement account at another financial institution.

**Waiving early withdrawal penalties for Business CDs owned by a sole proprietorship:**
We will waive early withdrawal penalties under the circumstances described below, unless these withdrawals occur less than seven days after the account was opened or a previous withdrawal was made.

- Death of a CD owner or a grantor of a revocable family/living trust;
- Disability of a CD owner;
- A court's determination that a CD owner is incompetent; and
- Re-titling of a CD to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs.

# VIII. Closing Your Account

Either you or we may close your account (other than a CD) at any time for any reason or no reason without prior notice. We are not required to close your account at your request if you have pending transactions, the account is overdrawn, your account is subject to legal process (such as a garnishment, attachment, execution or levy) or any type of holds (such as collateral hold, decedent hold or deposit hold). In those cases, we will limit the types of transactions that you can make until pending transactions are paid or returned, the balance is no longer negative and any legal restriction/hold has been released. After we restrict your account in preparation for closing, we will not pay any additional interest on the account. We may automatically close your account if the balance is $0 or negative. Either you or we may close your CD account on any maturity date without cause.

We may send you written notice that we have closed or will close your account and return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1. After your account is closed, we have no obligation to accept deposits or pay any outstanding checks, but we may reopen your account if we receive a deposit. We will have no liability for refusing to honor any check drawn on a closed account. We have the right to advise consumer reporting agencies and other third party reporting agencies of accounts closed for misuse, such as overdrafts.

This agreement continues to apply to your account and issues related to your account even after it closes.

# IX. Other Legal Terms

## A. Rules Governing Your Account

This agreement, all accounts and services provided to you, and any dispute relating to those accounts and services are governed by federal law and, when not superseded by federal law, the law of the state where your account is located.

Here's how we determine where your account is located:

- If you applied for the account in person at one of our banking offices, then the account is located in the state where you applied.
- If you applied in person for a business account with one of our representatives somewhere other than at one of our banking offices (your place of business, for example), your account is located in the state where the representative's business office is located.
- If you applied for the account by mail, digitally, or through other remote means, and your address as recorded in our records was in a state where we had a branch at the time, then the account is located in that state, which for joint accounts will be based on the address of the owner whose name was listed first.
- In all other cases your account will be governed by Ohio law.

Business trust accounts for professionals regulated by a state (or a self-regulatory body under a state's laws) are located in the designated state.

## B. General Liability

Any provision of this agreement that limits the bank's liability does not negate the bank's duty (if any) under applicable law to act in good faith and with reasonable care. If any provision of this agreement is determined to limit the bank's liability in a way prohibited by applicable law, the provision will nevertheless be enforced to the fullest extent permitted under that law.

We will not be liable for anything we do when following your instructions. In addition, we will not be liable if we do not follow your instructions if we reasonably believe that your instructions would expose us to potential loss or civil or criminal liability, or conflict with customary banking practices. **WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED SIGNATURE, OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, WILL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.**

If this agreement conflicts with any statements made by one of our employees or by our affiliates' employees, this agreement will govern.

## C. Restricting Your Account; Blocking or Delaying Transactions

There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:

- Your account is involved in any legal or administrative proceeding;
- We receive conflicting information or instructions regarding account ownership, control or activity;
- We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s);
- We suspect that any transaction may involve illegal activity or may be fraudulent;
- We are complying in our sole judgment, with any federal, state or local law, rule or regulation, including federal asset control and sanction rules and anti-money-laundering rules, or with our policies adopted to assure that we comply with those laws, rules or regulations; or
- We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.

We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period of time, or who may make deposits, in order to reduce risk and/or enhance our efforts to comply with applicable law.

We can assign and transfer your account information and documentation to a replacement account number at our discretion. We may make this assignment when your account is reported compromised by you or any signer. If we issue you a replacement account number, this Deposit Account Agreement governing you and your account will continue to apply, without interruption, as if you retained the discontinued account number.

We will have no liability for any action we take under this section and we may take such action without advanced notice.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 21 of 25
Effective 2/7/2021

## D. Changes to the Agreement

We may change the terms of this agreement, including fees and features of your account, at any time. If any change would adversely affect you, we will notify you in advance, unless the change is necessary to comply with a legal requirement.

For CDs, changes that would adversely affect you will be effective on the next maturity date.

If we transfer your account to a different business unit within the bank, we may give notice in the same manner and provide you a different deposit agreement to govern your account. You agree that notice of these changes may be provided to any joint owner.

We are not required to send you notice of interest rate and Annual Percentage Yield changes for variable rate accounts or notice of changes in printing fees for documents (such as checks).

We may direct you to a branch or chase.com for the content of any changes or the revised agreement unless the law requires a different method. By maintaining your account after the effective date of any change, you agree to the change.

This agreement takes the place of any understandings, agreements, representations, and warranties, both written and oral, made prior to or when you entered into this agreement.

## E. Our Responsibility to Obtain Personal Information

Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or business who opens an account. We require the following information or documents as a condition to your opening an account:

- For a personal account: your name; residential address; date of birth; and Social Security number, driver's license or other identifying documents
- For a business account: your business name, taxpayer identification number and business address; the name, residential address, date of birth and Social Security number of each signer, so we can verify the signer's identity; and documents to verify the business's existence.

Our policies may require additional information about you or any person associated with you or with the account when or after you open the account to assure that we comply with "Know Your Customer" requirements. We may restrict or close your account if we are unable to obtain information in order to satisfy our "Know Your Customer" requirements. By opening an account with us, you confirm that neither you nor any beneficial owner of any account is covered by any sanctions programs administered or enforced by the U.S. Department of the Treasury, Office of Foreign Asset Control.

## F. Prohibited Activities and Tax Reporting

We strictly prohibit the use of any account to conduct transactions (including, without limitation, the acceptance or receipt of credit or other receipt of funds through an electronic funds transfer, or by check, draft or similar instrument, or the proceeds of any of the foregoing) that are related, directly or indirectly, to unlawful Internet gambling. The term "unlawful Internet gambling," as used in this Notice, shall have its meaning set forth in 12 C.F.R. Section 233.2(bb). You agree not to conduct any transactions through the account that directly or indirectly involve or are related to unlawful Internet gambling, including, without limitation, the acceptance or receipt of any funds or deposits in connection therewith.

You also agree not to use your account for any other illegal activity. We may refuse any gambling transaction, whether lawful or not.

Transactions in your account are also subject to applicable clearinghouse and Federal Reserve rules and regulations. You will not use your account to send or receive a payment on behalf of anyone who is not a U.S. citizen or resident using The Clearing House Association's Real-Time Payment network.

You agree that you are responsible for your tax obligations and any funds in, or to be deposited in, your accounts are not proceeds from any criminal activity (including, but not limited to, tax crimes). Funds in, and any income derived from, your accounts will be disclosed to the relevant tax authorities, if required by law. All information that has been provided is complete and accurate, including any information pertaining to your country of citizenship, residence, principal place of business and any other relevant information to determine legal and tax status. You agree to notify us and/or provide us with any changes related to your tax affairs as we may request in order to comply with our regulatory obligations.

## G. Death or Incompetence of Account Owner or Sole Signer

Tell us immediately if any account owner dies or is declared incompetent by a court. We may act as if all owners are alive and competent until we receive notice otherwise.

After we receive notice of death or incompetence, we may freeze your balance, refuse to accept transactions, and reverse or return deposits. We are also not required to release your funds until we receive any documents we reasonably request to verify your death or incompetence, as well as who is entitled to the funds. If you die while residing outside the United States, we may require a personal representative to be appointed by a court in a United States jurisdiction. If we have any tax liability because of paying your balance to your estate, the estate will be responsible for repaying us the amount of that tax. If an account owner authorizes any transaction, but it's not presented for payment until after that owner dies, we are authorized to pay the transaction. If you owe us a debt at the time of your death, we are permitted to exercise our right of setoff (our right to apply funds in one account to the debt associated with another account) or security interest rights against the funds credited to your balance after your death. We have these rights even if a surviving joint owner, a "payable on death" payee, or a beneficiary of an "in trust for" or "trustee for" account has rights to the account.

After we receive notice of death or incompetence of the sole signer on a business organization's account, we may freeze the balance, refuse to accept transactions, and reverse or return deposits. We are also not required to release the organization's funds until we receive any documents we reasonably request to verify the death or incompetence of the signer and to establish a new person's authority to act on behalf of the organization in transacting on or closing the organization's account.

## H. Adverse Claims

If there are conflicting instructions or there is any dispute regarding your account, we may take any action, including refusing to disburse any funds in the account to any person until all persons claiming an interest consent in writing to a resolution of the dispute; or a court of proper jurisdiction authorizes or directs the payment; or the person with a conflicting claim withdraws his or her claim in writing. We may also place funds in a court (this is called an interpleader action) for resolution. If any person notifies us of a dispute, we do not have to decide if the dispute has merit before we take further action. We may take these actions without any liability and without advance notice, unless the law says otherwise.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 22 of 25
Effective 2/7/2021

## I. Authorization to Share Information

You authorize us to share information about you and your account with affiliates and third parties, unless the law or our Privacy Notice prohibits us from doing so. Please see our *Privacy Notice* for your choices about information sharing.

## J. Disputing Information Reported to a Consumer Reporting Agency

If you believe that we have reported inaccurate or incomplete information about your account to a consumer reporting agency, you have the right to file a dispute with that consumer reporting agency. You may also submit a dispute directly to us by writing to the address in the *How to Contact Us* section. Provide your name, address and phone number; the account number; the specific information you are disputing; an explanation of why it is inaccurate or incomplete; and any supporting documentation.

## K. Legal Process and Requests for Information

If we receive any legal process relating to you or your account, you authorize us to comply with it. "Legal process" means any document that appears to have the force of law that requires us to hold or pay out funds from your account, including a garnishment, attachment, execution, levy or similar order. We do not have to determine whether the legal process was validly issued or enforceable. If a hold is in effect, we will continue to charge any applicable fees even though the account cannot be closed. We also may remove your Overdraft Protection if a hold is placed, but you may ask us to relink your accounts after the hold is removed. As permitted by law, we will deduct from your balance a Legal Processing Fee or costs and expenses we incur in complying with the order, or both.

If any action, including administrative proceedings, garnishment, tax levies, restraining orders or another action is brought against you or your account, you will be liable to us for any loss, cost or expense (including attorneys' fees) resulting from our compliance with any legal process.

If we receive any subpoena, court order or request for information or documents from a government entity or arbitration panel relating to your account, we are authorized to comply with it.

## L. Abandoned Property

Each state has laws that govern when accounts are considered abandoned and when we are required to send a customer's funds to the state.

## M. English Language — Other Language Preferences

The terms of this agreement and the products and services we provide are governed by the English language. As a courtesy, we make some of our forms, disclosures and documents, including this agreement, available in languages other than English. However, many important bank documents, and some products and services related to this account, are provided only in English. If there is any difference in meaning between the English and non-English version of any of our documents, the English version applies and is available upon request.

## N. Referrals

If you request it, our employees may at times provide contact information about third parties, such as lawyers, accountants, or contractors who offer products or services to the public. Some of these third parties may be our customers. We provide this information only as a courtesy and convenience to you and the third party, but in some cases we may be compensated for a referral. We do not make any warranties or representations about the third parties or their products or services. If you choose to do business with any third party, that decision is yours alone, and we are not responsible for the third party's performance or to help resolve any dispute between you and the third party. Our employees may also receive compensation when you purchase a Chase product based on their referral.

## O. Special Provisions for Pass-Through Accounts

If you have opened a deposit account on behalf of the beneficial owner(s) of the funds in the account (for example as a trustee, agent, nominee, guardian, executor, custodian or funds held in some other capacity for the benefit of others), those beneficial owners may be eligible for "pass-through" insurance from the FDIC. This means the account could qualify for more than the standard maximum deposit insurance amount (currently $250,000 per depositor in the same ownership capacity). If the account has transactional features, you as the account holder must be able to provide a record of the interests of the beneficial owner(s) in accordance with the FDIC's requirements as specified below. The FDIC has published a guide that describes the process to follow and the information you will need to provide in the event Chase fails. That information can be accessed on the FDIC's website at www.fdic.gov/deposit/deposits/brokers/part-370-appendix.html.

In addition, the FDIC published an Addendum to the guide, section VIII, which is a good resource to understand the FDIC's alternative recordkeeping requirements for pass-through accounts. The Addendum sets forth the expectations of the FDIC for pass-through insurance coverage of any deposit accounts, including those with transactional features. The Addendum will provide information regarding the records you keep on the beneficial owners of the funds, identifying information for those owners, and the format in which to provide the records to the FDIC upon bank failure. You must be able to provide this information in a timely manner in order to receive payment for the insured amount of pass-through deposit insurance coverage as soon as possible. You will have an opportunity to validate the capability to deliver the required information in the appropriate format so that a timely calculation of deposit insurance coverage can be made; further instructions relating to this opportunity will be communicated at a later time.

You agree to cooperate fully with us and the FDIC in connection with determining the insured status of funds in such accounts at any time. In the event of a bank failure, you agree to provide the FDIC with the information described above in the required format within 24 hours of a bank failure. As soon as a receiver is appointed, a hold will be placed on your account and that hold will not be released until the FDIC determines that you have provided the necessary data to enable the FDIC to calculate the deposit insurance. You understand and agree that your failure to provide the necessary data to the FDIC may result in a delay in receipt of insured funds and may result in legal claims against you from the beneficial owners of the funds in the account. If you do not provide the required data, your account may be held or frozen until the information is received, which will cause a delay when the beneficial owners could receive funds. Despite other provisions in this Agreement, this section survives after a receiver is appointed for us, and the FDIC is considered a third party beneficiary of this section.

## P. Sub-accounts

For accounting purposes, all checking accounts consist of two sub-accounts: 1) a transaction sub-account where all deposits, withdrawals and fees are posted, and 2) a savings holding sub-account, where available balances above a certain level are transferred daily. Funds will be retransferred to your transaction sub-account to meet your transactional needs; however, all balances in the holding sub-account will be transferred to the transaction sub-account with the sixth transfer in any calendar month or monthly statement period.

Both sub-accounts are treated as a single account for purposes of your deposits and withdrawals, earning interest, access and information, tax reporting, fees, etc.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 23 of 25
Effective 2/7/2021

**Q. Permitted Time for Filing a Lawsuit**

You must file any lawsuit or arbitration against us within two years after the cause of action arises, unless federal or state law or an applicable agreement provides for a shorter time. This limit is in addition to limits on notice as a condition to making a claim. If applicable state law does not permit contractual shortening of the time during which a lawsuit must be filed to a period as short as two years, you and we agree to the shortest permitted time under that state's laws.

We abide by federal and applicable state record retention laws and may dispose of any records that we retained or preserved for the period set forth in these laws. Any action against us must be brought within the period that the law requires us to preserve records, unless applicable law or this agreement provides a shorter limitation period. Any action against us on an automatically renewable CD must be brought within the time that the law requires us to preserve records based on the stated maturity date in the most recent record of the CD.

**R. Location of Legal Proceedings**

If you file any lawsuit or other legal proceeding against us that is connected in any way to your accounts or services, you agree to do so in an appropriate court in the state where your account is located. If we file any lawsuit or legal proceeding that is connected in any way to your accounts or services, you consent to jurisdiction and venue in an appropriate court in the state where your account is located. If either party chooses to have disputes resolved by arbitration, the section *Arbitration; Resolving Disputes* governs the process and location of the arbitration proceedings.

**S. Pre-judgment Interest Rate**

If either you or we are awarded a judgment against the other in connection with your account, the rate of interest earned before judgment on the judgment amount will be the rate of interest the account earned during that period unless state law requires a different rate. If the account is not interest-bearing, the rate will be the lowest generally available rate for a personal interest-bearing checking account.

**T. Assignment of Agreement and Successors**

This agreement will be binding on your personal representative, executors, administrators and successors, and on our successors and assigns.

You may not assign, transfer or grant a security interest in your account to anyone other than us without our written consent. No assignment will be valid or binding on us, and we will not be considered to have knowledge of it, until we consent and note the assignment in our records. However, by noting the assignment, we do not have any responsibility to assure that the assignment is valid. Any permitted assignment of your account is subject to our setoff rights.

**U. No Waiver**

If we fail to exercise any right, that does not mean that we waive that right or any other right, and we may still enforce all of our rights in the future.

# X. Arbitration; Resolving Disputes

You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).

This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

**What claims or disputes are subject to arbitration?**

Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

**Can I (customer) cancel or opt out of this agreement to arbitrate?**

You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account. If you want to opt out, call us at 1-800-935-9935 or see a banker. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy.

**What about class actions or representative actions?**

Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:

1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;

2. SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;

3. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

4. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 24 of 25
Effective 2/7/2021

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

## Does arbitration apply to Claims involving third parties?

Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration. No award or relief will be granted by the arbitrator except on behalf of, or against, a named party. For purposes of arbitration, "you" includes any person who is listed on your account, and "we" includes JPMorgan Chase Bank, N.A., all its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim. (If we assign your account to an unaffiliated third party, then "we" includes that third party.) The arbitration may not be consolidated with any other arbitration proceeding.

## How does arbitration work?

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The arbitrator will decide the Claim in accordance with all applicable law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. A single arbitrator will conduct the arbitration and will use applicable substantive law, including the Uniform Commercial Code, consistent with the FAA and the applicable statutes of limitations or conditions precedent to suit, and will honor claims of privilege recognized at law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

## Is the arbitrator's decision final? Is there an appeal process?

The arbitrator's decision will be final and binding on the parties. A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

## Who will pay for costs?

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay, you may request that we pay or reimburse them, and we will consider your request in good faith.

## How do I (customer) file an arbitration claim?

Rules and forms may be obtained from, and Claims may be filed with, JAMS (1-800-352-5267 or www.jamsadr.com) or the AAA (1-800-778-7879 or www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2021 JPMorgan Chase & Co.

Return to Table of Contents

Page 25 of 25
Effective 2/7/2021

*Privacy Notice*



Rev. April 2020

| FACTS | WHAT DOES CHASE DO WITH YOUR PERSONAL INFORMATION? |
|-------|-----------------------------------------------------|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number and income<br>■ account balances and transaction history<br>■ credit history and payment history |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Chase chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Chase share? | Can you limit this sharing? |
|------------------------------------------------|-------------------|-----------------------------|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** –<br>to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** –<br>information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** –<br>information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

| To limit our sharing | ■ Call 1-888-868-8618 - our menu will prompt you through your choice(s). We accept operator relay calls.<br>■ Chase Sapphire® customers please call 1-800-493-3319.<br>■ **Visit us online: chase.com/privacypreferences.**<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|

| Questions? | ■ Call 1-888-868-8618 - our menu will prompt you through your choice(s). We accept operator relay calls.<br>■ Chase Sapphire® customers please call 1-800-493-3319. |
|---|---|

**Page 2**

## Who we are

| | |
|---|---|
| **Who is providing this notice?** | The JPMorgan Chase & Co. family of companies. A partial list of its U.S. consumer financial companies is located at the end of this document. |

## What we do

| | |
|---|---|
| **How does Chase protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We authorize our employees to get your information only when they need it to do their work, and we require companies that work for us to protect your information. |
| **How does Chase collect my personal information?** | We collect your personal information, for example, when you<br>■ open an account or make deposits or withdrawals from your account<br>■ pay your bills or apply for a loan<br>■ use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes – information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Our affiliates include companies with a Chase or J.P. Morgan name and financial companies such as J.P. Morgan Securities LLC* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Nonaffiliates we share with can include companies such as retailers, auto dealers, auto makers and membership clubs* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>■ *Our joint marketing partners include categories of companies such as insurance companies* |

## Other important information

**State laws:**

VT: Accounts with a Vermont mailing address are automatically treated as if they have limited the sharing as described on page 1. For joint marketing, we will only disclose your name, contact information and information about your transactions.

NV: We are providing you this notice pursuant to Nevada law. If you prefer not to receive marketing calls from us, you may be placed on our Internal Do Not Call List by calling 1-800-945-9470, Chase Sapphire® customers please call 1-800-493-3319, or by writing to us at P.O. Box 734007, Dallas, TX 75373-4007.

For more information, contact us at the address above, or email Privacy.Info@JPMChase.com, with "Nevada Annual Notice" in the subject line. You may also contact the Nevada Attorney General's office: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; telephone number: 1-702-486-3132; email BCPINFO@ag.state.nv.us

CA: Accounts with a California mailing address are automatically treated as if they have limited the sharing with nonaffiliates as described on page 1. CA residents are provided a CA notice for additional choices.

**Who is providing this notice?**

JPMorgan Chase Bank, N.A.    Chase Insurance Agency, Inc.    J.P. Morgan Securities LLC

Separate policies may apply to customers of certain businesses, such as J.P. Morgan Private Bank.

## CERTIFICATE OF SERVICE

I, Christopher A. Mair, an attorney, hereby certify that on November 4, 2022, I caused the foregoing **DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered parties.

*Christopher A. Mair*
Christopher A. Mair