**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JORDAN PERRY and FORGE PTASP LLC, | |
| Plaintiffs, | |
| v. | No. 22-cv-04326 |
| JPMORGAN CHASE BANK, N.A., | The Honorable Manish S. Shah |
| Defendant. | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COME the Plaintiffs, by and through their undersigned counsel, James C. Vlahakis, and assert the following as their Second Amended Complaint against Defendant JPMorgan Chase Bank, N.A:

### PARTIES, JURISDICTION, AND VENUE

1.      This action seeks the return of money illegally converted by Chase and belonging to Plaintiffs Jordan Perry and Forge PTASP LLC and compensatory and punitive damages directly caused by the conduct of Chase. Also, Further, Plaintiff Perry seeks to recover actual and punitive damages for defamation per se arising out of the false statements made by Chase.

2.      Plaintiff Jordan Perry ("Perry") is an African-American individual who resides with his wife and toddler son in Crestwood, Illinois.

3.      Perry is domiciled in Illinois.

4.      Plaintiff Forge PTASP LLC ("Forge PTASP LLC") is an Illinois limited liability corporation which has its principal place of business in Illinois.

5.      Perry is the sole member of Forge PTASP LLC.

6.      PTASP LLC is a citizen of Illinois and because its sole member, Perry, is domiciled in Illinois and is a citizen of Illinois.

7.      Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national banking association which is engaged in consumer and business banking with customers in Illinois and throughout the United States.

8.      A national banking association is a citizen of the state where it is "located." 28 U.S.C. § 1348.

9.      For purposes of section 1348, a national bank is located in the place where it is designated to have its main office. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318, 126 S.Ct. 941, 952, 163 L.Ed.2d 797 (2006).

10.     Chase has its main office in Columbus, Ohio and it is a citizen of Ohio.

11.     Chase operates a branch bank at 15100 South La Grange Road, Orland Park, Illinois 60462.

12.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This Court has diversity jurisdiction to hear and determine this case pursuant 28 U.S.C. § 1332 because there is complete diversity of citizenship between Chase (Ohio), Perry (Illinois) and PTASP LLC (Illinois) and the amount in controversy exceeds $75,000.

14.     Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and a substantial part of property that is the subject of the action, is in this District.

## FACTUAL ALLEGATIONS

### A. Background Facts Regarding Plaintiff Perry and His Sole Proprietorship

14.     Perry's relationship with Chase began in 2012 when he opened a consumer checking account and was assigned an account number ending in 1218.

15.     Perry is a college educated and trained physical trainer. He is a 2017 graduate of Trinity Christian College and holds a bachelor of science degree in exercise science.

16.     Since college graduation Perry has continued his studies related to personal training and has earned multiple certifications in his profession.

17.     Perry inherited his passion for physical training from his father, a police officer who trained folks in physical fitness as a part time endeavor. Perry trained with his father and together they operated under the trade name "Forge Fitness."

18.     Perry adopted the name "Forge Fitness" when he began his business as a sole proprietor in 2017.

19.     Perry used the name of "Forge Fitness" when he worked for and trained paying clients at third party gyms, eventually growing the business successfully and leasing his own space.

20.     Perry was keen on marketing and had business cards and promotional T-shirts made to promote and grow his business. All of Perry's marketing used the trade name "Forge Fitness."

21.     After Perry began to earn money, doing business as Forge Fitness, he would routinely deposit that revenue into his personal account. Most clients paid Perry using Zelle, a digital payments network owned by Early Warning Services, LLC, a private financial services company owned by several banks including Chase.

22.     Perry's client would use Zelle to make payments to Perry for training and those payments were credited to Perry's Chase account through the Zelle network.

23.     Certain customers of Perry's a sole proprietorship would pay by check made payable to "Forge Fitness."

24.     Perry endorsed checks written out to "Forge Fitness" and deposited them to his Chase banking account ending in 1218.

25.     Chase never objected to Perry endorsing checks made out to "Forge Fitness" and depositing the types of checks into his Chase banking account ending in 1218.

**B. COVID-19 and the Coronavirus Aid, Relief, and Economic Security Act (the "Cares Act")**

26.     In response to COVID-19-induced economic fallout, Congress passed CARES Act. . See Coronavirus Aid, Relief, and Economic Security Act, Pub L. No. 116-136, 134 Stat. 281 (2020).

27.     The CARES Act was passed to help small businesses make payroll and pay operating expenses such a s rent in order to stay in operation during the economic downturn caused by COVID-19.

28.     The CARES Act resulted in the formation of the Paycheck Protection Program ("PPP"). *Id*. § 1102, 134 Stat. at 286 (codified at 15 U.S.C. § 636(a)(36)).

29.     The Small Business Administration ("SBA") administers the PPP program.

30.     The principal function of the PPP is to provide loans to qualified small businesses. *See* 15 U.S.C. § 636(a)(36)(D)(I).

31.     The PPP was designed to give emergency loans to eligible businesses and, if the loaned funds are used for specified expenses, to allow those loans to be forgiven. *See* 15 U.S.C. § 9005(b).

32.     For example, a small business , after meeting certain criteria, can recieve PPP funds to cover payroll and certain other expenses like mortgage or rent payments and utility expenses. *Id.*

33.     In addition to formal corporation, sole proprietors and businesses in formative stages were eligible for PPP loans.

4

34.     The PPP program did not require loan recipients to be established in the form a incorporated corporation or as a limited liability company.

35.     Rather, independent contractors and individuals doing business as sole proprietor were eligible for PPP loans.

36.     The SBA did not restrict the deposit of PPP loans to business accounts, but permitted the deposit of PPP loans into personal accounts.

**C.  Perry Applies For a PPP Loan on Behalf of His Sole Proprietorship**

37.     Due to the adverse financial impact that the Covid-19 pandemic had on business (Forge Fitness) in 2019, 2020 and 2021, Perry sought financial assistance that was offered by the CARES Act and the PPP program.

38.     Perry and his sole proprietorship (Forge Fitness), met the eligibility requirements for the PPP loan program.

39.     In February 2021, Perry applied for a PPP loan using a non-bank originator.

40.     Perry completed the online application, provided information regarding his sole proprietorship, including proof of his business revenues deposited to his Chase checking account ending in 1218.

41.     Perry designated the Chase account ending in 1218 during the application process as this was the account that he used to deposit revenue from his sole proprietorship.

42.     Perry relied on his Chase account ending in 1218 during the application to document business revenue.

43.     Perry's application was approved on or about February 25, 2021.

44.     On February 25, 2021, funds in the amount of $20,122 were deposited by the SBA to Perry's Chase account ending in 1218.

45.     At all times, the funds deposited by the SBA's PPP loan to Perry's Chase account ending in 1218 belonged to Perry's sole proprietorship, Forge Fitness.

46.     As the found, owner and sole proprietor of Forge Fitness, Perry had the right to manage and deposit the SBA's PPP loan into his Chase account ending in 1218 which he was using for the operation of Forge Fitness.

47.     Perry received the funds deposited to his Chase account on behalf of and for the benefit of his sole proprietorship, Forge Fitness.

48.     The deposit of the SBA's PPP loan into Perry's Chase account ending in 1218 did not violate the terms or conditions of any contract governing Perry's relationship with Chase.

49.     The deposit of the SBA's PPP loan into Perry's Chase account ending in 1218 did not violate the terms or conditions of any Deposit Account Agreement which may have governed Perry's relationship with Chase.

50.     On information and belief, the deposit of the SBA's PPP loan into Perry's Chase account ending in 1218 did not violate any of Chase's policies or procedures which may have governed Perry's relationship with Chase.

51.     On information and belief, the deposit of the SBA's PPP loan into Perry's Chase account ending in 1218 did not violate any SBA related policies or procedures which may have applied to Perry's relationship with Chase.

52.     On information and belief, the deposit of the SBA's PPP loan into Perry's Chase account ending in 1218 did not violate any PPP related policies or procedures which may have applied to Perry's relationship with Chase.

53.     On information and belief, the deposit of the SBA's PPP loan into Perry's Chase account ending in 1218 did not violate any provisions of the CARES Act which may have applied to Perry's relationship with Chase.

54.     On information and belief, the deposit of the SBA's PPP loan into Perry's Chase account ending in 1218 did not violate any provisions of the CARES Act which may have applied to Perry and/or Forged Fitness' receipt of the subject PPP loan.

**D.  The Formal Incorporation of Forge Fitness, Perry's Sole Proprietorship**

55.     After operating Forge Fitness as a sole proprietorship for more than three years, in the summer of 2020, Perry made the decision to formally incorporate Forge Fitness.

56.     On August 4, 2020, Perry filed Articles of Organization pursuant to the Illinois Limited Liability Act thereby forming Forge PTASP LLC.

57.     Forge PTASP LLC is the successor to Perry's sole proprietorship.

58.     At all times, Perry was and remains the sole member and manager of Forge PTASP LLC.

59.     Shortly after establishing Forge PTASP LLC, Perry opened a business checking account in the name of Forge PTASP LLC with Canadian Imperial Bank of Commerce which does business as a bank with a branch located in Orland Park.

60.     There is no contractual relationship between Forge PTASP LLC and Chase.

**E.  Perry's Withdrawal of a Portion of the Subject PPP Funds on February 26, 2021 and Chase's Wrongful Seizure of the Remaining PPP Funds**

61.     On information and belief, before Perry deposited the PPP loan into his Chase account, he had approximately $1,100 in his Chase account.

62.    On February 26, 2021, Perry personally visited the Chase branch located at 15100 South La Grange Road, Orland Park, Illinois and withdrew $9,000 in cash from his Chase account ending in 1218.

63.    Alternatively, on February 26, 2021, Perry personally visited the Chase branch located at 15100 South La Grange Road, Orland Park, Illinois and withdrew $9,900 in cash from his Chase account ending in 1218.

64.    Perry took this action so that those funds could be deposited into his new business account at Canadian Imperial Bank of Commerce.

65.    At the time Perry withdrew these funds, he was utilizing Canadian Imperial Bank of Commerce of as the bank for Forge PTASP LLC, formally known as "Forge Fitness".

66.     When Perry withdrew the funds on February 26, 2021, he encountered no difficulty in completing this transaction and the funds were paid to him in cash.

67.    A personal visit to the bank branch withdraw cash (to accomplish the transfer of funds to his account at Canadian Imperial Bank of Commerce) was necessary because Perry did not have any checks for his account ending in 1218.

68.    On February 26, 2021, Perry deposited the funds he withdraw from his Chase account ending in 1218 into Forge PTASP LLC's account at Canadian Imperial Bank of Commerce.

69.    Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 on February 26, 2021 did not violate any of Chase's policies or procedures which may have applied to Perry's relationship with Chase.

70.     Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 on February 26, 2021 did not violate the terms of Chase's Deposit Account Agreement which applied to Perry's relationship with Chase.

71.     On information and belief, the Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 on February 26, 2021 did not violate any SBA related policies or procedures which may have applied to Perry's relationship with Chase.

72.     On information and belief, the Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 on February 26, 2021 did not violate any PPP related policies or procedures which may have applied to Perry's relationship with Chase.

73.     On information and belief, the Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 on February 26, 2021 did not violate any provisions of the CARES Act which may have applied to Perry's relationship with Chase.

74.     On information and belief, the Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 did not violate any provisions of the CARES Act which may have applied to Perry and/or Forged Fitness' receipt of the subject PPP loan.

75.     No written Chase policy prevented Perry from withdrawing the PPP funds from his Chase account ending in 1218 on February 26, 2021.

76.     The terms governing Perry's use of the account ending in 1218 did not prevent Perry withdrawing the PPP funds from his Chase account ending in 1218.

### F.  Perry's Attempted Withdrawal the Remaining PPP Fund February 27, 2021 and Chase's Wrongful Seizure of the Remaining PPP Funds

77.     On February 27, 2021, Perry went to the Chase branch located at 15100 South La Grange Road, Orland Park, Illinois to withdraw the balance of the PPP funds that had been deposited into his Chase account ending in 1218.

78. Perry's toddler son and his wife accompanied him to the bank on this date.

79. The same Chase bank employee who had handled his transaction the previous day was behind the counter and greeted Perry.

80. Perry indicated that he wanted to withdraw the remaining PPP funds in his account ending in 1218 and completed a counter withdrawal slip just as he had done on February 26, 2021.

81. On this occasion, Perry did encounter difficulty.

82. The Chase bank employee told Perry that the "system" was not letting him complete the transaction.

83. The employee also stated, "because I am fairly new I might need approval for the amount".

84. Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 on February 27, 2021 did not violate any of Chase's policies or procedures which may have applied to Perry's relationship with Chase.

85. Perry's attempted withdrawal of the remaining funds related to the SBA's PPP loan from his account on February 27, 2021 did not violate the terms of Chase's Deposit Account Agreement which applied to Perry's relationship with Chase.

86. On information and belief, Perry's attempted withdrawal of the remaining funds related to the SBA's PPP loan from his account on February 27, 2021 did not violate any SBA related policies or procedures which may have applied to Perry's relationship with Chase.

87. On information and belief, Perry's attempted withdrawal of the remaining funds related to the SBA's PPP loan from his account on February 27, 2021 did not violate any PPP related policies or procedures which may have applied to Perry's relationship with Chase.

88.     On information and belief, Perry's attempted withdrawal of the remaining funds related to the SBA's PPP loan from his account on February 27, 2021 did not violate any provisions of the CARES Act which may have applied to Perry's relationship with Chase.

89.     No written Chase policy prevented Perry from withdrawing the remaining PPP funds from his Chase account ending in 1218.

90.     The terms governing Perry's use of the account ending in 1218 did not prevent Perry withdrawing the remaining PPP funds from his Chase account ending in 1218.

91.     The employee then backed away from the counter and had a discussion with another employee in an area further back from the counter but within earshot of Perry's location.

92.     A Chase bank employee named Sylvia stepped up to where Perry was at the counter and stated "I see you have an SBA loan for $21,000."

93.     Sylvia also told Perry, "I don't feel comfortable releasing or approving the withdrawal because my job is on the line."

94.     Chase refused to pay Perry the balance of the PPP funds then remaining on deposit with Chase.

95.     At this point, Perry used his cellular phone to call his wife who was waiting in the car outside with the couple's toddler son.  He asked his wife to come in to see if she could assist in resolving the issues Perry was having in completing his requested withdrawal.

96.     Perry repeated his request for an explanation, at which point Sylvia retreated to the area behind the counter and had a discussion with a Chase bank employee named Agnes.

97.     Sylvia and Agness looked suspiciously at Perry as they had a discussion which was partially audible to Perry and his wife.

98.     Sylvia and Agness discussed whether Perry was engaging in fraud related to the PPP loan and the funds deposited to his account.

99.     Perry and his wife could plainly hear that Sylvia and Agness were discussing whether Perry was engaging in fraud related to the PPP loan and the funds deposited to his account.

100.    Without any basis, Sylvia stepped back to the counter and accused Perry of fraud related to the deposit/withdrawal of the PPP funds for his business.

101.    This accusation was made in a very loud manner which could be heard by Perry's wife and other customers in the bank lobby.

102.    Perry became extremely embarrassed and humiliated.

103.    Sylvia demanded that Perry produce business records establishing that his PPP loan was proper.

104.    Though Perry initially objected on the grounds that this was none of the bank's business, Perry provided Chase with business formation documents and evidence of his employer identification number for Forge PTASP LLC.

105.    Perry also emailed Articles of incorporation for Forge PTASP LLC and its EIN to an address provided by Sylvia.

106.    After retreating behind the counter to conduct another call, Sylvia reappeared at the counter and now demanded that Perry provide a letter from a CPA, tax records, and copies of his LLC operating agreement and EIN.

107.    None of this documentation was required by any provision of the CARES Act.

108.    In particular, a business or individual apply ing for a PPP loan was not required to submit a letter from a CPA, tax records, and copies of his LLC operating agreement

12

109.     Although Perry had complied with Chase's requests for his EIN and the LLC formation documents by emailing them to the address he was given, the bank's employees again refused to pay Perry the funds that belonged to Forge PTASP LLC.

110.     Chase bank employees would not tell Perry the reason for refusing to release funds as requested.

111.     Chase treated Perry differently that similarly situated Caucasian customers.

112.     Chase appears to have treated Perry differently because of his race and the manner in which stood up for his rights as an African American business owner.

113.     After what had now been several hours, Perry became frustrated that Chase bank employees would not pay him the funds or give him an explanation for not doing so.  The tone of Perry's voice expressed frustration and Perry demanded the balance of the PPP funds be released to him - or that an explanation be given.

**G.  Chase Employees Escalated the Situation by Calling Orland Park Police**

114.     At this point, Chase bank employees called 911 and the Orland Park Police Department was dispatched to the bank.

115.     During this call, Perry could clearly hear that Chase bank employees state that he was violent, was throwing things and threatening people. These statements to the 911 operator were false.

116.     The Chase employee's statements to the 911 operator were audible to Perry, his wife and several customers in the bank at that time, when that was not the case.

117.     Perry took his son into his arms and stepped outside of the bank branch.

118.    Approximately ten minutes later, two responding officers arrived and stated that the police department had received a call about a man making threats and throwing things in the bank.

119.    One of the responding officers questioned Perry in front of his wife and son at which time Perry and the officer discussed the circumstances alleged above.

120.    Perry told the officers that he was a customer of Chase who trying to make a withdrawal from his account.

121.    Perry told the officers Chase bank's employees' statements that he had made threats or had become violent in any way was not true,.

122.    One of the two officers stepped into the bank lobby and had a discussion with Chase bank employees Sylvia and Agness.

123.    Sylvia and Agness spoke in hushed tones to the police officers, falsely accusing Perry to assaultive and/or violent conduct that he did not exhibit during the events in question.

124.    Perry's wife observed and overheard the conversation which parroted the accusations the Chase bank employees had made in the call to 911 - false accusations that Perry had made threats and had thrown things.

125.    The officer left the bank lobby and as he encountered Perry he stated that he "saw no threat here" and both officers left.

126.    By this time, approximately three hours had elapsed and Perry was more frustrated because he could not get the bank to release his business funds or get a satisfactory explanation.

127.    Perry attempted to resolve the issue by having his aunt, a former Chase bank employee, speak with Agness in Perry's presence. Agness said they would continue to look into the matter and would give Perry a call the following Monday.

14

128.    Agness indicated the account was now "locked" by upper management.

129.    Notwithstanding this statement, the teller then allowed Perry to withdraw approximately $2,000 from his account - an amount which was in excess of the remaining PPP funds. This demonstrated to Perry that the account was indeed not "locked."

130.    At this point, Perry and his family left the bank. It was approximately 3:30 pm and Perry and his family had been at the bank since 10:00 a.m.

131.    Chase bank did not call Perry on Monday as promised.  Perry called the branch and spoke with Agness and was told that he would get an email on Tuesday.

132.    Chase treated Perry differently that similarly situated Caucasian customers.

133.    Chase appears to have treated Perry differently because of his race and the manner in which stood up for his rights as an African American business owner.

**H.  Chases Fronts its Position that it Takes Cases of Racial Profiling Seriously**

134.    Instead, within a few days of February 27, 2021, Perry received a call from a lawyer named Brittany at Chase Executive Offices. Brittany informed Perry the account had been closed. She also stated to Perry, unsolicited, that "we take racial profiling cases seriously."

135.    During the call, Brittany promised to look into the matter, talk with her superiors and get the matter resolved.

136.    Over the next three to four weeks, Perry had additional calls with Brittany seeking to resolve the matter and requesting an explanation.  That did not happen.

**I.  Allegations Regarding Economic and Emotional Harm Suffered by Perry**

137.    Chase did not thereafter mail Perry a check for the balance of the funds in his account and Chase has retained those funds unlawfully and without explanation.

138.    On information and belief, Chase closed the account for the asserted reason that it was a personal account that was being used for business purposes.

139.    On March 30, 2021, Perry received a letter from the Executive Office of Chase.

140.    Chase's March 30 letter stated that it is responding to Perry's inquiries.

141.    The letter began by stating: "We take complaints that claim discrimination seriously. We do not tolerate any form of discrimination as it is strictly against our policy and contrary to our corporate culture. Your allegation of discrimination will be reviewed internally."

142.    The March 30 letter then states:

> The bank restricted the Account pending further review due to receipt of a deposit from the U.S. Small Business Administration ("SBA") Economic Injury Disaster Loan program. Only eligible businesses can receive a grant or loan from the SBA program, and we need additional information and documentation to release the funds to you. Under the terms of our Deposit Account Agreement (DAA), there are many reasons we may decline or prevent transactions to or from your Account or decide to close your Account. You were provided a copy of the agreement when you opened your account, and you can see the current agreement on chase.com. Also, the DAA explains if your Account is a type listed under "Personal Accounts" in our product information, you agree not to use it for business purposes.

> We closed your Account and placed the funds totaling $9,875.92 in suspense. Please provide us with the following documentation in order to have funds released:

> ● Invoices that reflect that your business was in operation on or before February 15, 2020, as required by the SBA
> ● 2020 Tax Return for your business

> The documentation will assist us in our review to remove the funds in suspense. In order to release funds. please send the above documentation to executive.office@chase.com or you may mail it to the address on this letter. If the documentation is satisfactory, we will send you a check for the funds to the address we have on file for you.

143.    Chase deprived Perry and Forge PTASP LLC from access to PPP funds that were awarded to Perry and his sole proprietorship.

144.    Depriving Perry and Forge PTASP LLC from access to the PPP funds that the government had specifically earmarked to assist businesses has and continues to have a severe detrimental impact on Perry and his business.

145.    Perry and Forge PTASP LLC was forced to divert funds earmarked for business operations to pay expenses that he had planned to pay with the approved PPP funds.

146.    Perry and Forge PTASP LLC had to delay important marketing that Perry had planned and put off purchasing equipment that Forge PTASP LLC had intended to purchase.

147.    The Chase bank employee's false accusations of fraud and the false statements made to the Orland Police Department caused Perry to suffer great emotional distress.

148.    He suffered loss of appetite, physical nausea, nightmares impacting his ability to sleep, and constant worry for the future of his health and that of his family and business.

149.    Perry and Forge PTASP LLC's business operations were negatively impacted because Perry lost focus and because of lack of sleep and nausea, was not always in a position to provide his physical fitness clients with 100% effort that he routinely provided.

150.    Perry and Forge PTASP LLC lost customers because of how Chase's conduct had negatively impacted Perry's emotional well-being.

**J.  Additional Race Based Allegations**

151.    When police arrived on the scene he feared for his personal safety and that of his toddler son. Present in his mind was the recent murder of George Floyd at the hand of police responding to an alleged petty crime. As a result of what happened to George Floyd, Perry knew that racial tension then existing throughout the country could mean that even a peaceful encounter with police could turn deadly.

152.    Perry's toddler son observed the police arriving and questioning Perry.  He would later ask his father on at least three occasions "Why do the cops want to kill you?"

153.    Perry's relationship with his wife was also impacted negatively because he continued to feel anger and embarrassment that Chase had made the false accusations against him.

## COUNT I - CONVERSION BROUGHT BY FORGE PTASP LLC

154.    Forge PTASP LLC realleges the allegations made in paragraphs 1 through 153.

155.    Perry on behalf of Forge PTASP LLC has made repeated demands that Chase give Perry possession of the funds he held in his Chase account on behalf of Forge PTASP LLC.

156.    Chase had knowledge that the funds held in his Chase account 1218 were the property of Forge PTASP LLC.

157.    At no time did Chase have a banking relationship or agreement with Forge PTASP LLC, only a personal banking relationship with Perry.

158.    Forge PTASP LLC had an absolute and unconditional right to immediate possession of the funds Perry held in his Chase account 1218 for the benefit of Forge PTASP LLC.

159.    Chase refused, repeatedly, to pay to either Perry or Forge PTASP LLC the funds which were the rightful property of Forge PTASP LLC.

160.    Chase wrongfully assumed dominion and control over the funds which were the rightful property of Forge PTASP LLC.

161.    Chase has advised Perry that his personal account was closed and therefore, the funds were no longer held in that account but were converted by Chase and placed into a different "suspense" account.  At no time did Chase tender the funds Forge PTASP LLC.

162.    Chase had no basis to require Forge PTASP LLC provide any company tax returns or company invoices to Chase.

18

163.    Chase possessed all of the information it should have needed, including the articles of formation for Forge PTASP LLC and the company's tax identification number (EIN) to know that the funds deposited by the SBA were the property of Forge PTASP LLC.

164.    At no time did the SBA require Chase to monitor any PPP funds disbursed to Perry for the benefit of his sole proprietorship.

165.    At no time did the CARES ACT require Chase to monitor any PPP funds disbursed to Perry for the benefit of his sole proprietorship.

166.    Chase acted willfully, or with such gross negligence as to indicate a wanton disregard of the rights of Forge PTASP LLC. Punitive damages for the tort of conversion properly lie where, *inter alia,* the defendant acts willfully or with such gross negligence to indicate a wanton disregard of the rights of others.

167.    Forge PTASP LLC suffered proximate damage to its business, including loss of income and loss of clients, as a direct result of the wrongful conversion by Chase of the funds belonging to Forge PTASP LLC.

168.    Forge PTASP LLC has also lost the time value of its money and has incurred interest that it would not otherwise have incurred.

169.    Forge PTASP LLC is entitled to compensatory and punitive damages in an amount exceeding $75,000.

**WHEREFORE**, Plaintiff Forge PTASP LLC prays that the Court enter judgment in its favor and against Chase as follows:

a)      Finding that Chase wrongfully converted the property of Forge PTASP LLC;

b)      Awarding damages equal to the amount of funds belonging;

c)      Awarding Forge PTASP LLC interest;

d)  Awarding Forge PTASP LLC actual damages in an amount to be proven at trial;

e)  Awarding Forge PTASP LLC punitive damages;  and

f)  Awarding Forge PTASP LLC costs of this action.

## COUNT II - CONVERSION  ON BEHALF OF PLAINTIFF PERRY

170.  Perry realleges the allegations made in paragraphs 1 through 153.

171.  Perry made repeated demands that Chase give Perry possession of the funds he held in his Chase account on his own behalf and on behalf of Forge PTASP LLC.

172.  Chase had knowledge that certain funds held in his Chase account 1218 were the property of Forge PTASP LLC.

173.  Chase had knowledge that certain funds held in his Chase account 1218 were the property of Perry.

174.  Perry had an absolute and unconditional right to immediate possession of the funds which Perry held in his Chase account 1218 for the benefit of Forge PTASP LLC.

175.  Perry had an absolute and unconditional right to immediate possession of the funds which Perry held in his Chase account 1218 for his own benfit.

176.  Chase refused, repeatedly, to pay to either Perry the funds which were the rightful property of Perry.

177.  Alternatively, Chase refused, repeatedly, to pay to either Perry the funds which were the rightful property of Forge PTASP LLC.

178.  Chase wrongfully assumed dominion and control over the funds which were the rightful property of Forge PTASP LLC.

179.    Chase has advised Perry that his personal account was closed and therefore, the funds were no longer held in that account but were converted by Chase and placed into a different "suspense" account.

180.    At no time did Chase tender the remaining funds to Jordan.

181.    At no time did Chase tender the remaining funds to Forge PTASP LLC.

182.    Chase had no basis to require Perry to provide any company tax returns or company invoices from Forge PTASP LLC to Chase.

183.    At no time did the SBA require Chase to monitor any PPP funds disbursed to Perry for the benefit of his sole proprietorship.

184.    At no time did the CARES ACT require Chase to monitor any PPP funds disbursed to Perry for the benefit of his sole proprietorship.

185.    Chase acted willfully, or with such gross negligence as to indicate a wanton disregard of Pery's legal rights. Punitive damages for the tort of conversion properly lie where, *inter alia,* the defendant acts willfully or with such gross negligence to indicate a wanton disregard of the rights of others.

186.    Perry suffered proximate damage to its business, including loss of income and loss of clients, as a direct result of the wrongful conversion by Chase of the funds belonging to Forge PTASP LLC.

187.    Perry has also lost the time value of its money and has incurred interest that it would not otherwise have incurred.

188.    Perry is entitled to compensatory and punitive damages in an amount exceeding $75,000.

21

**WHEREFORE**, Plaintiff Perry prays that the Court enter judgment in its favor and against Chase as follows:

      a)      Finding that Chase wrongfully converted the subject PPP funds;

      b)      Awarding damages equal to the amount of funds;

      c)      Awarding Perry interest;

      d)      Awarding Perry actual damages in an amount to be proven at trial;

      e)      Awarding Perry punitive damages;  and

      f)      Awarding Perry costs of this action.

## COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

189.    Plaintiffs Perry and Forge PTASP LLC reallege the allegations made in paragraphs 1 through 153.

190.    The Illinois Consumer Fraud Act states, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged.

> 815 ILCS 505/2

191.    Section 505/2, further states, in relevant part:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper.

192.    Chase violated the Illinois Consumer Fraud Act, specifically 815 ILCS 505/2, by engaging in an unfair and deceptive act or practice by using fraud, deception, and

misrepresentation in its attempts to wrongfully hold funds that were the property of Perry and/or Forge PTASP LLC.

193.    The conduct, as detailed, *supra*, occurred during the course of trade or commerce.

194.    The conduct, as detailed, *supra*, constitutes unfair conduct under the Illinois Fraud Act.

195.    Chase intended for Perry to rely upon the false claims that the Chase could rightfully hold funds belonging to Perry and his sole proprietorship unless he provided Chase with private business records  - invoices and tax return – which belonged to Forge PTASP LLC.

196.    Chase intended for Forge PTASP LLC to rely upon the false claims that the Chase could rightfully hold funds belonging to Forge PTASP LLC unless Perry provided Chase with private business records  - invoices and tax return – which belonged to Forge PTASP LLC.

197.    The conduct, as detailed, *supra*, was unfair and deceptive, was immoral, unethical, unscrupulous and oppressive, especially in that Chase, was at all times relevant, in a position of strength in relation to Forge PTASP LLC.

198.    At all times relevant, Chase had sole dominion and control over the funds rightfully belonging to Perry.

199.    At all times relevant, Chase had sole dominion and control over the funds rightfully belonging to Perry's sole proprietorship.

200.    At all times relevant, Chase had sole dominion and control over the funds rightfully belonging to Forge PTASP LLC.

201.    Further, Chase sought to exercise control by making a false police report and summoning police to intimidate Forge PTASP LLC and its principal, Perry, and made false and defamatory statements to the Orland Park Police Department.

202.     The conduct, as detailed, *supra*, violates public policy, including the PPP program and its animating purpose of providing funds on an expedited basis to businesses suffering financial hardship during the Covid-19 worldwide pandemic.

203.     The conduct, as pled, *supra*, was outrageous, willful, and wanton, and it showed a reckless disregard for rights of Perry and Forge PTASP LLC.

204.     Perry suffered actual pecuniary loss as described herein. Forge PTASP LLC suffered actual pecuniary loss as described herein.

205.     Forge PTASP LLC expended considerable time and incurred costs, including time consulting with an attorney as a result of the unlawful actions of Chase.

206.     PErry incurred legal fees and costs in attempting to gain possession of its property from Chase.

207.     Forge PTASP LLC incurred legal fees and costs in attempting to gain possession of its property from Chase.

208.     The damages suffered by Perry and Forge PTASP LLC were proximately caused by the conduct of Chase.

209.     In addition, due to the reprehensible nature of the alleged conduct, Plaintiffs are entitled to recover punitive damages.

210.     Depriving businesses of funds that they are rightfully entitled to receive is a practice that harms consumers and businesses throughout Illinois.

**WHEREFORE**, Plaintiffs Perry and Forge PTASP LLC pray that the Court enter judgment in their favor and against Chase as follows:

a)     Finding that Chase violated the Illinois Consumer Fraud Act;

b)     Awarding damages equal to the amount of funds belonging to Forge PTASP LLC that are held by Chase;

c)      Awarding interest;

d)      Awarding Plaintiffs actual damages in an amount to be proven at trial;

e)      Awarding punitive damages; and

f)      Awarding Plaintiffs the costs of this action.

## COUNT IV - NEGLIGENCE

211.    Plaintiffs Perry and Forge PTASP LLC reallege the allegations made in paragraphs 1 through 153.

212.    Chase voluntarily assumed the role of monitoring the disposition of funds disbursed by the SBA pursuant to the PPP program.

213.    In Illinois, "one who undertakes, gratuitously or for consideration, to render services to another is subject to liability for . . . harm caused to the other by one's failure to exercise due care in the performance of the undertaking." *Rhodes v. Ill. Cent. Gulf R.R.,* 172 Ill. 2d 213, 239, 665 N.E.2d 1260, 1273 (1996).

214.    In such a situation, the duty of care which arises is "limited to the extent of the undertaking." *Id.* "[W]hether a voluntary undertaking has been assumed is necessarily a fact-specific inquiry." *LM ex rel. KM v. United States,* 344 F.3d 695, 700 (7th Cir. 2003).

215.    Chase assumed this role in this case voluntarily and without any obligation.

216.    By doing so, Chase assumed a duty of care to both Plaintiffs.

217.    Forge PTASP LLC at no time had a contractual or banking relationship with Chase.

218.    The duty of care assumed by Chase arises outside the context of any contractual relationship between Forge PTASP LLC and Chase.

219.    Chase was provided with all the information it needed to know that the funds that Perry requested be released were the property of Forge PTASP LLC.

220.     Chase, having taken on its role as monitor for the SBA, failed to exercise ordinary care in its handling of the funds owned by Forge PTASP LLC which it wrongfully withheld after demand.

221.     By reason of its negligence in exercising the duty it assumed over the funds owned by Forge PTASP LLC Chase caused Forge PTASP LLC to suffer damages, as discussed herein above, that were foreseeable.

**WHEREFORE**, Plaintiffs Perry and Forge PTASP LLC pray that the Court enter judgment in their favor and against Chase as follows:

a)     Finding that Chase is guilty of negligence with respect to its exercise of a duty of care over funds belonging to Forge PTASP LLC;

b)     Awarding damages equal to the amount of funds belonging to Plaintiff and Forge PTASP LLC that were wrongly withheld by Chase;

c)     Awarding Plaintiffs interest;

d)     Awarding Plaintiffs actual damages in an amount to be proven at trial but not less than $100,000;

e)     Awarding Plaintiffs punitive damages; and

f)     Awarding Plaintiffs' costs of this action.

**COUNT V - DEFAMATION PER SE**

222.     Perry realleges the allegations made in paragraphs 1 through 153.

223.     The statements that Chase employees made to the Orland Park Police Department 911 dispatcher and police officers who responded to the bank employees 911 call were false.

224.    The employees falsely stated that Perry had become violent (engaged in alleged disorderly conduct) and was engaged in fraud on the bank and/or the SBA's PPP program. These statements allege and impute the commission of a crime.

225.    The statements made by the Chase employees were audible to other customers in the lobby of the bank and to Perry's wife.

226.    Chase and its employees hold no privilege to make false statements alleging or imputing that Perry was engaged in any criminal act.

227.    Chase and its employees published knowingly false statements to the public, the 911 operator and the responding officers.

228.    Perry suffered actual damages as set forth hereinabove which were proximately caused by the conducts of Chase.

**WHEREFORE**, Perry prays that the Court enter judgment in his favor and against Chase as follows:

a)      Finding that Chase is guilty of defamation per se;

b)      Awarding Perry actual damages in an amount to be proven at trial;

e)      Awarding Perry punitive damages; and

f)      Awarding Perry costs of this action.

**COUNT VI – BREACH OF CONTRACT**

229.    Perry realleges the allegations made in paragraphs 1 through 153.

230.    Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 on February 26, 2021 did not violate any of Chase's policies or procedures which may have applied to Perry's relationship with Chase.

231.    Perry's withdrawal of the SBA's PPP loan from his Chase account ending in 1218 on February 26, 2021 did not violate the terms of Chase's Deposit Account Agreement which applied to Perry's relationship with Chase.

232.    Perry's efforts to withdrawal of the remainder of the SBA's PPP loan from his Chase account ending in 1218 on February 27, 2021 did not violate any of Chase's policies or procedures which may have applied to Perry's relationship with Chase.

233.    Perry's efforts to withdrawal of the remainder of the SBA's PPP loan from his Chase account ending in 1218 on February 27, 2021 did not violate the terms of Chase's Deposit Account Agreement which applied to Perry's relationship with Chase.

234.    Chase's conduct in withholding the funds breached the terms of its Deposit Account Agreement.

235.    Perry suffered actual damages as set forth hereinabove which were proximately caused by the conducts of Chase.

**WHEREFORE**, Perry prays that the Court enter judgment in his favor and against Chase as follows:

a)    Finding that Chase is guilty of defamation per se;

b)    Awarding Perry actual damages in an amount to be proven at trial;

c)    Awarding Perry punitive damages; and

d)    Awarding Perry costs of this action.

**COUNT VII – UNJUST ENRICHMENT**

236.    Perry and Forge PTASP LLC realleges the allegations made in paragraphs 1 through 153.

237. Chase's conduct in withholding the above described funds constitutes an unjustly retained benefit to the detriment of both Plaintiffs and Chase's retention of the funds violates the fundamental principles of justice, equity, and good conscience.

238. Perry suffered actual damages as set forth hereinabove which were proximately caused by the conducts of Chase.

**WHEREFORE**, Plaintiffs Perry and Forge PTASP LLC pray that the Court enter judgment in their favor and against Chase as follows:

    a)    Finding that Chase's conduct constitutes the tort of unjust enrichment, and that Chase was unjustly enriched;

    b)    Awarding Plaintiffs actual damages in an amount to be proven at trial; and

    c)    Awarding Perry costs of this action.

## JURY DEMAND

Plaintiffs demand a trial by jury on all such claims that may be so tried

Respectfully submitted,

*/s/ James C. Vlahakis*

James C. Vlahakis
Sulaiman Law Group, Ltd
2500 S. Highland Ave. Suite 200
Lombard, Illinois 60148
Tel: (630) 575-8181
Email: jvlahakis@sulaimanlaw.com

*Counsel for Plaintiffs*